**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-NRN

DARLENE GRIFFITH

Plaintiff,

v.

JANE DOE (DEPUTY),
JOHN DOE (DEPUTY), and
MR. DRAPER (DEPUTY)

Defendants.

---

### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (DOC. 9) PURSUANT TO Fed. R. Civ. P. 12(b)(6)

---

COMES NOW, Defendants, Deputy Jane Doe ("Jane Doe"), Deputy John Doe ("John Doe"), and Deputy Draper ("Draper") (collectively "the Defendants"), by and through the Office of the County Attorney of El Paso County, hereby and respectfully moves this Honorable Court for dismissal of Plaintiff's Amended Complaint (Doc. 9) pursuant to Fed. R. Civ. P 12(b)(6). As grounds therefor, Defendants state as follows:

### Conferral

The Court's practice standards require conferral prior to the filing of a motion to dismiss. The parties complied with this requirement during their status conference on June 8, 2021. Subsequently, the Court issued an order setting a briefing schedule for the Defendants' Motion to Dismiss.

## I. INTRODUCTION

On April 19, 2021, the Court issued the Order to Dismiss in Part and to Draw Case which dismissed all of Plaintiff's claims except those asserted against John Doe, Jane Doe, and Draper. Thus, the remaining claims allege a violation of Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights related to a search of Plaintiff during the intake process at the El Paso County Criminal Justice Center ("CJC") by John Doe and Jane Doe, and a subsequent pat-down search by Draper. As will be explained herein, Plaintiff's remaining claims fail to state an underlying constitutional violation. But even if they did, the Defendants are entitled to qualified immunity. Accordingly, the Court must dismiss Plaintiff's remaining claims.

## II. MATERIAL ALLEGATIONS IN COMPLAINT

Plaintiff was taken to CJC and processed through intake on July 20, 2020. (Doc 9, p.- 8). Plaintiff at this time was a "pre-opp" transgender male transitioning to a female. (*Id.*) During this process, a strip search was conducted of Plaintiff where Jane Doe completed the strip search of Plaintiff's top half, including breast area, while John Doe was present in the room. (Doc.0 9, pp. 8-9). After completing the search of Plaintiff's top half, Jane Doe left the room and John Doe conducted the search of Plaintiff's bottom half, including Plaintiff's male genitalia. (Doc. 9, p.. 9). Plaintiff claims John Doe made inappropriate comments during the strip search. (*Id*.). Shortly after completing the intake process, Plaintiff was placed on a male ward where Plaintiff was subjected to a pat-down search by Draper on August 8, 2020. (Doc. 9, p. 10).

2

### III. STANDARD OF REVIEW

A Fed. R. Civ. P. 12(b)(6) motion is a challenge to the sufficiency of the complaint. Thus, conclusory allegations are "not entitled to the assumption of truth" and are not considered *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, a court looks to whether the complaint includes "enough factual matter (taken as true) to suggest that" the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). If the complaint does not "nudge[] [the plaintiff's] claims across the line from conceivable to plausible," it "must be dismissed." *Id*. at 570.

### IV. ARGUMENT

#### A. Plaintiff Fails to Establish Jane Doe's Personal Participation

Personal participation is an essential allegation in a civil rights action. *Bennet v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir.1976). To establish personal participation, Plaintiff must show that each Defendant caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159 (1985). There must be an affirmative link between the alleged constitutional violation and each named Defendant's participation, control or direction, or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993).

Plaintiff claims that the strip search conducted by Jane Doe and John Doe violated Plaintiff's Fourth amendment rights. (Doc. 9, p. 8). However, Plaintiff fails to establish how Defendant Jane Doe personally participated in the alleged violation of Plaintiff's rights. Plaintiff merely recites the facts of Jane Doe conducting a strip search of Plaintiff's top half, issuing Plaintiff a sports bra, and then leaving the room. (Doc. 9, p. 9). Plaintiff identifies as female, the same gender as Jane Doe. (Doc. 9, p. 8). Thus, Jane Doe could not have personally participated in

3

the alleged violative act of a cross-gender strip search because Jane Doe shares the same gender by which Plaintiff identifies and Plaintiff expressed no objection to the portion of the strip search conducted by Jane Doe. Moreover, Jane Doe left the room prior to the remainder of the strip search conducted by John Doe. (Doc. 9, p. 9). Because Plaintiff has failed to describe Jane Doe's personal participation in the alleged violation of Plaintiff's constitutional rights, Plaintiff's claims against Jane Doe must be dismissed.

### B. Plaintiff Fails to State a Plausible Constitutional Violation

The constitutionality of a strip search requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. In *Bell*, the Supreme Court set forth the balancing test for determining a search's reasonableness:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which its conducted, the justification for initiating it, and the place in which it is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

A prisoner retains a limited right under the Fourth and Fourteenth Amendments, to bodily privacy. *Michenfelder v. Sumner*, 860 F.2d 328, 33 (9th Cir. 1988). However, being viewed in the nude by members of the opposite sex on isolated occasions does not constitute a constitutional claim. *See Klien v. Pyle*, 767 F.Supp. 215 (D. Colo. 1991); *Cumbery v. Meachum*, 684 F.2d 712 (10th Cir. 1982).

Moreover, "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." *Cumbey*, 684 F. 2d at 714. In the contexts of prisoners' civil rights litigation, the Supreme Court has instructed that: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

4

related to legitimate penological interests. Subjecting the day -to- day judgments of prison officials to an inflexibly strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987).

Plaintiff is a pre-operation male to female, meaning Plaintiff has male genitalia and female breasts. (Doc. 9, pp. 8-10). Plaintiff claims during the intake process into CJC, that John Doe remained in the strip-out room while Jane Doe conducted examination of Plaintiff's upper body and John Doe searched Plaintiff's lower body. (Doc. 9, pp. 8-9). Jane Doe exited the room after completing the search of Plaintiff's upper body and prior to John Doe conducting the search of Plaintiff's lower body. (Doc. 1, pp. 8-9). While Plaintiff clearly takes issue with the fact that John Doe was present during the search, Plaintiff fails to state how the search itself was unreasonable, other than a bare assertion that John Doe "became very aggressive throughout the entire [sic] strip out process." (Doc. 9, p. 9).

Once in CJC, Plaintiff was housed in the male ward with 80 other male inmates. (Doc. 9, p. 10). Plaintiff alleges that in the ward Draper conducted a pat-down search of Plaintiff touching Plaintiff's breasts with a flat hand and searching Plaintiff's "crouch" area. (Doc. 9, p. 10). Plaintiff characterizes the pat-down search as "non-routine pat-down search." (Doc. 9, p. 10).

Applying the *Bell* factors to these allegations, the Complaint fails to establish a constitutional violation against Jane Doe or John Doe. First, the complaint of intrusion was minor considering the circumstances. The strip search occurred as Plaintiff entered CJC, which is a standard procedure implemented for safety and security reasons. The only individuals present

during the strip search of Plaintiff were John and Jane Doe.  Plaintiff's nude body was not exposed to any other staff or inmate. Thus, the intrusion complained of was relatively minor.

Plaintiff goes on to complain about the manner in which the stirp search was conducted, particularly that John Doe conducted a portion of the strip search pursuant to EPSO Policy 702 which requires a member of the same sex be present during a strip search. But, under similar circumstances, at least one court has failed to recognize a constitutional violation. *See Jones v. Harrison*, 864 F.Supp. 166, 168-69   (D. Kan. Aug. 8, 1994) (strip search of male inmate in presence of female officer did not violate inmate's right to privacy to support a  1983 claim given the strip search was conducted as part of an emergency intervention and was permitted under Department of Corrections procedures).  Likewise, verbal statements made during a search, like those attributed to John Doe, are insufficient to establish a constitutional violation. *SeeAdkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (holding that verbal sexual harassment by a prison guard did not violate a constitutional right).  Accordingly, the second *Bell* factor weights against a constitutional violation.

The third and fourth *Bell* factors also weigh against a constitutional violation. The justification for the strip search of Plaintiff was strong. Plaintiff was strip searched during intake into CJC to ensure the safety and security of the facility, such as ensuring newly admitted inmates do not introduce weapons or contraband into the facility. The allegations further establish that the strip search was not conducted in a public area in CJC, but in an area where only Jane Doe and John Doe could observe Plaintiff.  Accordingly, the third and fourth *Bell* factors do not support a constitutional violation.

The *Bell* factors weigh against finding a constitutional violation against Jane Doe and John Doe, and the Court must dismiss Plaintiff's claims asserted against Jane Doe and John Doe pursuant to Fed. R. Civ. P. 12(b)(6).

The *Bell* factors also weigh against finding a constitutional violation against Draper. First, the intrusion complained of is minor because Plaintiff was subject to a pat-down rather than a strip search. Plaintiff, therefore, always remained clothed and Plaintiff's nude body was not exposed.

Plaintiff's primary concern is the manner by which the pat-down was conducted. Plaintiff (falsely) alleges that Draper fondled Plaintiff's breasts and that the pat-down was "non-routine." But Plaintiff does not allege that Draper's conduct was sexually motivated, nor does Plaintiff provide any explanation as to what "non-routine" means. Indeed, there are many types of searches that are not "routine" but are appropriate and warranted under the circumstances. Thus, given the lack of factual specificity in the Complaint, the second *Bell* factor weighs against the finding of a constitutional violation.

The third and fourth *Bell* factors also weigh against the finding of a constitutional violation. As mentioned above, Plaintiff's characterization of the pat-down as "non-routine," without any further explanation, fails to establish that the search lacked justification. Finally, given that Draper only conducted a pat-down of Plaintiff, rather than a strip search, the location where it occurred was appropriate under the circumstances.

Accordingly, the *Bell* factors weigh against finding a constitutional violation against Draper and the Court must dismiss Plaintiff's claims asserted against Draper pursuant to Fed. R. Civ. P. 12(b)(6).

Furthermore, Plaintiff was a pre-trial detainee during the relevant time and was not, therefore, entitled to protections under the Eighth Amendment. Accordingly, Plaintiff has failed to state a claim for violation of his rights under the Eighth Amendment.

### C. Defendants are Entitled to Qualified Immunity

Government officials who perform discretionary acts are entitled to qualified immunity from civil damages, provided their conduct does not violate clearly established rights of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss on qualified immunity imposes the burden on the plaintiff to show (1) a constitutional violation occurred and (2) the constitutional right was clearly established at the time of the alleged violation. *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

To be clearly established, the law must have been "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). Generally, pursuant to Tenth Circuit precedent, this requires a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. (internal quotations omitted). Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the "plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Trotter v. Regents*, 219 F.3d 1179, 1184 (10th Cir. 2000) (internal quotations

8

omitted). The Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 756, 779 (2013). "A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." *B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014) (citation omitted).

Here, the Individual Defendants are entitled to qualified immunity first, because there was no underlying violation as set forth above. According to *Hulen*, the first prong has not been met by the Plaintiff for the reasons stated above. But even if Plaintiff satisfied this prong, the Defendants would still be entitled to qualified immunity. The second prong in *Hulen*, that the constitutional right was clearly established at the time of the alleged violation has not been satisfied by the Plaintiff. *Id*. There was no clearly established precedent, at the time of the alleged incidents in this matter, that would show every reasonable deputy knew that the alleged conduct of a strip search at intake by "same sex" deputies and a pat-down by "same sex" deputies violated Plaintiff's constitutional rights. To be clearly established, the law must have been "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier*F.3d at 923. Pursuant to Tenth Circuit precedent, this requires a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. There is no case on point or similar to the facts Plaintiff has alleged. Consequently, the Individual Defendants are entitled to qualified immunity and the Court must dismiss Plaintiff's § 1983 claim against all Defendants.

## V. CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an order dismissing Plaintiff's Complaint with prejudice, together with Defendant's reasonable attorneys' fees and costs, and for such other and further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 18th day of June 2021.

OFFICE OF THE COUNTY ATTORNEY
OF EL PASO COUNTY, COLORADO

By: s/ *Chris Strider*
Chris Strider, #33919
Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-7264 (Office)
(719) 627-1586 (Mobile)
Email: chrisstrider@elpasoco.com

By: s/ *Terry A. Sample*
Terry A. Sample, #33919
Senior Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-6386 (Office)
(719) 313-1941 (Mobile)
Email: terrysample@elpasoco.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 18, 2021, a true copy of this Motion to Dismiss was e-filed and served via ICCES or sent by US Mail on all active parties and counsel of record:

Darlene Griffith, #0275824
El Paso County Criminal Justice Center
2739 East Las Vegas Street
Colorado Springs, CO 80906


    s/Casey Campbell
    Paralegal

11