IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-CMA

DARLENE GRIFFITH,

Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al.*,

Defendants.

---

**EL PASO COUNTY DEFENDANTS' REPONSE TO MOTION FOR PRELIMINARY INJUNCTION, EXPEDITED BRIEFING SCHEDULE, AND EXPEDITED HEARING**

---

Defendants, El Paso County, Colorado, Sheriff Bill Elder, Commander Cy Gillespie and Deputy Draper, collectively "County Defendants", by and through counsel, the El Paso County Attorney's Office submit their Response to Plaintiff's Motion for Preliminary Injunction, Expedited Briefing Schedule, and Expedited Hearing and requests Plaintiff's Motion be denied in its entirety, as follows:[1]

### I.      INTRODUCTION

This case concerns whether housing Plaintiff in the male ward was proper use of discretion. Plaintiff contends the proper course of action to be a preliminary injunction, including an expedited

---

[1] County Defendants reserve the right to supplement this response with sworn affidavits and exhibits in advance of any hearing ordered by the Court.

1

briefing schedule and expedited hearing, if so required. Defendants believe such relief is neither appropriate nor necessary.

The Tenth Circuit has decided "[a] preliminary injunction is an extraordinary remedy, the exception rather than the rule." *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 889 (10th Cir. 1989). Considering this remedy "constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established." *Id.*

Plaintiff would have this Court act as a prison administrator and wrongly asserts the issue before the Court as one of a Constitutional nature. But, this is controlled by the Prison Rape Elimination Act ("PREA") and the deference given to jail administrators thereunder. Plaintiff would ask this Court to ignore the deference given to prison administration in determining on an individual basis what housing is appropriate for inmates. This would be a gross overreach because the County Defendants are best suited to manage their prisons and ensure safety for all inmates.

For the below reasons, Plaintiffs are unable to satisfy the burden necessary to attain injunctive relief. Plaintiff's Motion for Temporary Restraining Order, Expedited Briefing Scheduling and Expedited Hearing must be denied in its entirety.

## II. RELEVANT LAW

a. The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA")

Plaintiff does not mention the PLRA or its impact on her claims for injunctive relief. Plaintiff's claims are, however, subject to the PLRA. *See, e.g.*, *Wolfson v. United States*, 336 F. App'x 792, 794-95 (10th Cir. 2009) ("prisoner" in PLRA includes individuals accused of criminal law violations and those sentenced criminally); 42 U.S.C. § 1997e(h) (defining "prisoner" as "any

person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program").

The PLRA "imposes limits on the scope and duration of preliminary and permanent injunctive relief." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004). The "new standards for injunctive and prospective relief" provided by the PLRA underscores the fact "the PLRA 'strongly disfavors continuing relief through the federal courts; indeed, its fundamental purpose [is] to extricate them from managing state prisons.'" *Porter v. Graves*, 597 F. App'x 964, 967 (10th Cir. 2014) (quoting *Guajardo v. Tex. Dep't of Crim. Justice*, 363 F.3d 392, 394 (5th Cir. 2004)).

The injunctive relief provisions of the PLRA, 18 U.S.C. § 3626, have significant implications for the relief requested in Plaintiff's Motion. First, any TRO or other inchoate injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1167 (10th Cir. 2004) (PLRA "had set new limits on the power of courts to give injunctive relief to prisoners, requiring (among other things) that any injunctive relief granted be both narrowly drawn to correct the violation of federal rights and also the least intrusive means of correcting the violation. 18 U.S.C. § 3626(a)(1)(A)."); *Martinez v. Maketa*, 2011 U.S. Dist. LEXIS 60711, at *10 (D. Colo. June 7, 2011) ("Prior to granting injunctive relief in a prison conditions case, the Prison Litigation Reform Act requires this Court to find that the relief is narrowly drawn, extends no further than necessary to correct the violation of Plaintiffs' constitutional rights, and is the least intrusive means necessary to correct the violation of Plaintiffs' constitutional rights.").

3

Second, in crafting such relief, this Court "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief." 18 U.S.C. § 3626(a)(2). "Under the PLRA, federal courts are prohibited from becoming involved in the actions of the state's correctional system absent compelling reasons. A court considering whether to grant injunctive relief in a prisoner case must give substantial weight to any adverse impact on public safety or the operation of the criminal justice system." *Oken v. Sizer*, 321 F. Supp. 2d 658, 666-67 (D. Md.), *cert. denied*, 542 U.S. 917 (2004).

Third, "the PLRA requires that district courts issuing prospective relief in cases involving prison conditions make certain findings in order for that relief to conform to the law." *Alloway v. Hodge*, 72 F. App'x 812, 815 (10th Cir. 2003). Any failure by a District Court to make these required factual findings under the PLRA is reversible error. *Doe v. Cook Cnty.*, 798 F.3d 558, 564 (7th Cir. 2015).

b.  The Prison Rape Elimination Act, 34 U.S.C. § 30301(1) ("PREA")

Plaintiff's Motion also fails to mention PREA and the federal regulations implementing PREA. Specifically, 28 C.F.R. § 115.42 provides that information shall be used "from the risk screening required by § 115.41 to inform housing . . . with the goals of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive." 28 C.F.R. § 115.42 (a). The criteria under the intake screening that must be considered, "at a minimum," include:

> Whether the inmate has a mental, physical, or developmental disability; [t]he age of the inmate; [t]he physical build of the inmate; [w]hether the inmate has previously been incarcerated; [w]hether the inmate's criminal history is exclusively nonviolent; [w]hether the inmate has prior convictions for sex offenses against an

4

adult or child; [w]hether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming; [w]hether the inmate has previously experienced sexual victimization; [t]he inmate's own perception of vulnerability; and [w]hether the inmate is detained solely for civil immigration purposes.

28 C.F.R. § 115.41 (d) (1)-(10).

Additionally, a transgender inmate's "own views with respect to his or her own safety shall be given serious consideration." 28 C.F.R. § 115.42 (e). It is important to note that these factors must be considered during the intake screening.

Determinations made for the safety of inmates should be done on an individual basis. *See* 28 C.F.R. § 115.42 (b). There are more requirements for ensuring the safety of lesbian, gay, bisexual, intersex, and in this case, transgender inmates. Pursuant to 28 C.F.R. § 115.42 (c), when deciding whether a transgender inmate should be assigned to "a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." 28 C.F.R. § 115.42 (c).

While housing decisions should be made on a case-by-case basis, such assignments "for each transgender . . . inmate shall be reassessed at least twice each year to review any threats to safety experienced by the inmate." 28 C.F.R. § 115.42 (d).

### III.   STANDARD FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Generally, in order to succeed on a preliminary-injunction motion, this circuit requires that the moving party proves four factors: "(1) that she's substantially likely to succeed on the merits, (2) that she'll suffer irreparable injury if the court denies the injunction, (3) that her threatened injury (without the injunction) outweighs the opposing party's under the injunction, and (4) that

5

the injunction isn't adverse to the public interest." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (internal quotation marks omitted). Ms. Griffith does not satisfy the four criteria required to succeed on such a motion.

## IV.  APPLICATION OF STANDARD

Keeping in mind the legal principles, supra, Plaintiff has not satisfied the requisite four elements to grant injunctive relief. It is important to note the language in the applicable standard— success requires all four criteria to be met; a failure of any one factor does not satisfy this standard. As such, this Court should deny Plaintiff's Motion and deny the sought-after injunctive relief in the form of an expedited briefing schedule, and expedited hearing.

a.  Whether Ms. Griffith is Substantially Likely to Succeed on the Merits

Plaintiff incorrectly claims that Defendants disregard Ms. Griffith's identity as a transgender woman and treat her as a male inmate, which violates her Fourteenth Amendment rights. Plaintiff wrongly addresses Constitutional arguments pertaining to transgender inmate discrimination. It is undoubtedly true that "transgender individuals face an alarming rate of discrimination, harassment, and violence." *Crowder*, Crowder, 2019 U.S. Dist. LEXIS 140306, at *32-35; *see also Grimm v. Gloucester Cty. Sch. Bd.,* 302 F. Supp. 3d 730, 749 (E.D. Va. 2018). However, this is not the issue in this case. The issue in this case is whether Defendants properly exercised their discretion in housing Plaintiff in the male ward.

To determine what the proper housing is for any inmate, there are criteria required to examine, supra. One of these factors requires that the "agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." 28 C.F.R. § 115.42 (c). Housing Ms. Griffith

6

in a female facility instead of a male was made in consideration of such language. The balance between Ms. Griffith's own views with respect to her own safety was considered in conjunction with the County Defendant's obligation to consider the factors, supra. *Id.*; *see also* 28 C.F.R. § 115.42 (e).

However, even if the Court recognizes a Constitutional harm in this case, the Supreme Court has addressed this very issue. When there is a prison standard or regulation that "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to the legitimate penological interest . . . such a standard is necessary if prison administrators …, and not the courts, [are] to make the difficult judgments concerning institutional operations." *Turner v. Safley*, 482 U.S. 78, 89 (1987) (internal quotation marks omitted). If ever there were a time when deference to prison administration should be given, it is in this case. There is a legitimate penological interest in housing Ms. Griffith in the male facility when all the factors under PREA have been examined.

The mere fact that intake screening is done on an individual basis shows how difficult it is to make the judgment of where each inmate should be housed. These difficult decisions need to be addressed by those who oversee such operations. *Id.* A preliminary injunction would disregard the necessity of administrators to make these decisions. Housing Plaintiff in a male ward was done under careful consideration of factors, supra, the most important being the safety of both Plaintiff and other inmates. The decision to house Plaintiff was not an easy decision, but the prison administrators are to make this judgment, not the Courts. *Id.* After examining the criteria under PREA and the deference afforded to prison administrators, it seems substantially unlikely that Plaintiff will succeed on the merits.

7

b.  Whether Ms. Griffith Will Suffer Irreparable Injury if the Injunction is Denied

Plaintiff alleges that the constitutional-rights-as-irreparable-harm principle is applicable and, in the alternative, she faces irreparable harm because her mental health is at a risk of degrading further. It has been recognized in this circuit that "showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Schrier v. University of Co.*, 427 F.3d 1253, 1268 (10th Cir. 2005) (internal quotation marks omitted); *see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

First, there is no constitutional violation in this case because the prison has a legitimate penological purpose in considering the most appropriate housing for each inmate, on a case-by-case basis, supra. Therefore, this Court should not consider the constitutional-rights-as-irreparable-harm principle, because there has been no constitutional violation that would give rise to a determination on the applicability of this principle.

Plaintiff, in the alternative, alleges that irreparable harm will be suffered due to her mental health being at a risk of degrading further. In *Porter v. Allenbaugh*, as in this case, Plaintiff had allegation of reported self-harm ideations. While these allegations are troubling, they do not rise to the level of irreparable harm required under this standard.

To constitute irreparable harm, "an injury must be certain, great, actual 'and not theoretical' . . . Irreparable harm is more than 'merely serious or substantial' harm." *Porter v. Allenbaugh*, 2019 WL 2167415 at *8 (N.D. Okla. May 17, 2019) (internal citations omitted). Furthermore, when a plaintiff seeks a preliminary injunction, they "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable

8

harm." *Schrier v. University of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (internal citation omitted). Plaintiff has not demonstrated that her risk of irreparable harm is either certain or imminent. *See Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (holding "a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative").

Here, Plaintiff has not shown that these ideations rise to the level required of a significant risk that is certain or imminent. The Court in *Lamb v. Norwood*, found the term gender dysphoria "describes the psychological distress caused by identifying with the sex opposite to the one assigned at birth." *Lamb v. Norwood*, 899 F.3d 1159, 1161 (10th Cir. 2018) (referencing Sven C. Mueller, et al., *Transgender Research in the 21st Century: A Selective Critical Review from a Neurocognitive Perspective*, 174 Am. J. Psychiatry 1155, 1155 (2017)). As such, and in facts regarding Plaintiff, there is no surprise that gender dysphoria causes internal turmoil. This suggests that Plaintiff has, understandably, suffered with psychological distress throughout her life. However, this does not indicate that Plaintiff will face an increased risk of mental health degradation.

Plaintiff has failed to satisfy the requirement that she will suffer irreparable injury. There is no basis for a Constitutional claim of irreparable harm, and even if there was, Defendants have a legitimate penological interest in housing Plaintiff after considering factors under PREA. Further, gender dysphoria causes psychological distress; there is nothing to indicate this would be exacerbated by a denial of injunctive relief. Plaintiff's claim for irreparable harm is merely theoretical and does not rise to the level this circuit has identified and required.

c.  Whether Ms. Griffith's Threatened Injury Without an Injunction Outweighs [Opposing Parties] Injury Under the Injunction

Plaintiff, in her motion, relies on the constitutional-rights-as-irreparable-harm principle to show that any loss, even temporary loss of a Constitutional right outweighs any harm to the defendant. This is an incorrect application of this principle. Plaintiff relies on having suffered irreparable harm—which is a theoretical harm at best and does not meet the level of harm the Tenth Circuit has determines satisfies that factor of the test, supra.

The first two factors are especially crucial for success on a preliminary injunction. The Court in *Schrier v. University of Co.*, determined it was unnecessary to address the remainder of the prongs for the test because Dr. Schrier failed to establish irreparable injury or substantial likelihood of success on the merits. *See Schrier v. University of Co.*, 427 F.3d 1253, 1262 n. 2 (10th Cir. 2005) (referencing *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 n.8 (10th Cir. 2004)). While it may be unnecessary to address the remaining two factors, it will help to solidify why this preliminary injunction should be denied.

In this case, the injury faced by Defendants under the injunction would outweigh the injury without an injunction. The two harms to balance are the risk of mental health degradation by Plaintiff against the risk of overreach by the Court on where inmates should be housed. Plaintiff's potential mental health degradation is only theoretical and does not rise to the level of irreparable harm so required by the Tenth Circuit, supra.

In contrast, if the preliminary injunction were allowed, the Court would be acting as prison administration, not as the Court. This is a grave harm, which would set a dangerous precedent. Under PREA, there is a delicate balancing between concerns of the individual and concerns of the agency, supra. This case-by-case examination under PREA serves a legitimate penological

purpose—making sure that jails and prison environments are properly managed by those who ensure the safety of all inmates day-to-day. Thus, Plaintiff's theoretical injury without the injunction does not outweigh the injury Defendants would face in losing the ability properly given under PREA to decide where inmates should be housed on a case-by-case basis.

d. <u>Whether the Injunction is Adverse to the Public Interest</u>

Plaintiff, in her motion, claims that the injunction is in the public interest. This claim is due to the sole fact that the Court has discretion to waive the nominal bond because Plaintiff is indigent. This is not the appropriate gauge to determine whether this injunction is in the public interest. In *Porter v. Allenbaugh*, the Court found that the public interest was not served because the Supreme Court "has specifically cautioned federal courts to tread lightly in matter relating to prison administration." *Porter v. Allenbaugh*, 2019 WL 2167415 at \*9 (N.D. Okla. May 17, 2019). The court goes on to agree with the Supreme Court's view in *Turner v. Safley*, which states:

> [r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities.

*Id.; see also Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

Plaintiff, by asking this Court to grant a preliminary injunction would go against the guidance of Porter and Turner by overseeing prison administration. This is an unreasonable request and an overreach—one that would not benefit the public interest. There is undoubtedly a "strong public interest in affording substantial deference to prison officials in managing the daily

operations of a prison due to the unique nature, needs and concerns of the prison environment." *Pinson v. Pacheco*, 424 Fed. Appx. 749, 759 (10th Cir. 2011).

Therefore, when observing the speculative nature of Plaintiff's motion in its entirety, Plaintiff has failed to show that the issuance of a preliminary injunction in in the public interest. Thus, the fourth and final criteria required to succeed on a motion for a preliminary injunction fails.

## V. CONCLUSION

In conclusion, for the foregoing reasons, County Defendants respectfully request this Court enter an Order denying Plaintiffs' application for a preliminary injunction, expedited briefing schedule and expedited hearing in this matter, and granting all other relief deemed just and proper.

Respectfully submitted this 29th day of October, 2021.

OFFICE OF THE COUNTY ATTORNEY
OF EL PASO COUNTY, COLORADO

By: s/ *Nathan J. Whitney*
Nathan Whitney, #39002
First Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-6597 (Office)
(719) 494-5582 (Mobile)
Email: nathanwhitney@elpasoco.com

By: s/ *Chris Strider*
Chris Strider, #33919
Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-7264 (Office)
(719) 627-1586 (Mobile)
Email: chrisstrider@elpasoco.com

By: s/ *Terry A. Sample*
Terry A. Sample, #33919
Senior Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-6386 (Office)
(719) 313-1941 (Mobile)
Email: terrysample@elpasoco.com

*Attorneys for Defendants*

13

**CERTIFICATE OF SERVICE**

   I hereby certify that on October 29, 2021, a true copy of this Response to Motion for Preliminary Injunction, Expedited Briefing Schedule and Expedited Hearing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses for the following active parties and counsel of record:

Mari Ann Newman, Esq.
Andrew Joseph McNulty, Esq.
Killmer Lane & Newman LLP
1543 Champa Street, Suite 400
Denver, CO 80202

*Attorneys for Plaintiff*

Daniel P. Struck, #012377
Ashlee B. Hesman, #028874
Kristina Rood, #035097
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendant Wellpath, LLC*

                 s/April Willie
                 Paralegal