IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

    Plaintiff,

v.

ELPASO COUNTY, COLORADO, *et al.*,

    Defendants.

---

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION,
EXPEDITED BRIEFING SCHEDULE, AND EXPEDITED HEARING**

---

    Defendants do not offer much of a defense to their decision to house all transgender prisoners, as a matter of policy, based solely on their genitalia and birth sex. Importantly, they do not rebut that this is their official policy and practice. They also wholly fail to address the abundant facts demonstrating both their constitutional violation and Ms. Griffith's damages. Instead, Defendants make the argument that their decisions as prison administrators, without so much as detailing why they made the decisions they did, cannot be reviewed by this Court.

    In doing so, Defendants apply the wrong legal standard to Ms. Griffith's federal constitutional claims, misstate the impact of the Prison Litigation Reform Act ("PLRA") on this case, and misinterpret Prison Rape Elimination Act ("PREA") (and its implementing regulations) views on Defendants' actions. Defendants fail to cite to any authority that would counter the numerous cases provided by Ms. Griffith in her motion for preliminary injunction, holding that housing transgender prisoners based solely on their genitalia and birth sex violates the Equal Protection Clause.

1

Instead of addressing the substantive merits of Ms. Griffith's constitutional claims, Defendants repeatedly say that housing Ms. Griffith in an all-male unit is necessary to ensure the safety of both Plaintiff and other inmates, but never once outline the basis for this decision -- even in the face of compelling allegations that Ms. Griffith has been living as a woman for decades, and since being housed in the male unit has already been a victim of sexual harassment and assault by deputies, and undeniably faces the risk of further assaults, demeaning treatment, and emotional distress. Defendants ask this Court to blindly accept Defendants' decision to house Ms. Griffith in a unit that does not conform with her gender identity, subjecting her repeated searches by male deputies and danger of assault from male deputies and inmates, without subjecting it to any scrutiny whatsoever. This is improper and Ms. Griffith asks that this Court does not abdicate its duties under Article III in the name of deference to jail administrators, as Defendants ask it to do.

It is also important to note what Defendants seemingly concede in their response. Defendants do not dispute that they discriminated against Ms. Griffith based on her sex and transgender status. They do contest that Ms. Griffith, as a transgender woman, is part of suspect class. Defendants do not cite to a single case refuting the authority catalogued by Ms. Griffith holding that housing a transgender woman in an all-male unit is unlawful discrimination based on sex and transgender status. *See Tay v. Dennison*, 457 F. Supp. 3d 657, 690 (S.D. Ill. 2020); *Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, 2018 U.S. Dist. LEXIS 190682, at *52-53 (S.D. Ill. Nov. 7, 2018); *Doe v. Mass. Dep't of Corr.*, No. 17-12255-RGS, 2018 U.S. Dist. LEXIS 99925, at *25 (D. Mass. June 14, 2018). They also completely fail to refute, or even address, Ms. Griffith's strong legal claims under the Colorado Constitution's Equal Rights Amendment.

2

Ultimately, the facts and weight of relevant authority strongly support that housing Ms. Griffith in an all-male unit is unconstitutional discrimination, based on sex and transgender status, under both the United States and Colorado Constitutions. And, because Ms. Griffith has shown a violation of her constitutional rights, the other preliminary injunction factors weigh in her favor. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805-07 (10th Cir. 2019). For these reasons, Ms. Griffith asks this Court to grant her a preliminary injunction.

1. **The *Turner v. Safely* standard does not apply to Ms. Griffith's federal constitutional claim of sex discrimination.**

Defendants ask this Court to analyze Ms. Griffith's federal constitutional claims under the incorrect legal standard in advocating that *Turner v. Safely* applies here. [Doc. #64], p. 7. In *Turner v. Safely*, the Supreme Court initially adopted a four-part test, departing from the traditional tiers of scrutiny, for certain constitutional claims by inmates. 482 U.S. 78, 89 (1987). But in *Johnson v. California*, the Court clarified that *Turner* applies "only to rights that are inconsistent with proper incarceration," *i.e.*, those "privileges and rights [that] must necessarily be limited in the prison context." 543 U.S. 499, 510 (2005) (quotations omitted). Specifically, in *Johnson*, the Court held that it had "never applied *Turner* to racial classifications" under the equal protection clause. *Id.* at 509. That is because the "right not to be discriminated against based on one's race is not susceptible to the logic of *Turner*" due to the unassailable fact that "compliance with the Fourteenth Amendment's ban on racial discrimination is not only consistent with proper prison administration, but also bolsters the legitimacy of the entire criminal justice system." *Id.* For similar reasons, the Court also noted that it had "not used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison" and instead judged violations of the Eighth "Amendment under the 'deliberate indifference' standard, rather than *Turner*'s 'reasonably related' standard." *Id.*; *Carranza v. Reams*, No. 20-cv-00977-

3

PAB, 2020 U.S. Dist. LEXIS 82299, at *22 (D. Colo. May 11, 2020) (applying the deliberate indifference, and not *Turner*, standard).

Likewise, the Supreme Court has never applied *Turner* to sex-based classifications like the one that Defendants have imposed on Ms. Griffith. And, like race-based discrimination, compliance with the Fourteenth Amendment's ban on sex discrimination is essential to the legitimacy of the criminal justice system. This is demonstrated by all of the decisions relating to the housing of transgender prisoners, which do not analyze the constitutional claims under the *Turner* standard. *See, e.g., Tay v. Dennison*, 457 F. Supp. 3d 657, 690 (S.D. Ill. 2020); *Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, 2018 U.S. Dist. LEXIS 190682, at *52-53 (S.D. Ill. Nov. 7, 2018); *Doe v. Mass. Dep't of Corr.*, No. 17-12255-RGS, 2018 U.S. Dist. LEXIS 99925, at *25 (D. Mass. June 14, 2018); *Crowder v. Diaz*, No. 2:17-CV-1657-TLN-DMC, 2019 U.S. Dist. LEXIS 140306 (E.D. Cal. Aug. 16, 2019). Therefore, contrary to Defendants' arguments, the deference afforded to prison administrators under the *Turner* test has no application here. *See also Ashaheed v. Currington*, No. 20-1237, 2021 U.S. App. LEXIS 23691, at *23 (10th Cir. Aug. 10, 2021) (noting that *Turner* did not apply to a religious freedom case).

2. **Defendants misstate the impact of the PLRA on Ms. Griffith's claims.**

Contrary to the implication of Defendants' arguments, the PLRA does not restrict this Court's review of Defendants' actions to determine their constitutionality. Rather, it only applies to the *scope* of the injunctive relief this Court can order. For example, in *Carranza*, Judge Brimmer went through a normal constitutional analysis in determining whether a county jail was violating the constitution in its handling of the coronavirus pandemic, and whether that mishandling was causing irreparable harm, impacted the public interest, and was outweighed by the harm of an injunction to the county jail. 2020 U.S. Dist. LEXIS 82299, at **22-34. Then,

4

after concluding that all of these factors weighed in favor of issuance of an injunction, Judge Brimmer applied the PLRA principles emphasized by Defendants in this case, only when considering the *scope* of the injunctive relief to be ordered. *Id.* at *34. Thus, the PLRA principles outlined by Defendants must only be taken into account when this Court is considering the *scope* of the injunctive relief it will order, but not when determining *whether* an injunction is appropriate based on the four factors in the first instance.

3. **PREA supports Ms. Griffith's claims that she should be housed in a unit that corresponds with her gender identity.**

Congress unanimously passed the Prison Rape Elimination Act in 2003. *See* 34 U.S.C. § 30302. PREA collected data on sexual assault in prison and found sexual abuse is rampant in prisons today, and that transgender individuals are at an even greater risk of being victims of sexual abuse. *Id.* In 2012, the U.S. Department of Justice ("DOJ") issued PREA standards for prisons. *See* CFR §§ 115.41-43.

As part of those PREA standards, DOJ stated that "[i]n deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." 28 C.F.R. § 115.42. It also outlined that "[p]lacement and programming assignments for each transgender or intersex inmate shall be reassessed at least twice each year to review any threats to safety experienced by the inmate"; "[a] transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration [in any placement decision]"; and correctional institutions "shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated

5

facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates." *Id.* Importantly, the PREA standard also prohibited "cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practitioners." 28 C.F.R. § 115.15.

DOJ has expressly condemned the precise conduct that Defendants are seeking to defend in this case. For example, the DOJ explicitly states that a "policy that houses transgender or intersex inmates based exclusively on external genital anatomy" violates 28 C.F.R. § 115.42.[1] The DOJ also states that it is not appropriate for "a transgender or intersex inmate or resident to be searched by both a male officer and a female officer, the male officer searching the parts of the body that are anatomically male and the female officer searching parts of the body that are anatomically female."[2]

Multiple courts have relied on PREA standards in determining whether prison officials' actions violated the Constitution and the necessity of an injunction. *See, e.g., Tay*, 457 F. Supp. 3d at 689; *West v. Kind*, No. 17-cv-482-pp, 2020 U.S. Dist. LEXIS 40210, at *10 (E.D. Wis. Mar. 9, 2020); *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1376-78 (M.D. Ga. 2015). At least one court has relied on the DOJ FAQ on the National PREA Resource Center's website in determining whether prison officials' actions violated the constitution. *West*, 2020 U.S. Dist. LEXIS 40210, at *10.

---

[1] *Frequently Asked Questions*, NATIONAL PREA RESOURCE CENTER, available at: https://www.prearesourcecenter.org/frequently-asked-questions/does-policy-houses-transgender-or-intersex-inmates-based-exclusively.
[2] *Frequently Asked Questions*, NATIONAL PREA RESOURCE CENTER, available at: https://www.prearesourcecenter.org/frequently-asked-questions/it-ever-appropriate-transgender-or-intersex-inmate-or-resident-be."

The PREA standards, and DOJ FAQ relating to them, further demonstrates that the decision to house Ms. Griffith in an all-male unit, based on a policy or practice of housing transgender inmates solely based on their genitalia and birth sex, violates her rights. This becomes particularly apparent given the decision to house Ms. Griffith in an all-male unit has subjected her to countless cross-gender searches, and at least one cross-gender strip search. Far from absolving Defendants of liability in this case, PREA and its implementing regulations counsel that Defendants' decision to house Ms. Griffith in an all-male unit based solely on her genitalia and birth sex violated (and continues to violate) her constitutional rights.

4. **Defendants' vague justifications for discriminating against Ms. Griffith cannot withstand intermediate, let alone strict, scrutiny.**

Ignoring both the law and the abundant facts militating that Ms. Griffith be housed in accordance with her gender identity, Defendants proffer that they made the decision to house Ms. Griffith in an all-male unit based on vague assertions that it was necessary for her health and safety, and to avoid management and security problems. [Doc. #64], pp. 6-7. Defendants fail to identify any specific concerns to Ms. Griffith's health and safety presented by housing her in a unit that corresponds with her gender identity, or to rebut Ms. Griffith's ample assertions to the contrary. *Id.* They likewise fail to identify any specific management or security problems that are implicated by housing Ms. Griffith in a unit that corresponds with her gender identity, or to address the *actual* security risks faced by Ms. Griffith as a result of housing her in a male unit where she is searched by male guards. *Id.* Essentially, Defendants claim that they made their decision based on these inchoate concerns and that this Court has no authority to question their decision making. *Id.*

As a matter of law, this Court has the *obligation* to subject Defendants' assertions to scrutiny. *Free the Nipple-Fort Collins*, 916 F.3d at 802. And, the vague contentions offered are

7

wholly insufficient to satisfy the exacting scrutiny imposed on sex-based classifications by the Equal Protection Clause. Defendants' statements do not demonstrate that their decision to house Ms. Griffith in an all-male unit, in accordance with their policy and practice of housing all transgender inmates based solely on their genitalia and birth-sex, "substantially serve[s]" and "important governmental objective[s.]" *Id.* at 802. Absent any facts supporting the proffered safety and security reasons for housing Ms. Griffith in an all-male unit, this Court is left with the rational conclusion that Defendants' "professed interest in [safety and security] derives not from any morphological differences between [women and transgender women] but from negative stereotypes" about transgender women. *See Id.* at 803. Decisions, like the one made by Defendants, "grounded in stereotypes about the way women [and transgender women] are serve no important governmental interest." *Id.* (citing *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1692-93 (2017) and *United States v. Virginia*, 518 U.S. 515, 550 (1996)). These types of officially enforced stereotypes "'create[] a self-fulfilling cycle of discrimination.'" *Id.* (quoting *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 736 (2003)).

Likewise, Defendants proffered vague and undefined health, safety, security, and management interests are certainly not sufficient to satisfy the strict scrutiny imposed by the Colorado Constitution's Equal Rights Amendment. Under a strict scrutiny standard, the government has the burden of proving that its policies are "narrowly tailored measures that further compelling governmental interests." *Johnson v. California*, 543 U.S. 499, 511 (2005).

"[T]he purpose of strict scrutiny is to 'smoke out' illegitimate uses of [discrimination] by assuring that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool." *Richmond v. J. A. Croson Co.*, 488 U.S. 469, 493 (1989) (plurality opinion). The narrow-tailoring requirement "ensures that the means chosen 'fit' the compelling goal so closely

8

that there is little or no possibility that the motive for the classification was illegitimate [] prejudice or stereotype." *Id.* at 493. Defendants have put forward no facts that show Ms. Griffith's placement in an all-male unit was necessary to serve its goal of protecting her health and safety or preventing security and management concerns. They have failed to meet the high bar imposed by strict scrutiny.

5. **Should this Court find that Ms. Griffith is likely to succeed on her constitutional claims, then she has shown irreparable harm, the balance of equities weighs in her favor, and the public interest favors an injunction.**

The fact that the PLRA is implicated by Ms. Griffith's requested relief does not undermine the well-established principles that: (1) harm that "cannot be compensated after the fact by money damages[,]" like the violation of a constitutional right, constitutes irreparable harm, *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016); (2) "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration[,]" *Brown v. Plata*, 563 U.S. 493, 511 (2011); and (3) "it is always in the public interest to prevent the violation of a party's constitutional rights," as a preliminary injunction would do here. *See Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). Judge Brimmer held that these principles counseled in favor of issuing a broad-ranging emergency injunction that significantly intruded on a county jail's administration, notwithstanding the PLRA's requirements outlined by Defendants. *Carranza*, 2020 U.S. Dist. LEXIS 82299, at **31-34. The same principles apply here given that Ms. Griffith has shown an ongoing violation of her constitutional rights by Defendants and, therefore, the other factors weigh in favor of granting injunctive relief.

6. **This Court has authority under Article III, and the PLRA, to order the relief that Ms. Griffith requests.**

9

Contrary to Defendant's assertions, this Court's "equitable power[] to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971); *accord Ramos v. Lamm*, 639 F.2d 559, 586 (10th Cir. 1980). This broad authority is particularly important when invoked to "bring an ongoing [constitutional] violation to an immediate halt[.]" *Hutto* v. *Finney,* 437 U.S. 678, 687 n. 9 (1978) *Hutto*, 437 U.S. at 687 n.9.

Further, this Court has broad authority to remedy this constitutional violation notwithstanding the PLRA. The PLRA's guidance "must be undertaken in light of both the magnitude of existing constitutional violations and the available alternative remedies." *Morales Feliciano v. Rullan*, 378 F.3d 42, 54 (1st Cir. 2004). For example, in *Carranza*, Judge Brimmer issued a preliminary injunction specifying a laundry list specific actions and policies that a county jail was required to implement in response to the COVID-19 pandemic. 2020 U.S. Dist. LEXIS 82299, at *45-47. Judge Brimmer issued this relief after considering both the PLRA and how the actions of the county sheriff had violated the plaintiffs' constitutional rights. *Id.* at *34-35. Judge Brimmer at no point stated that he lacked the power and authority to remedy the ongoing constitutional violations, or that by remedying the ongoing constitutional violations he was acting as prison administration. *Id.* at **34-47.

Plaintiff asks that this Court "do no more than to order [correctional] officials to [comply with the constitution] in general terms and to verify that the plan they submit satisfies the relevant constitutional standards[.]" *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012). Plaintiff does not ask that Defendants be required to do anything more than treat her as the transgender woman that she is. This is necessary to remedy the constitutional violation that is occurring: that she is being treated discriminatorily.

10

Dated: November 5, 2021

           KILLMER, LANE & NEWMAN, LLP

           */s/ Andy McNulty*
           Andy McNulty
           Mari Newman
           1543 Champa St., Ste. 400
           Denver, CO 80202
           Phone: (303) 571-1000
           Facsimile: (303) 571-1001
           amcnulty@kln-law.com
           mnewman@kln-law.com

           COUNSEL FOR PLAINTIFFS

11

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on November 5, 2021, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, EXPEDITED BRIEFING SCHEDULE, AND EXPEDITED HEARING** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Nathan J. Whitney
Terry Sample
Chris Strider
County Attorney's Office
El Paso County
nathanwhitney@elpasoco.com
terrysample@elpasoco.com
chrisstrider@elpasoco.com


Daniel P. Struck
Ashlee B. Hesman
Kristina Rood
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
dstruck@strucklove.com
ahesman@strucklove.com
krood@strucklove.com

              */s/ Charlotte Bocquin Scull*
              Paralegal