**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al.*,

     Defendants.

---

### ~~[PROPOSED]~~ SCHEDULING ORDER

---

### 1.    DATE OF CONFERENCE

The telephonic Scheduling Conference pursuant to Fed. R. Civ. P. 16(b) is scheduled for

10:00 a.m. April 29, 2022, before Magistrate Judge N. Reid Neureiter. Appearing for the parties

are:

Andrew McNulty
Mari Newman
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

*Counsel for Plaintiff*

Nathan Whitney
Terry Sample
Chris Strider
200 S. Cascade Ave.
Colorado Springs, CO 80903
terrysample@elpasoco.com
nathanwhitney@elpasoco.com
chrisstrider@elpasoco.com

*Counsel for El Paso County Defendants*

Daniel Struck
Ashlee B. Hesman
Kristina Rood
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226

Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
ahesman@strucklove.com
krood@strucklove.com

*Counsel for Defendants Wellpath, LLC and
Christine Mohr*

## 2.    STATEMENT OF JURISDICTION

Jurisdiction is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiff's claims for attorneys' fees and costs is conferred by 42 U.S.C. § 1988(b). Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b), as all the events described occurred in Colorado.

## 3.    STATEMENT OF CLAIMS AND DEFENSES

### a.    <u>Plaintiff's statement:</u>

**Gender Identity, Gender Dysphoria, And The Incarceration Of Transgender
Women Like Ms. Griffith**

Darlene Griffith has suffered repeated sexual harassment, sexual assault, denial of medical and mental health care, and discrimination as a result of El Paso County's policy of refusing to house transgender inmates based on their gender identity, and a pervasive culture of purposeful discrimination against, and subjugation of, transgender inmates who suffer from Gender Dysphoria.

Ms. Griffith is a transgender woman who has been diagnosed with Gender Dysphoria. In the community, she lives in accordance with her female gender identity and undergoes hormone therapy. Despite this well-documented history, Defendants purposefully housed Ms. Griffith in an all-male unit in the El Paso County Jail. Despite Ms. Griffith's multiple requests to be moved to a

unit that corresponds with her gender identity, El Paso County has continued to discriminatorily house her in a unit that exposes her to a significantly increased risk of sexual harassment, assault, and emotional distress.

Gender identity is an innate, internal sense of one's sex—e.g., being male or female—and is a basic part of every person's core identity. Everyone has a gender identity. Most people's gender identity is consistent with the sex they were assigned at birth ("assigned sex"). Transgender people, however, have a gender identity that is different from their assigned sex. For example, a transgender woman is a woman who was assigned male at birth and has a female gender identity. A cisgender woman is a woman who was assigned female at birth and has a female gender identity.

The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-5") recognizes that being transgender is not itself a disability, but that the clinically-relevant condition is the "Gender Dysphoria" experienced by many individuals whose gender identity conflicts with their assigned sex. Gender Dysphoria is defined as the significant distress that may accompany the incongruence between a transgender person's gender identity and assigned sex. This distress limits major life activities and is therefore a disability. A transgender person's Gender Dysphoria can be alleviated when the person is able to live, and be treated by others, consistently with the person's gender identity.

Gender Dysphoria often, but not always, emerges during childhood. The accepted course of medical treatment to alleviate the symptoms of Gender Dysphoria often involves allowing the individual to live as his or her chosen gender through one or more of the following treatments: changes in gender expression and role; dressing, grooming, and otherwise outwardly presenting in

a manner consistent with one's gender identity; hormone therapy; psychotherapy; and, in some cases, surgery to change primary and/or secondary sex characteristics.

Ms. Griffith has been diagnosed with Gender Dysphoria and has been living as a transgender woman for over twenty years. As part of her medically-supervised treatment, she changed her name and altered her physical appearance to conform to her female gender identity, including dressing in feminine attire and taking feminizing hormones, which caused her to develop female secondary sex characteristics such as breasts, soft skin, a lack of facial hair, and other characteristics typically associated with women.

At all times relevant to this action, Defendants were aware of Ms. Griffith's Gender Dysphoria and her identity as a transgender woman and perceived Ms. Griffith as having Gender Dysphoria and being a transgender woman.

Ms. Griffith has a history of Gender Dysphoria, which substantially limits one or more major life activities, including the ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and which substantially limits neurological function, brain function, endocrine function, and reproductive function.

When a transgender person's Gender Dysphoria is left untreated, or is inadequately treated, the consequences can be dire. Symptoms of untreated Gender Dysphoria often include intense emotional suffering, anxiety and depression, suicidality, and thoughts or acts of self-harm. All of those symptoms can be mitigated, and often prevented altogether, for transgender people with access to appropriate individualized medical care as part of their gender transitions.

Ms. Griffith has engaged in multiple acts of self-harm since childhood, because her Gender Dysphoria has not been accommodated and treated. Ms. Griffith engages in self harm, specifically self-castration behavior, regularly. This activity is worsened when she is not receiving treatment for Gender Dysphoria, which includes not being allowed to live consistent with her gender identity and being denied hormone therapy.

The prison environment can be particularly harmful to transgender women, as reports (including the 2009 report by the National Prison Rape Elimination Commission) consistently document that transgender women are victims of sexual abuse at much higher rates than the rest of the population while in custodial environments including lock-ups, jails and prisons, as well as while being searched by male prison guards. In its June 2015 report of data collection activities, the Bureau of Justice Statistics ("BJS") disclosed that an estimated 35% of transgender people held in prisons such as those in Colorado reported experiencing one or more incidents of sexual victimization in the past 12 months or since admission. According to the BJS report, when asked about the experiences surrounding their victimization by other incarcerated people, 72% of the transgender respondees said they experienced force or threat of force and 29% said they were physically injured.

**The Relevant Standards For Incarcerating Transgender People And Providing Healthcare To Transgender Prisoners**

The World Professional Association for Transgender Health ("WPATH") is the leading professional association for surgeons, doctors, medical researchers and others who specialize in the medical treatment of people with Gender Dysphoria. Based on decades of clinical experience, WPATH has promulgated medical standards of care for treating patients with Gender Dysphoria, the Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming

People. All Defendants entrusted with the care, treatment, and safety of the transgender women in the El Paso County Jail are aware that WPATH standards of care are applicable to Ms. Griffith and other transgender women in the El Paso County Jail. The WPATH Standards of Care are widely recognized in the medical community as the authoritative standard for the provision of transgender healthcare and the National Commission on Correctional Healthcare recommends the WPATH standards for use in all correctional facilities.

The WPATH standards of care apply in their entirety to transgender people in prisons and require individual assessment for appropriate treatment in a fair and tolerant climate, which may consist of outward expression of one's internal sense of gender identity, including hormone therapy and/or transition-related surgery, and social role transition, including access to gender-affirming canteen items, like feminine grooming products and clothing.

WPATH provides that placement of transgender people in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia places transgender people at risk for victimization. Despite these known risks, El Paso County and its officials promulgating and carrying out official policy, including Defendants Elder and Gillespie, make facility assignments to people in custody solely on the basis of the individual's genitalia.

WPATH also provides that housing and shower/bathroom facilities for transgender people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. Defendants have failed to follow these requirements for Ms. Griffith and other transgender women in El Paso County's care, resulting in the ongoing violence they face.

WPATH's standards include the following treatments for those who suffer from Gender Dysphoria: (1) living part time or full time in another gender role, consistent with one's gender

identity; (2) hormone therapy to feminize or masculinize the body; (3) psychotherapy for purposes such as exploring gender identity, role, and expression, addressing the negative impact of gender dysphoria and stigma on mental health, alleviating internalized transphobia, enhancing social and peer support, improving body image, or promoting resilience; (4) changes in name and gender marker on identity documents.

The WPATH standards also counsel that those who engage in mental health treatment of those with Gender Dysphoria have a few minimal qualifications, including: (1) A master's degree or its equivalent in a clinical behavioral science field; (2) Competence in using the Diagnostic Statistical Manual of Mental Disorders and/or the International Classification of Diseases for diagnostic purposes; (3) Ability to recognize and diagnose coexisting mental health concerns and to distinguish these from gender dysphoria; (4) Documented supervised training and competence in psychotherapy or counseling; (5) Knowledge about gender-nonconforming identities and expressions, and the assessment and treatment of gender dysphoria; and (6) Continuing education in the assessment and treatment of gender dysphoria. The WPATH standards emphasize that an important task of mental health professionals is to educate clients regarding the diversity of gender identities and expressions and the various options available to alleviate Gender Dysphoria. Mental health professionals then may facilitate a process (or refer elsewhere) in which clients explore these various options, with the goals of finding a comfortable gender role and expression and becoming prepared to make a fully informed decision about available medical interventions, if needed. According to the WPATH standards, mental health providers should support changes in a client's name and/or gender marker on identity documents.

The WPATH standards dictate that clinicians who prescribe hormone therapy should

provide ongoing medical monitoring, including regular physical and laboratory examination to monitor hormone effectiveness and side effects.

Importantly, the WPATH standards make clear that they apply to all transsexual, transgender, and gender-nonconforming people, irrespective of their housing situation and people should not be discriminated against in their access to appropriate health care based on where they live, including institutional environments such as prisons. The WPATH standards state that health care for transsexual, transgender, and gender-nonconforming people living in an institutional environment should mirror that which would be available to them if they were living in a non-institutional setting within the same community, and access to these medically necessary treatments should not be denied on the basis of institutionalization or housing arrangements. Additionally, the WPATH standards clearly outline that if the in-house expertise of health professionals in the direct or indirect employ of the institution does not exist to assess and/or treat people with Gender Dysphoria, it is appropriate to obtain outside consultation from professionals who are knowledgeable about this specialized area of health care. Importantly, according to the WPATH standards, people who enter an institution on an appropriate regimen of hormone therapy should be continued on the same, or similar, therapies and monitored appropriately because the consequences of abrupt withdrawal of hormones or lack of initiation of hormone therapy when medically necessary include a high likelihood of negative outcomes such as surgical self-treatment by auto-castration, depressed mood, dysphoria, and/or suicidality.

PREA establishes a zero-tolerance standard against sexual abuse in adult prisons and other confinement centers and requires agencies to comply with national standards to eliminate sexual abuse, recognizes that transgender people face elevated risks of being victimized in prisons,

mandates that state correctional facilities provide proper training to correctional staff, and requires subject agencies to establish methods to deter and detect sexual violence in prison, to identify and treat such victims, and to report incidents of such violence to the Bureau of Justice Statistics.

**El Paso County And Wellpath Officials Were Aware That Ms. Griffith Is A Transgender Woman Who Suffers From Gender Dysphoria**

In July of 2020, Ms. Griffith was booked into the El Paso County Jail. On intake, it was noted in Ms. Griffith's medical records that she is a transgender woman who identifies and presents as female. Ms. Griffith's medical records note that she has been diagnosed with Gender Dysphoria. El Paso County and Wellpath officials were also on notice that Ms. Griffith is blind.

Defendants were aware that Ms. Griffith has a history of self-harm, which is a symptom and manifestation of her diagnosed Gender Dysphoria. Defendants were also aware that Ms. Griffith had an increased suicide risk because of her transgender status and history of past suicide attempts. And, Ms. Griffith alerted Defendants to self-harming thoughts throughout her incarceration. On March 11, 2021, Ms. Griffith told Christine Mohr that she wanted to cut off her penis on a daily basis and Defendant Mohr acknowledged that Ms. Griffith has an extensive history of self-mutilation. On July 1, 2021, Ms. Griffith told a Wellpath official that she would remove her penis herself once she could figure out how to do it and would do it as soon as possible.

Ms. Griffith also alerted Wellpath officials during the intake process that she was receiving Hormone Replacement Therapy ("HRT") prior to being incarcerate at the El Paso County Jail. Ms. Griffith's HRT was verified as being properly prescribed by an outside provider and issued by a local pharmacy.

**El Paso County And Its Officials Have An Official Policy Of Housing Transgender Women, Like Ms. Griffith, In All-Male Units At The El Paso County Jail**

When Ms. Griffith first entered El Paso County Jail on July 20, 2020, she was an openly transgender woman with a feminine appearance. During her intake screening, she notified El Paso County Jail and Wellpath personnel that she was a transgender woman receiving hormone therapy for her diagnosed Gender Dysphoria. Ms. Griffith explicitly requested placement in a women's facility because she feared being sexually abused and assaulted in male facilities by both guards and inmates, along with fearing the humiliation of being constantly searched by male guards in a male unit and the general degradation of being considered a man when she is a transgender woman.

El Paso County, as a matter of official policy, refuses to house transgender women in female housing facilities. El Paso County continues to house Ms. Griffith, and other transgender women in its custody in male units within the El Paso County Jail. El Paso County officials ignored Ms. Griffith's health and safety requests, despite knowing the risks she faced, and subjected her to a terrible sequence of constitutional violations over the last year.

El Paso County officials disregarded Ms. Griffith's safety concerns and housed her in men's units within the El Paso County Jail where she foreseeably became a victim of multiple instances of sexual assault, harassment, and degrading and transphobic behavior at the hands of male deputies. Ms. Griffith continuously requested that she be placed in a unit that conformed with her gender identity.

Throughout her incarceration, Ms. Griffith repeatedly requested to be housed in a women's unit within the El Paso County Jail, and both El Paso County and Wellpath officials promptly denied these requests. For example, on October 29, 2020, Ms. Griffith requested that she be placed in a female unit because she is legally a transgender woman and she was previously housed in Denver Women's while incarcerated within the Colorado Department of Corrections. In response,

an El Paso County official informed Ms. Griffith that she would not be moved and she would remain in an all-male unit.

On December 9, 2020, Ms. Griffith asked that she be moved to a female unit, and that she was previously housed in Denver Women's while she was incarcerated in the Colorado Department of Corrections. On January 15, 2021, Ms. Griffith requested appropriate housing in a female ward. Ms. Griffith grieved numerous staff regarding the issue and alerted El Paso County and Wellpath officials that she had previously been housed in two DOC facilities in female wards.

On January 22, 2021, Ms. Griffith told Wellpath official Raymond Carrington that she was suffering from extreme anxiety because she feared repercussion for grieving her treatment in custody: namely, that she was continuing to be housed in a male ward and treated as male, even though she is a transgender woman. Ms. Griffith also reported to the Wellpath official that she felt as though people in the El Paso County Jail do not accept her for the person that she is and that she was being ostracized in the male ward for being a transgender woman. Ms. Griffith expressed to the Wellpath official the difficulty on her mental health of being housed in a male ward and expressed her desire to be housed with women because she is a transgender woman.

On January 22, 2021, Ms. Griffith also wrote a grievance that again asked that she be moved to a women's unit. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being housed in an all-male unit with male guards. On January 23, 2021, Ms. Griffith wrote another grievance asking to be moved to a women's unit within the El Paso County Jail, stating that she was suffering on a daily basis due to El Paso County's and Wellpath's failure to move her to a unit that corresponds with her gender identity. On January 23, 2021, Ms. Griffith wrote another kite complaining about the lack of accommodations for her

Gender Dysphoria, including housing in a men's prison.

On February 26, 2021, Ms. Griffith asked the mental health provider why she continued to be housed in a men's ward and that this was creating anxiety and depression for her. Ms. Griffith also stated that she continued to be called "sir" by deputies. On March 9, 2021, Ms. Griffith wrote a grievance requesting that Ms. Mohr provide information about Ms. Griffith's diagnosed Gender Dysphoria to El Paso County Jail officials so that they would move Ms. Griffith to housing that corresponded with her gender identity. On March 10, 2021, Ms. Griffith again wrote a kite complaining about being housed in a male ward and being considered a male within the Jail.

On March 11, 2021, Ms. Griffith told Defendant Christine Mohr that she wanted to be housed with women and that she had previously been housed with women in CDOC, which Mohr confirmed by reviewing Ms. Griffith's previous incarceration records. Defendant Mohr acknowledged consulting with the HSA and sergeant about Ms. Griffith's housing and property requests.

On March 19, 20201, Christine Mohr noted that Ms. Griffith expressed frustration to her because Ms. Griffith continued to want to be housed in a female unit but had not been moved. Ms. Mohr acknowledged talking to the I/C Supervisor and Commander about Ms. Griffith's concerns. On March 27, 2021, Mohr told Ms. Griffith that she would not be moved to a female ward.

Plaintiff believes that El Paso County has never housed a transgender women in a facility that corresponds with her gender identity upon initial intake. El Paso County is routinely discriminating against these women, including Ms. Griffith, based on their sex, transgender status and/or disability and exposing them to harassment, rape, sexual assault, and other anti-transgender violence, or a heightened risk thereof by refusing to provide them safe housing.

The decision to house Ms. Griffith in housing that does not conform with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm. The decision was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

**Defendant Andrew Mustapick Sexually Harassed And Assaulted Ms. Griffith During An Unconstitutional Visual Body-Cavity Search Pursuant To El Paso County's Official Policy That Male Guards Conduct Unsupervised Visual Body-Cavity Searches Of Transgender Women Inmates**

It is El Paso County's official policy that transgender women (including those with Gender Dysphoria) are searched, including visual body-cavity searched, by male staff and not by female staff. No female guards are required to be present during searches (including visual body-cavity searches). Transgender women in El Paso County custody have routinely been subjected to searches, including visual body-cavity searches, by male staff.

When Ms. Griffith was booked into the jail, she was taken to the strip out room. Ms. Griffith's booking record indicates that she was strip-searched. Before Ms. Griffith began stripping off her clothes, both a male and female deputy arrived. When Ms. Griffith saw that both a male and female deputy would be conducting her strip-search, Ms. Griffith protested and asked that the male deputy leave. Ms. Griffith told both deputies that, because she is transgender, she does not want a male deputy to be present. Defendant Jane Doe, now known as Deputy Dawne Elliss, told Ms. Griffith that, per her sergeant's orders, the male deputy would stay throughout the entire strip out process. Deputy Elliss told Ms. Griffith that because she was "still a male" in El Paso County's "system" that a male deputy would be conducting her search pursuant to El Paso County policy and procedure. Ms. Griffith again asked that Deputy Elliss conduct the search because Ms. Griffith is a transgender woman. Deputy Elliss refused and cited the policy.

Deputy Elliss then told Ms. Griffith to take off her shirt, which Ms. Griffith did. Ms. Griffith was compliant throughout the whole process. After examining Ms. Griffith's breasts, with Defendant John Doe present, now known as Deputy Andrew Mustapick, Deputy Elliss left the room. As Deputy Elliss left the room, she told Defendant Deputy Musatpick, "*he* is all yours now to strip out." Deputy Elliss left Ms. Griffith alone with Defendant John Doe and did nothing to ensure that Deputy Mustapick did not sexually harass Ms. Griffith and subject her to an unconstitutional strip search.

After Deputy Elliss left the room, Deputy Mustapick ordered Ms. Griffith to take off her socks, pants, and panties, and then place her hands on the wall. Deputy Mustapick then told Ms. Griffith to step back, bend over, and "spread [her] sexy cheeks." Ms. Griffith protested Deputy Mustapick's use of this derogatory and sexually threatening language, but complied with his directive. Defendant John Doe then told Ms. Griffith that he was "going to go balls deep in that ass" while grabbing his own penis in view of Ms. Griffith. Deputy Mustapick was extremely aggressive while searching Ms. Griffith's genitals and making these sexually threatening statements. After Deputy Mustapick was finished sexually harassing Ms. Griffith, he warned her that she had better not tell anyone about what he had done and said to her. He threatened Ms. Griffith that if she did tell someone, he would make sure that she was brutalized by the guards at the El Paso County Jail. Based on these explicit threats, Ms. Griffith did not file a grievance for this incident because she justifiably feared reprisal from Deputy Mustapick if she did so.

There was no legitimate penological purpose for allowing a male guard to conduct a visual body-cavity search of Ms. Griffith. And, there was certainly no penological purpose for any of the actions taken by Defendant Deputies Mustapick and Elliss. El Paso County officials' threatening,

intimidating and harassing visual body-cavity search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

El Paso County officials' threatening, intimidating and harassing visual body-cavity search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm. Ms. Griffith actually did engage in self-harm by wrapping a rubber bang around her genitalia extremely tightly with the purpose of self-castration.

**Defendant Draper Sexually Assaulted Ms. Griffith During An Unconstitutional Search Pursuant To El Paso County's Official Policy That Male Guards Conduct Unsupervised Searches Of Transgender Women Inmates**

Because Ms. Griffith was not housed in accordance with her gender identity, or classified in El Paso County's system in accordance with her female gender identity, she was subject to multiple other cross-gender searches by male deputies, both routine and non-routine. On August 8, 2020, while Ms. Griffith was housed in an all-male unit, Ms. Griffith left her cell to go to the law library. Upon returning from the library, Defendant Draper subjected Ms. Griffith to a cross-gender pat-down search. While purportedly "searching" Ms. Griffith, Deputy Draper grabbed Ms. Griffith's breasts. Deputy Draper's decision to grab Ms. Griffith's breasts caused her great physical discomfort and emotional distress. There was no penological purpose for Deputy Draper's fondling of Ms. Griffith's breasts.

After Ms. Griffith was groped by Defendant Draper during the pat search, Ms. Griffith filed a grievance. During the review of that grievance, Kimberly Farell (from the El Paso County Sheriff's Office) found that Draper's hand stopped "in the area of Griffith's breast[.]" Deputy

Draper's assault of Ms. Griffith was caused by the policy promulgated and enforced by Defendants El Paso County and Sheriff Elder housing transgender women, like Ms. Griffith, in the men's facility and continuing to require male deputies, like Defendant Draper, to search transgender women without any supervision. Because Ms. Griffith was housed in a male facility, and considered a male inmate by El Paso County, the El Paso County policy prohibiting cross-gender pat-down searches absent exigent circumstances (and requiring that all cross-gender pat-down searches be documented) did not apply to Ms. Griffith. El Paso County officials' continuous searches of Ms. Griffith and related sexual assaults, which per policy were conducted by unaccompanied male deputies, were discriminatory actions and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

El Paso County officials' continuous searches of Ms. Griffith and related sexual assaults, which per policy were conducted by unaccompanied male deputies, have exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm. Ms. Griffith actually did engage in self-harm by wrapping a rubber bang around her genitalia extremely tightly with the purpose of self-castration.

**Ms. Griffith Was Sexually Assaulted By A Male Inmate After Putting Defendants On Notice That She Was Not Safe In An All-Male Unit**

After asking to be moved to a female unit for over a year, Ms. Griffith was sexually assaulted by another male inmate on November 18, 2021. The inmate approached Ms. Griffith while she was laying in her bunk in the all-male unit she continued to be assigned to by El Paso County and Wellpath officials, and groped her right breast. Then, the inmate jeered Ms. Griffith, "you know you want this dick." After being sexually assaulted, Ms. Griffith was so distressed that she asked to see a mental health provider. This was not the first time that Ms. Griffith was assaulted

by the other inmate. A witness told El Paso County officials that he witnessed at least three to four

other similar assaults of Ms. Griffith.

**Defendants Wellpath, Elder, and Mohr Denied Necessary Mental Health Care To Ms. Griffith Pursuant To El Paso County's Customary Practice Of Denying Transgender Inmates Necessary Mental Health Care**

Ms. Griffith, as a transgender inmate diagnosed with Gender Dysphoria, requires regular

mental health care. Despite well-settled authority that dictates that mental health care is necessary

to treat transgender women who suffer from Gender Dysphoria, Defendants Wellpath, El Paso

County, Elder, and Mohr refuse to provide that necessary treatment.

When Ms. Griffith initially arrived at the El Paso County Jail, she specifically requested

mental health treatment for her diagnosed Gender Dysphoria. Defendant Mohr told her that she

would not receive treatment for her Gender Dysphoria. Instead, she would be seen once a month

by a mental health professional that would ask her a few standard questions. Since her arrival at

the El Paso County Jail, the only time that Ms. Griffith sees a mental health professional is once a

month, when Defendant Mohr comes to Ms. Griffith's cell and asks her five standard questions

(whether she is suicidal, whether she is hearing voices, etc.) and then leaves. None of the questions

relate to Gender Dysphoria. Defendant Mohr's monthly visits are completed in a matter of minutes,

and with no follow up whatsoever.

Ms. Griffith has repeatedly filed grievances requesting appropriate mental health treatment,

in line with WPATH guidelines, for her Gender Dysphoria. Defendants have repeatedly denied

these grievances. Ms. Griffith specifically asked Defendant Mohr to provide appropriate mental

health treatment, in line with WPATH guidelines, for her Gender Dysphoria. Defendant Mohr has

not done so.

El Paso County Jail officials have told Ms. Griffith that the El Paso County Jail does not have a policy for treating inmates with Gender Dysphoria and, therefore, she would not receive mental health treatment for Gender Dysphoria. Defendant Elder has specifically failed to implement a policy that would allow for Ms. Griffith to receive appropriate mental health treatment for Gender Dysphoria. It is obvious that the El Paso County Jail would house inmates with Gender Dysphoria and Defendant Elder's refusal to implement a policy to allow for appropriate mental health treatment of Gender Dysphoria was deliberately indifferent to the serious mental health needs of transgender inmates with Gender Dysphoria, including Ms. Griffith. Ms. Griffith's Gender Dysphoria consequently remained untreated leading her to become depressed and have increased ideation of self-harm.

Defendants lack qualified mental health staff to provide the proper care and treatment required for Gender Dysphoria. Defendants have made an intentional decision not to hire qualified mental health staff.

Plaintiff believes Defendants Wellpath, El Paso County, and Elder provide mental health care to inmates who do not suffer from Gender Dysphoria, but specifically deny mental health care to inmates who suffer from Gender Dysphoria. Ms. Griffith has been denied the programs, services and benefits of the El Paso County Jail on the basis of her disability and her sex.

El Paso County and Sheriff Elder knew and know about the necessary accommodations, including the mental health care needed by Ms. Griffith, yet have denied these accommodations and/or have decision-making authority over whether the accommodations have been granted, and failed to take necessary action.

Defendant Wellpath continues to have a legal and ethical duty to make independent medical decisions about what, if any, mental health accommodations are necessary for Ms. Griffith. Instead of exercising that independent medical judgment, Defendant Wellpath denied necessary accommodations and treatment in reckless disregard for the safety of Ms. Griffith and was deliberately indifferent to her serious mental health needs. Despite being responsible for the care and treatment of Ms. Griffith, Wellpath blatantly refused necessary care and accommodations.

El Paso County's policy of not providing weekly therapy to transgender inmates from a qualified mental healthcare provider was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

El Paso County policy of not providing weekly therapy to transgender inmates from a qualified mental healthcare provider have exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm. Ms. Griffith actually did engage in self-harm by wrapping a rubber bang around her genitalia extremely tightly with the purpose of self-castration.

**Defendants Wellpath, Elder, and Roe Denied Necessary Medical Care To Ms. Griffith Pursuant To El Paso County's Customary Practice Of Denying Transgender Inmates Hormone Therapy**

Ms. Griffith, as a transgender inmate diagnosed with Gender Dysphoria, requires regular medical care, including hormone therapy. Despite well-settled authority that dictates that hormone therapy is necessary to treat transgender women who suffer from Gender Dysphoria, Defendants refuse to provide that necessary treatment. Ms. Griffith has been on Hormone Replacement Therapy ("HRT") to treat her Gender Dysphoria for over twenty years. Defendants were aware of

both Ms. Griffith's diagnosis and her long history of being treated with HRT. When Ms. Griffith was booked into the El Paso County Jail, she noted that she was on HRT.

El Paso County and Wellpath refused to provide Ms. Griffith with hormone therapy shots for over a month upon her incarceration despite being on notice that Ms. Griffith had a valid prescription for HRT. When Ms. Griffith was provided with her prescribed HRT shots, she only received them about half of the time. Ms. Griffith would consistently receive delayed doses of HRT.

Because Defendants El Paso County, Wellpath, and Roe stopped Ms. Griffith's hormone therapy, her body went through physical changes and she suffered physical harm, along with emotional distress. El Paso County's and Wellpath's customary failure to provide HRT to transgender inmates, like Ms. Griffith, was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

Defendants' failure to provide Ms. Griffith with hormone therapy exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm. Ms. Griffith actually did engage in self-harm by wrapping a rubber bang around her genitalia extremely tightly with the purpose of self-castration.

**El Paso County Customarily Mis-Genders Ms. Griffith and other Transgender Individuals In Its Custody**

El Paso County refuses to recognize transgender women in its custody as the women that they are. Instead, El Paso County officials routinely refers to these women, including Ms. Griffith, using the male names they were assigned at birth. Documentation maintained by El Paso County, whether in case management, mental health or medical files, routinely refer to these women as "men" or using male pronouns, despite El Paso County's own documentation showing that these

individuals belong to the community of transgender women. And, Wellpath officials consistently mis-gendered Ms. Griffith in her medical records.

Throughout her incarceration at the El Paso County Jail, sergeants and deputies mis-gendered Ms. Griffith and used language that does not conform with her gender identity. On September 16, 2020, Ms. Griffith complained to El Paso County Deputy Holder about other inmates in her unit not wearing shirts because the male inmate's failure to wear their shirts made her uncomfortable as a transgender woman. In response, Deputy Holder walked over to the other inmates and loudly yelled at them, "the blind faggot said you need to put your shirts on" in reference to Ms. Griffith. Beyond mis-gendering Ms. Griffith (and highlighting her vision disability), this statement was designed to create an antagonistic relationship between her and other inmates, placing her at an even greater risk of assault. Based on our information, Deputy Holder was not disciplined for this gross abuse of his authority.

On November 10, 2020, Ms. Griffith wrote in a grievance that an El Paso County deputy had consistently mis-gendered her. When Ms. Griffith attempted to correct the deputy, the deputy confronted Ms. Griffith. The deputy was not disciplined for these actions. On December 9, 2020, Ms. Griffith wrote in a grievance that El Paso County deputies continuously mis-gendered her, which was causing her significant emotional distress. On February 3, 2021, Ms. Griffith wrote in a grievance that she was being subjected to verbal harassment by male deputies in the El Paso County Jail on a daily basis, and that this harassment was causing her pain. On February 26, 2021, Ms. Griffith stated to a Wellpath official that she continued to be called "sir" by deputies and that this caused her anxiety.

On June 23, 2021, Ms. Griffith wrote a grievance because she was, again, mis-gendered by an El Paso County Jail official, and felt as though El Paso County Jail officials were purposefully mis-gendering her to discriminate against her. On July 1, 2021, Ms. Griffith told a Wellpath official that when she identifies herself as female, the jail (including the guards) do not respect her wishes or use the appropriate pronouns. Ms. Griffith also told the Wellpath official that she would remove her penis herself once she could figure out how to do it, and would do it as soon as possible. Ms. Griffith told the Wellpath official that the WPATH standards of care should be followed. The official did not take any action to rectify the consistent mis-gendering that Ms. Griffith endured.

Mis-gendering is a form of sexual harassment. This constant mis-gendering of Ms. Griffith has been caused by El Paso County's and Defendant Elder's policy of housing Ms. Griffith in a male unit, along with the customs and practices at the El Paso County Jail that condone discriminatory and harassing treatment of transgender prisoners. El Paso County officials' actions in constantly mis-gendering Ms. Griffith was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

The constant mis-gendering of Ms. Griffith has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress, become depressed, and have increased ideation of self-harm. Ms. Griffith actually did engage in self-harm by wrapping a rubber bang around her genitalia extremely tightly with the purpose of self-castration.

**El Paso County Customarily Denies Ms. Griffith And Other Transgender Inmates The Ability To Dress In Accordance With Their Gender Identity**

On September 7, 2020, Ms. Griffith sought permission to purchase a sports bra and panties. Defendants denied that request. In response, Ms. Griffith filed a grievance seeking to allow her to purchase a sports bra and panties. Defendants denied that request as well. Eventually, Ms. Griffith

filed another grievance seeking to talk to Sergeant Auyad about the purchase of a sports bra and panties. Defendants continued to deny Ms. Griffith's request to have the ability to purchase a sports bra and panties until October 5, 2020, when Sergeant Auyad approved her request but only to purchase a sports bra.

Defendants denied Ms. Griffith a reasonable accommodation for her Gender Dysphoria and forced to leave her breasts without a bra, to be ogled by male inmates and deputies for approximately a month. This caused Ms. Griffith significant emotional distress and physical discomfort. Several days later, Lieutenant Cornell came to Ms. Griffith's cell with a sports bra. Lieutenant Cornell told Ms. Griffith that she would only receive one sports bra, and not panties, because she did not need to "hold female products down there." When Ms. Griffith protested, and again asked for an accommodation for her Gender Dysphoria in the form of being provided the ability to purchase panties, Lieutenant Cornell again denied her request. On October 24, 2020, Lieutenant Cornell filed a formal response to Ms. Griffith's grievance and, again, told her that she would not be issued, or allowed to purchase, panties. Lieutenant Cornell again denied Ms. Griffith's request for an accommodation.

Ms. Griffith subsequently elevated her concerns to Commander Cy Gillespie and requested that she be provided panties. In response, Defendant Gillespie told Ms. Griffith that she would never get panties in the El Paso County Jail. Defendants have also denied Ms. Griffith the ability to purchase lipstick because she is a transgender woman. Cisgender women are allowed to purchase lipstick at the commissary. Defendant Gillespie specifically told Ms. Griffith that she cannot purchase lipstick per El Paso County Jail policy. Defendants' denial of gender appropriate undergarments and lipstick to Ms. Griffith was caused by El Paso County's and Defendant Elder's

policy of housing Ms. Griffith in a male unit, along with the customs and practices at the El Paso County Jail that condone discriminatory treatment of transgender prisoners.

Throughout her incarceration, Ms. Griffith requested access to gender-affirming clothing. On September 7, 2020, Ms. Griffith wrote a grievance requesting that she be provided female underwear to help alleviate symptoms of her diagnosed Gender Identity Disorder. An El Paso County official wrote back to Ms. Griffith and informed her that she would not even be allowed the opportunity to purchase female underwear from the canteen. On October 14, 2020, Ms. Griffith requested that she be provided women's underwear. In response, a Wellpath official told Ms. Griffith that she would not be receiving women's underwear. On January 15, 2021, Ms. Griffith requested panties rather than boxers because she is a transgender woman. This request was again denied. On March 11, 2021, Ms. Griffith asked Defendant Christine Mohr that she would like to be provided women's underwear. On March 19, 2021, Christine Mohr noted that Ms. Griffith expressed frustration on wanting panties; Defendant Mohr acknowledged talking to the I/C Supervisor and Commander about Ms. Griffith's concerns. In a follow-up conversation on March 27, 2021, Christine Mohr told Ms. Griffith that she would not be issued panties because she does not require the use of feminine napkins. Illustrating the obviously pretextual nature of this articulated justification for their discriminatory conduct, Defendants do not require post-menopausal and other non-menstruating women in their custody to wear men's underwear.

El Paso County officials' actions in denying Ms. Griffith access to female undergarments and lipstick was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria. El Paso County officials' customary decisions to deny Ms. Griffith

the right to dress in accordance with her gender identity was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

El Paso County officials' customary decisions to deny Ms. Griffith the right to dress in accordance with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm. Ms. Griffith actually did engage in self-harm by wrapping a rubber bang around her genitalia extremely tightly with the purpose of self-castration.

**Ms. Griffith Was Subjected To Continuous Cross-gender Pat-down Searches By Male Deputies, Which Caused Her Significant Distress, And Were Done Pursuant To El Paso County's Policies, Customs, And Practices**

Throughout her incarceration at the El Paso County Jail, Ms. Griffith was subjected to continuous cross-gender pat-down searches by male deputies pursuant to official El Paso County policy. Ms. Griffith complained about these cross-gender searches, and the harmful effects they were having on her physical and mental health, but El Paso County and Wellpath did nothing to cease subjecting Ms. Griffith to cross-gender searches.

On January 20, 2021, Ms. Griffith wrote a grievance where she stated that her anxiety is "through the roof" every time she is patted down by male deputies. Additionally, Ms. Griffith complained about male deputies continually touching her breast and groin when patting her down. Ms. Griffith noted that female inmates are not patted down by male deputies, and that she was being singled out as a transgender woman for different treatment. On January 21, 2021, Ms. Griffith complained to a Wellpath official about the effect of male pat downs on her mental health, and the disparate treatment given to her by male pat downs. On January 22, 2021, Ms. Griffith was upset that male officers continued to pat search her and, particularly, she was upset about a pat-

down search performed by a male deputy, Defendant Draper, that had just occurred when she returned from the law library. Ms. Griffith wrote a grievance because she continued to be subject to cross-gender pat down searches, including the one in which Defendant Draper intentionally touched her breast. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being patted down by male guards. Ms. Griffith wrote this grievance, which was viewed by both El Paso County officials and Wellpath officials. Later that day, Ms. Griffith told a Wellpath official that she felt violated when male officers touch her.

On January 23, 2021, Ms. Griffith wrote a kite complaining about the lack of accommodations for her Gender Dysphoria, including being constantly patted down by male deputies. On February 3, 2021, Ms. Griffith wrote yet another grievance because she was being subjected to non-routine cross-gender pat down searches on a daily basis, and that these pat-down searches were causing her physical and emotional pain.

El Paso County officials' continuous searches of Ms. Griffith, which per policy, custom, and practice were conducted by unaccompanied male deputies, were discriminatory actions and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

The decision to subject Ms. Griffith to continuous searches by unaccompanied male deputies has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm. Ms. Griffith actually did engage in self-harm by wrapping a rubber bang around her genitalia extremely tightly with the purpose of self-castration.

b.    **El Paso County Defendants' Statement:**

The El Paso County Defendants deny that they violated Ms. Griffith's rights under the United States Constitution, the Colorado Constitution, the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Colorado Anti-Discrimination Act, or any other law. The El Paso County Defendants further deny that there was an unconstitutional, custom, policy, or practice of improperly housing transgender inmates in the El Paso County Criminal Justice Center or treating inmates' gender dysphoria. Plaintiff's claims further fail as to the individual El Paso County Defendants because they are entitled to qualified immunity. The El Paso County Defendants have not yet filed an Answer but reserves the right to assert additional denials and affirmative defenses.

  c.  **<u>Wellpath, LLP and Christine Mohr's Statement</u>**:

Defendants, Wellpath, LLC and Dr. Christine Mohr (the "Wellpath Defendants"), deny that they violated Plaintiff's rights under the United States Constitution, the Colorado Constitution, Colorado Anti-Discrimination Act ("CADA"), or any other state or federal laws. Specifically, Wellpath Defendants deny that they treated Plaintiff differently than similarly situated individuals in violation of the Equal Protection Clause, subjected Plaintiff to unconstitutional conditions of confinement in violation of the Fourteenth Amendment, discriminated against Plaintiff based on her transgender status and /or disability under the CADA, or were negligent under Colorado state law. Wellpath Defendants further deny that Plaintiff was denied hormone therapy and mental health treatment during her incarceration at El Paso County Jail. Wellpath Defendants affirmatively allege that Plaintiff was provided continuous medical and mental health care. Wellpath Defendants have not filed an Answer and reserve the right to assert additional denials and affirmative defenses.

### 4.    UNDISPUTED FACTS

The following facts are undisputed:

a.    At all times relevant to the subject matter of this litigation, Darlene Griffith was a citizen of the United States of America and a resident of the State of Colorado.

b.    At all times relevant to the subject matter of this litigation, Christine Mohr was a citizen of the United States and a resident of the State of Colorado.

c.    At all times relevant to the subject matter of this litigation, Dr. Jane Roe was a citizen of the United States and a resident of the State of Colorado.

d.    At all times relevant to the subject matter of this litigation, Sheriff Bill Elder was a citizen of the United States and a resident of the State of Colorado.

e.    At all times relevant to the subject matter of this litigation, Deputy Draper was a citizen of the United States and a resident of the State of Colorado.

f.    At all times relevant to the subject matter of this litigation, Deputy Dawne Elliss was a citizen of the United States and a resident of the State of Colorado.

g.    At all times relevant to the subject matter of this litigation, Deputy Andrew Mustapick was a citizen of the United States and a resident of the State of Colorado.

h.    At all times pertinent hereto, Christine Mohr was acting within the course and scope of her employment.

i.    At all times pertinent hereto, Doctor Jane Roe was acting within the course and scope of her employment.

j.    At all times pertinent hereto, Deputy Draper was acting within the course and scope of his employment.

k.      At all times pertinent hereto, Sheriff Bill Elder was acting within the course and scope of his employment.

l.      At all times pertinent hereto, Deputy Dawne Elliss was acting within the course and scope of her employment.

m.      At all times pertinent hereto, Deputy Andrew Mustapick was acting within the course and scope of his employment.

n.      Darlene Griffin was an inmate at the El Paso County Jail.

## 5.      COMPUTATION OF DAMAGES

**Plaintiff:** Plaintiff claims appropriate relief at law and equity; declaratory relief and other appropriate equitable relief; economic losses on all claims as allowed by law; compensatory and consequential damages, including damages for emotional and physical distress, humiliation, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; punitive damages on all claims allowed by law and in an amount to be determined at trial; attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law; pre- and post-judgment interest at the appropriate lawful rate; any further relief that this court deems just and proper, and any other relief as allowed by law.

Counsel for Plaintiff are in the process of gathering information relevant to future economic damages. A more precise computation of Plaintiff's damages, to the extent Plaintiff's damages are subject to such computation, will be provided during the normal course of discovery, and will be determined by a jury in its sound discretion following a presentation of the evidence at trial in this matter.

Damages for emotional distress are not susceptible to the type of calculation contemplated by Rule 26(a)(1). "[C]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 487 n.3 (5th Cir. 2000).

Punitive damages are sought based upon the egregious nature of the conduct of the Defendants as set forth in the complaint on the federal claims against Defendants and the need to restrain such conduct in the future. Calculation of these damages and entitlements is premature and not susceptible to the type of calculation contemplated by Rule 26(a)(1).

**El Paso County Defendants:** The El Paso County Defendants do not seek damages but will seek to recover their attorneys' fees and costs as permitted by law.

**Wellpath Defendants**: Wellpath Defendants will seek recovery of their costs and attorneys' fees as permitted by 42 U.S.C. § 1988(b) and other applicable law.

## 6.    REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER FED. R. CIV. P. 26(F)

a.    Date of Rule 26(f) meeting: A Rule 26(f) meeting has not yet taken place. Under the Rule, the deadline for the parties to meet and confer is 21 days before the date of the Scheduling Conference, which is scheduled for April 29, 2022. Thus, the Rule 26(f) meet and confer deadline would have been April 8, 2022, the date of the Settlement Conference and the date the Scheduling Conference Order issued. The parties are working to schedule a time to conduct the Rule 26(f) meeting.

b.    Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1): None.

c.    Statement as to when Rule 26(a)(1) disclosures were made or will be

made: Rule 26(a)(1) disclosures will be made on or before **May 6, 2022**.[1]

    d.    Deadline for Defendants to file a Responsive Pleading: **May 6, 2022**.

    e.    The parties have not agreed to conduct informal discovery.

    f.    The parties agree to take all reasonable steps to reduce discovery and reduce costs.

    g.    The parties do not anticipate that this case will involve extensive amounts of electronically stored information.

## 7.    CONSENT

All parties have **not** consented to the exercise of jurisdiction of a magistrate judge.

## 8.    DISCOVERY LIMITATIONS

    a.    The parties agree to limit the length of depositions to 4 hours, except named parties who may be deposed up to 7 hours, unless a longer deposition is agreed to be the parties or ordered by the court. Plaintiff may serve 25 interrogatories to each set of Defendants (the El Paso County Defendants constitute one set of Defendants and the Wellpath Defendants constitute a separate set of Defendants). Each set of Defendants may serve 25 interrogatories to Plaintiff.

    b.    Plaintiff may serve 25 requests for admission to each set of Defendants. Each set of Defendants may serve 25 requests for admission to Plaintiff.

    c.    Plaintiff may serve 25 requests for production to each set of Defendants. Each set of Defendants may serve 25 requests for production to Plaintiff.

---

[1] Under the Rule, Initial Disclosure Statements are due 14 days after the Rule 26(f) conference. Because the date of the Rule 26(f) conference coincided with the date the Scheduling Conference Order issued, which would make Initial Disclosure Statements due April 22, 2022, the parties stipulate to extend the deadline to disclose Initial Disclosure Statements to May 6, 2022.

d.      Other Planning or Discovery Orders: The parties anticipate their submission to the Court of a proposed protective order for its review and approval to accommodate the exchange of confidential documents and other information during the discovery process. The parties shall file their Stipulated Motion for Protective Order and proposed Protective Order within the next 10 days.

## 9.      CASE PLAN AND SCHEDULE

The plan and schedule must include the following items:

a.      Deadline for Joinder of Parties and Amendment of Pleadings**: June 3, 2022.**

b.      Discovery Cut-off: ~~January 15, 2023.~~ **February 15, 2023.**

c.      Dispositive Motion Deadline: ~~February 15, 2023.~~ **March 17, 2023.**

d.      Expert Witness Disclosure

(1)      Statement regarding anticipated fields of expert testimony, if any:

a)      Plaintiff: Plaintiff anticipates calling retained experts in the following possible fields: corrections, correctional standards for transgender detainees, transgender mental health care, transgender medical care, and emotional distress. Plaintiff may retain any expert necessary for rebuttal and/or impeachment purposes.

b)      **El Paso County Defendants:** El Paso County Defendants anticipate calling retained experts in the following fields, corrections correctional operations, including standards for transgender detainees, police procedures, inmate searches and pat-downs, neuropsychology, use of force. El Paso County Defendants may conduct an independent physical and/or mental evaluation

of Plaintiff pursuant to Fed. R. Civ. P. 35. El Paso County Defendants may

retain any expert necessary for rebuttal.

c) **Wellpath Defendants:** Wellpath Defendants anticipate calling retained

experts in the following fields: corrections mental health care, corrections

medical care, transgender mental health care, and transgender medical care.

Wellpath Defendants reserve the right to retain additional experts beyond

what is listed here, including for rebuttal and/or impeachment.

(2)  ~~Plaintiff proposes a limit of four (4) retained expert witnesses per side.~~

~~Wellpath Defendants object to this restriction.~~ Each side shall be limited to 5
retained expert witnesses

(3)  ~~Plaintiff proposes that the parties shall designate all affirmative experts and~~

~~provide opposing counsel with all information specified in Fed. R. Civ. P.~~

~~26(a) (2) on or before **November 15, 2022** and that the parties shall~~

~~designate all rebuttal experts and provide opposing counsel and any *pro se*~~

~~party with all information specified in Fed. R. Civ. P. 26(a) (2) on or before~~

~~December 15, 2022.~~ Wellpath Defendants propose that Plaintiff shall

designate all affirmative experts and provide opposing counsel with all

information specified in Fed. R. Civ. P. 26(a) (2) on or before ~~November~~

~~15, 2022~~ November 1, 2022; Defendants shall designate all rebuttal

experts and provide opposing counsel and any *pro se* party with all

information specified in Fed.

R. Civ. P. 26(a) (2) on or before ~~December 15, 2022~~ December 1, 2022;

and rebuttal experts shall be due on or before ~~January 13, 2023~~ January

6, 2023.

e.    The parties will be limited to ten (10) fact depositions per side.

f.    Deposition Schedule:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
| --- | --- | --- | --- |
| Darlene Griffith | TBD | TBD | 7 hours |
| Bill Elder | TBD | TBD | 7 hours |
| Cy Gillespie | TBD | TBD | 7 hours |
| Deputy Draper | TBD | TBD | 7 hours |
| Dawne Elliss | TBD | TBD | 7 hours |
| Andrew Mustapick | TBD | TBD | 7 hours |
| Christine Mohr | TBD | TBD | 7 hours |
| Jane Roe | TBD | TBD | 7 hours |
| 30(b)(6) Representatives of the El Paso County Sheriff's Office | TBD | TBD | 7 hours |
| 30(b)(6) Representatives of Wellpath | TBD | TBD | 7 hours |
| Plaintiff's medical providers | TBD | TBD | 4 hours |

These are the depositions anticipated at this time. The parties do not waive the right to amend
this chart or schedule.

f.    Deadline for Interrogatories: All interrogatories must be served at least 30 45
days prior to the discovery cut-off.

g.    Deadline for Requests for Production: All requests for production must be served
at least 30 45 days prior to the discovery cut-off.

34

h.      Deadline for Requests for Admission: All requests for admission must be served at least 30 45 days prior to the discovery cut-off.

## 10.  DATES FOR FURTHER CONFERENCES

a.      A Telephonic Status conferences will be held in this case at the following dates and times: October 11, 2022 at 11:30 a.m. before Magistrate Judge N. Reid Neureiter in Courtroom C203, Second floor, Byron G. Rogers Courthouse, 1929 Stout Street, Denver, Colorado 80294. The Court will set a Final Pretrial Conference at that time. The parties are directed to call the conference line as a participant at (888) 398-2342, Access Code 5755390# at the scheduled time.

b.      A final pretrial conference will be held in this case on_____at o'clock

_____m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no

later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING ISSUES

**a.**      Statement of those discovery or scheduling issues, if any, on which counsel,

after a good faith effort, were unable to reach an agreement: None**.**

**b.**      Statement of anticipated length of trial to the jury: **five (5) days.**

c.      **Plaintiff:** Plaintiff does not believe that conducting any pretrial or trial

proceedings at the District Court's facilities in Colorado Springs, Grand Junction or Durango.

**El Paso County Defendants:** The El Paso County Defendants believe it would be more

efficient and economical for the trial to be held in the District Court's facility at 212 N. Wasatch

Street, Colorado Springs, Colorado 80903, because this case arose in El Paso County (only a few

miles from the District Court's Colorado Springs facility) and involves witnesses who worked in a

facility located in El Paso County and who live in El Paso County.

d.      **El Paso County Defendants**: Ex parte meetings - Where applicable, the parties

will consider whether informal meetings are appropriate, either together or on an ex parte basis. If

Defendants' counsel believe they may meet ex parte with a treating healthcare provider,

Defendants' counsel shall notify Plaintiffs' counsel in writing, stating their intention to meet with the provider. This communication is intended to provide Plaintiffs' counsel with notice of, and a reasonable opportunity to object to, the meeting. If Plaintiffs do not object within seven (7) days, Defendants' counsel may meet with the treating healthcare provider *ex parte* and without further notice. If Plaintiffs object to the meeting, Plaintiffs' counsel shall state the specific basis for the objection pursuant to *Reutter v. Weber*, 179 P.3d 977 (Colo. 2007). If the Parties cannot agree whether an *ex parte* meeting is appropriate, the parties may ask the Court for relief.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.Colo.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.Colo.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this 29th day of April 2022.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

36

APPROVED:

s/ Andy McNulty
Andy McNulty
Mari Newman
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
amcnulty@kln-law.com

*Attorney for Plaintiff*

 s/ Nathan Whitney
Nathan Whitney
Terry Sample
Chris Strider
200 S. Cascade Ave.
Colorado Springs, CO 80903
terrysample@elpasoco.com
nathanwhitney@elpasoco.com
chrisstrider@elpasoco.com

*Attorneys for El Paso County Defendants*

s/ Ashlee B. Hesman
Daniel Struck
Ashlee B. Hesman
Kristina Rood
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
ahesman@strucklove.com
krood@strucklove.com

*Counsel for Defendants Wellpath, LLC and Christine Mohr*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2022, I electronically filed the foregoing **SCHEDULING ORDER** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Nathan Whitney
Terry Sample
Chris Strider
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
terrysample@elpasoco.com
nathanwhitney@elpasoco.com
chrisstrider@elpasoco.com


Daniel Struck
Ashlee B. Hesman
Kristina Rood
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
ahesman@strucklove.com
krood@strucklove.com


*s/ Charlotte Bocquin Scull*
Paralegal