# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

      Plaintiff,

v.

EL PASO COUNTY, COLORADO,
~~WELLPATH, LLC,~~
~~CHRISTINE MOHR, in her individual capacity,~~
~~DOCTOR JANE ROE, in her individual capacity,~~
~~SHERIFF~~ BILL ELDER, in his individual and official capacities,
~~COMMANDER~~ CY GILLESPIE, in his individual capacity,
~~DEPUTY JOHN DOE~~ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
~~DEPUTY JANE DOE~~DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity,
~~DEPUTY F/N/U DRAPER~~BRANDE FORD, in ~~his~~her individual capacity,

      Defendants.

---

### ~~SECOND~~THIRD AMENDED COMPLAINT AND JURY DEMAND

---

      Plaintiff, by and through her attorneys, Andy McNulty and Mari Newman of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her ~~Second~~Third Amended Complaint and Jury Demand as follows:

### INTRODUCTION

      1.    Darlene Griffith ~~has~~ suffered repeated sexual harassment, sexual assault~~, denial of medical and mental health care~~, and discrimination as a result of El Paso County's policy of refusing to

1

house transgender inmates based on their gender identity, and a pervasive culture of purposeful

discrimination against, and subjugation of, transgender inmates who suffer from Gender Dysphoria.

2. Ms. Griffith is a transgender woman who has been diagnosed with Gender Dysphoria. In

the community, she lives in accordance with her female gender identity and undergoes hormone therapy.

Despite this well-documented history, Defendants purposefully housed Ms. Griffith in an all-male unit

in the El Paso County Jail. Despite Ms. Griffith's multiple requests to be moved to a unit that

corresponds with her gender identity, El Paso County ~~has~~ continued to discriminatorily house her in a

unit that ~~exposes~~exposed her to a significantly increased risk of sexual harassment, assault, and

emotional distress.

3. Defendants ~~have~~ also subjected Ms. Griffith to a pervasive culture of discrimination and

sexual harassment at the El Paso County Jail. ~~Defendants denied her hormone therapy (which she had~~

~~been prescribed for twenty years prior to entry to the~~Defendant Andrew Mustapick, an El Paso County

~~Jail) for over five months and she continues to have issues receiving her necessary hormone replacement~~

~~shots. On Defendant, a male deputy~~Sheriff Deputy, sexually harassed Ms. Griffith and subjected her to a

highly invasive (and completely unnecessary) ~~strip~~visual body cavity search upon intake, while telling

her that he wanted to go "balls deep in [her] ass." ~~Another Defendant, again a male deputy, sexually~~

~~assaulted her twice during non-routine~~Because she was housed in an all-male unit, Ms. Griffith was then

subjected to repeated cross-gender pat-down searches ~~by groping her breasts. Defendants also~~

~~completely denied Ms. Griffith necessary mental health treatment for her Gender Dysphoria.~~.

Defendants continuously and intentionally mis-gendered ~~and when she has complained about it~~Ms.

Griffith while she was ~~been threatened with solitary confinement.~~incarcerated. Defendants denied Ms.

Griffith clothing that conforms with her gender identity despite the fact that cisgendered women are

allowed panties and lipstick. When El Paso County officials learned that Ms. Griffith had told her

medical care providers that she would attempt to self-castrate due to the pervasive discrimination that she faced, they took no action to rectify their on-going discrimination and harassment of her, and continued to house her in an all-male housing unit.

4. AllDefendants took all of these actions were taken in accordance with the official policies of El Paso County, or pursuant to widespread unwritten customs and practices that El Paso County has condoned.

5. Ms. Griffith brings this lawsuit to vindicate her rights and the rights of all transgender women, so that they do not have to suffer the daily indignities that she continues to suffersuffered in the El Paso County Jail.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States.

7. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Jurisdiction supporting Plaintiff's claims for attorney fees and costs is conferred by 42 U.S.C. § 1988.

8. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all times relevant to the subject matter of this SecondThird Amended Complaint.

9. Supplemental pendent jurisdiction for Plaintiffs'Plaintiff's state law claims is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent state law causes of action derive from a common nucleus of operative facts.

## PARTIES

**Plaintiff:**

10. At all times relevant to the subject matter of this Third Amended Complaint, Plaintiff Darlene Griffith was a citizen of the United States and a resident of the State of Colorado.

3

11.     During the relevant time period, Ms. Griffith was detained at the El Paso County Jail.

12.     All available administrative remedies have been exhausted to the extent required by the

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). There are no other administrative exhaustion

requirements that would pose as a bar to the claims asserted herein.

**Defendants:**

13.     Defendant El Paso County is a municipality and as such is a proper defendant under 42

U.S.C. § 1983.

14.     At all relevant times, Defendant El Paso County had a nondelegable duty to provide

adequate medical and mental health care to inmates and detainees at the El Paso County Jail. El Paso

County is liable under the nondelegable duty doctrine for the deliberate indifference of Defendant

Wellpath LLC and its employees or contractors.

15.     Defendant Wellpath LLC ("Wellpath") is a Delaware corporation with its principal

address located at 1283 Murfreesboro Road, Nashville, Tennessee, and its registered agent in Colorado,

is Corporate Creations Network, Inc., located at 155 E. Boardwalk # 490, Fort Collins, Colorado.

16.     Wellpath has previously been known by several other names, including Correct Care

Solutions ("CCS"), Correctional Healthcare Companies ("CHC"), and Correctional Healthcare

Management ("CHM"). The corporate organization, leadership, and governance of Wellpath is

substantially similar to that of its predecessor companies, and for all intents and purposes, it is the same

company.

17.     At all times relevant to the subject matter of this litigation, Wellpath contracted with El

Paso County to provide staff and medical and dental services at JCJ. At all relevant times, Wellpath was

responsible for the oversight, supervision, and training of all of the medical and mental health staff at the

El Paso County Jail, and the medical and mental health care of inmates housed at the El Paso County Jail.

18.    At all relevant times, Wellpath was acting under color of state law and performing a central function of the state.

19.    Defendant Wellpath is a private corporation, and neither it nor any of its employees or contractors are entitled to any immunity under the Colorado Governmental Immunity Act ("CGIA") on Colorado state law claims or qualified or any other immunity on the federal law claims.

20.    At all times relevant to the subject matter of this litigation, Defendant Christine Mohr was a citizen of the United States and a resident of and domiciled in Colorado and was acting within the scope of her official duties and under color of state law in her capacity as a mental health professional at the El Paso County Jail, who was employed by, or an independent contractor for, Wellpath.

21.    At all times relevant to the subject matter of this litigation, Defendant Jane Roe was a citizen of the United States and a resident of and domiciled in Colorado and was acting within the scope of her official duties and under color of state law in her capacity as a medical doctor at the El Paso County Jail, who was employed by, or an independent contractor for, Wellpath.

22.14.  At all times relevant to the subject matter of this litigation, Defendant Bill Elder was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Elder was acting under color of state law in his capacity as the El Paso County Sheriff. Defendant Elder was responsible for training and supervising all other Defendants and other employees of the El Paso County Sheriff's Department working at the jail, for setting jail policy for the county and the overall management of the jail, and for insuring the health and welfare of all persons detained in the El Paso County Jail.

23.15.  At all times relevant to the subject matter of this litigation, Defendant Cy Gillespie was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Gillespie was

acting under color of state law in his capacity as a Commander employed by El Paso County and Defendant Elder.

16.    At all times relevant to the subject matter of this litigation, Defendant Elizabeth O'Neal was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant O'Neal was acting under color of state law in her capacity as an official employed by El Paso County and Defendant Elder.

17.    At all times relevant to the subject matter of this litigation, Defendant Andrew Mustapick was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Mustapick was acting under color of state law in his capacity as a deputy employed by El Paso County and Defendant Elder.

18.    At all times relevant to the subject matter of this litigation, Defendant Dawne Elliss was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Elliss was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

24.    At all times relevant to the subject matter of this litigation, Defendant John DoeTiffany Noe was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant John Doe was acting under color of state law in his capacity as a deputy employed by El Paso County and Defendant Elder.

25.19.  At all times relevant to the subject matter of this litigation, Defendant Jane Doe was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Jane DoeNoe was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

26.20.  At all times relevant to the subject matter of this litigation, Defendant f/n/u DraperBrande Ford was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant

~~Draper~~Ford was acting under color of state law in ~~his~~her capacity as a deputy employed by El Paso County and Defendant Elder.

## FACTUAL ALLEGATIONS

### Gender Identity, Gender Dysphoria, And The Incarceration Of Transgender Women Like Ms. Griffith

~~27.~~21.  Gender identity is an innate, internal sense of one's sex—e.g., being male or female—and is a basic part of every person's core identity. Everyone has a gender identity. Most people's gender identity is consistent with the sex they were assigned at birth ("assigned sex"). Transgender people, however, have a gender identity that is different from their assigned sex. For example, a transgender woman is a woman who was assigned male at birth and has a female gender identity. A cisgender woman is a woman who was assigned female at birth and has a female gender identity.

~~28.~~22.  The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-5") recognizes that being transgender is not itself a disability, but that the clinically- relevant condition is the "Gender Dysphoria" experienced by many individuals whose gender identity conflicts with their assigned sex. Gender Dysphoria is defined as the significant distress that may accompany the incongruence between a transgender person's gender identity and assigned sex. This distress limits major life activities and is therefore a disability. A transgender person's Gender Dysphoria can be alleviated when the person is able to live, and be treated by others, consistently with the person's gender identity.

~~29.~~23.  Gender Dysphoria often, but not always, emerges during childhood.

~~30.~~24.  The accepted course of medical treatment to alleviate the symptoms of Gender Dysphoria often involves allowing the individual to live as his or her chosen gender through one or more of the following treatments: changes in gender expression and role; dressing, grooming, and otherwise

outwardly presenting in a manner consistent with one's gender identity; hormone therapy;

psychotherapy; and, in some cases, surgery to change primary and/or secondary sex characteristics.

31.25.  Ms. Griffith has been diagnosed with Gender Dysphoria and has been living as a

transgender woman for over twenty years. As part of her medically- supervised treatment, she changed

her name and altered her physical appearance to conform to her female gender identity, including

dressing in feminine attire and taking feminizing hormones, which caused her to develop female

secondary sex characteristics such as breasts, soft skin, a lack of facial hair, and other characteristics

typically associated with women.

32.26.  At all times relevant to this action, Defendants were aware of Ms. Griffith's Gender

Dysphoria and her identity as a transgender woman.

33.27.  At all times relevant to this action, Defendants were aware of Ms. Griffith's history of

Gender Dysphoria and her identity as a transgender woman.

34.28.  At all times relevant to this action, Defendants perceived Ms. Griffith as having Gender

Dysphoria and being a transgender woman.

29.     Defendants were aware that Ms. Griffith has a history of self-harm, which is a symptom

and manifestation of her diagnosed Gender Dysphoria. Defendants were also aware that Ms. Griffith had

an increased suicide risk because of her transgender status and history of past suicide attempts. And, Ms.

Griffith alerted Defendants to self-harming thoughts throughout her incarceration.

30.     On March 11, 2021, Ms. Griffith told Christine Mohr, a Wellpath mental health provider,

that she wanted to cut off her penis on a daily basis. Ms. Mohr acknowledged that Ms. Griffith has an

extensive history of self-mutilation. Ms. Mohr spoke with an El Paso County sergeant about Ms.

Griffith's expressed intent to self-mutilate and her housing, but the El Paso County official decided that

Ms. Griffith would remain housed in an all-male unit.

31.     On July 1, 2021, Ms. Griffith told Raymond Carrington, a Wellpath mental health provider, that she would remove her penis herself once she could figure out how to do it and would do it as soon as possible. Mr. Carrington noted the conversation in Ms. Griffith's medical records.  Mr. Carrington also alerted an El Paso County official that Ms. Griffith had expressed ideation of self-harm, but the El Paso County official deliberately decided not to place Ms. Griffith on housing precautions or move her to housing that conforms with her gender identity.

32.     After alerting El Paso County officials, and its medical contractors (who communicated those concerns to El Paso County officials), that she was contemplating engaging in self-castration because of the pervasive discrimination and harassment she experienced within the El Paso County Jail, Ms. Griffith attempted to self-castrate by wrapping a rubber band around her genitals.

35.33.  Ms. Griffith's Gender Dysphoria is a mental impairment that substantially limits one or more major life activities.

36.34.  Ms. Griffith is substantially limited in her ability to care for herself because she requires regular, ongoing, and life-long medical treatment, including ongoing psychotherapy and periodic hormone treatment. She is also substantially limited in other major life activities, such as eating, sleeping, learning, concentrating, thinking, communicating, and interacting with others because of distress associated with her Gender Dysphoria

37.35.  Ms. Griffith is substantially limited in the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

38.36.  Ms. Griffith has a history of Gender Dysphoria, which substantially limits one or more major life activities, including the ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and which substantially limits neurological function, brain function, endocrine function, and reproductive function.

39.37.  When a transgender person's Gender Dysphoria is left untreated, or is inadequately treated, the consequences can be dire. Symptoms of untreated Gender Dysphoria often include intense emotional suffering, anxiety and depression, suicidality, and thoughts or acts of self-harm. All of those symptoms can be mitigated, and often prevented altogether, for transgender people with access to appropriate individualized medical care as part of their gender transitions.

40.38.  Ms. Griffith has engaged in multiple acts of self-harm since childhood, because during times when her Gender Dysphoria has not been accommodated and treated. Ms. Griffith engages in self-harm, specifically self-castration behavior, regularly. This activity is worsened when she is not receiving treatment for Gender Dysphoria, which includes not being allowed to live, and dress, consistent with her gender identity and being denied hormone therapysubjected to sexual harassment in the form of mis-gendering.

41.39.  The prison environment can be particularly harmful to transgender women, as reports. Reports (including the 2009 report by the National Prison Rape Elimination Commission) consistently document that transgender women are victims of sexual abuse at much higher rates than the rest of the population while in custodial environments including lock-ups, jails and prisons, as well as while being searched by male prison guards. In its June 2015 report of data collection activities, the Bureau of Justice Statistics ("BJS") disclosed that an estimated 35% of transgender people held in prisons such as those in Colorado reported experiencing one or more incidents of sexual victimization in the past 12 months or since admission. According to the BJS report, when asked about the experiences surrounding their victimization by other incarcerated people, 72% of the transgender respondees said they experienced force or threat of force and 29% said they were physically injured.

**The Relevant Standards For Incarcerating Transgender People And Providing Healthcare To Transgender Prisoners**

42.40.  The World Professional Association for Transgender Health ("WPATH") is ~~the leading~~an "international, multidisciplinary, professional association ~~for surgeons, doctors, medical researchers~~whose mission is to promote evidence-based care, education, research, advocacy, public policy, and ~~others who specialize in the medical treatment~~respect for transgender health. The vision of ~~people with Gender Dysphoria. Based on decades of clinical experience,~~ WPATH ~~has promulgated medical standards of care~~is to bring together diverse professionals dedicated to developing best practices and supportive policies worldwide that promote health, research, education, respect, dignity, and equality for ~~treating patients with Gender Dysphoria, the Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People.~~transsexual, transgender, and gender nonconforming people in all cultural settings."[1] All Defendants entrusted with the care, ~~treatment,~~ and safety of the transgender women in the El Paso County Jail are aware that WPATH standards of care are applicable to Ms. Griffith and other transgender women in the El Paso County Jail. The WPATH Standards of Care are widely recognized ~~in the medical community~~ as the authoritative standard for the ~~provision~~treatment of transgender ~~healthcare~~individuals and the National Commission on Correctional Healthcare recommends the WPATH standards for use in all correctional facilities.

43.41.  The WPATH standards of care apply in their entirety to transgender people in prisons and require individual assessment for appropriate treatment in a fair and tolerant climate, which may consist of outward expression of one's internal sense of gender identity, ~~including hormone therapy and/or transition-related surgery,~~ and social role transition, including access to gender-affirming canteen items, like feminine grooming products and clothing.

---

[1] WPATH Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, p. 1 (available at https://www.wpath.org/media/cms/Documents/SOC%20v7/SOC%20V7_English.pdf.)

44.42.  The WPATH providesstandards dictate that placement of transgender people in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia places transgender people at risk for victimization. Despite these known risks, El Paso County and its officials promulgating and carrying out official policy, including Defendants Elder and Gillespie, make facility assignments to people in custody solely on the basis of the individual's genitalia.

43.     The WPATH standards state that housing and shower/bathroom facilities for transsexual, transgender, and gender nonconforming people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. Placement in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia may not be appropriate and may place the individual at risk for victimization. Institutions where transsexual, transgender, and gender nonconforming people reside and receive health care should monitor for a tolerant and positive climate to ensure that residents are not under attack by staff or other residents.

45.44.  WPATH also provides that housing and shower/bathroom facilities for transgender people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. Defendants have failed to follow these requirements for Ms. Griffith and other transgender women in El Paso County's care, resulting in the ongoing violence they face.continued violation of their rights and exposure to obvious danger from other inmates and self-mutilation.

46.45.  In 2003, Congress passed the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 et seq. ("PREA"). PREA establishes a zero-tolerance standard against sexual abuse in adult prisons and other confinement centers. PREA requires agencies to comply with national standards to eliminate sexual abuse, recognizes that transgender people face elevated risks of being victimized in prisons, mandates that state correctional facilities provide proper training to correctional staff, and requires

subject agencies to establish methods to deter and detect sexual violence in prison, to identify and treat

such victims, and to report incidents of such violence to the Bureau of Justice Statistics.

47.46.  The Commission established to monitor compliance with PREA noted in 2009 that

gender nonconformity places transgender people at extremely high risk for abuse, and, as a result, the

Commission opined that, "In determining whether to house transgender individuals in men's or

women's facilities, the Commission requires individualized determinations based on other factors in

addition to the person's current genital status" (NPREC, 2009, p. 89). Defendants are and have been

aware of the standards required by PREA.

**El Paso County And Its Officials Have An Official Policy Of Housing Transgender
Women, Like Ms. Griffith, In All-Male Units At The El Paso County Jail**

48.47.  When Ms. Griffith first entered El Paso County Jail on July 20, 2020, she was an openly

transgender woman with a feminine appearance.

49.48.  During her intake screening, she notified El Paso County Jail and Wellpathits healthcare

personnel that she was a transgender woman receiving hormone therapy for her diagnosedwith a

diagnosis of Gender Dysphoria. Ms. Griffith explicitly requested placement in a women's facility

because she feared being sexually abused and assaulted in male facilities by both guards and inmates,

along with fearing the humiliation of being constantly searched by male guards in a male unit and the

general degradation of being considered a man when she is a transgender woman.

49.      Ms. Griffith's medical records note that she has been diagnosed with Gender Dysphoria.

50.      Ms. Griffith also alerted Defendants that she is legally blind.

50.51.  El Paso County, as a matter of official policy, refuses to house transgender women in

female housing facilities. El Paso County continued to house Ms. Griffith, and continues to house Ms.

Griffith, and other transgender women in its custody, in male units within the El Paso County Jail.

51.52.  El Paso County officials ignored Ms. Griffith's health and safety requests, despite knowing the risks she faced, and subjected her to a terrible sequence of constitutional violations over the last year.throughout the entirety of her incarceration.

52.53.  El Paso County officials disregarded Ms. Griffith's safety concerns and housed her in men's units within the El Paso County Jail where she foreseeably became a victim of multiple instances of sexual assault, harassment, and degrading and transphobic behavior at the hands of male deputies.

54.    Ms.On intake, Defendant Noe classified Ms. Griffith and purposefully placed her into an all-male unit despite knowing that Ms. Griffith is a transgender woman and that Ms. Griffith wished to be placed into housing that corresponded with her gender identity. Defendant Noe did this in accordance with the customs, policies, and practices of El Paso County and Defendant Elder.

55.    On July 29, 2020, Defendant Brande Ford did an ADA initial interview of Ms. Griffith. It was clear to Defendant Ford that Ms. Griffith is a transgender woman and that Ms. Griffith wished to be placed into housing that corresponded with her gender identity. Despite this, Defendant Forde did not re-classify Ms. Griffith and place her into a unit that corresponded with her gender identity. In fact, despite Gender Dysphoria being a disability under the Americans with Disabilities Act, Defendant Forde wrote in Ms. Griffith's records that there were no disability concerns related to Ms. Griffith's housing.

53.56.  After her initial classification into an all-male unit, Ms. Griffith continuously requested that she be placed in a unit that conformed with her gender identity.

54.57.  On October 29, 2020, Ms. Griffith filed an inmate grievance, addressedwhich she believed would be transmitted to Defendant Gillespie, requesting that she be housed in a female ward because she is a transgender woman. Ms. Griffith further informed Defendant Gillespie that she had previously been housed in the Denver Women's Prison Facility and that all of her documentation outside of El Paso County's system correctly notes that she is a transgender woman. In response to Ms.

Griffith's grievance, ~~El Paso County (along with~~ Defendant ~~Gillespie)~~O'Neal stated that El Paso County had reviewed Ms. ~~Griffith would continue to be housed in the men's unit~~Griffith's request and denied her the accommodation of housing her in a facility that ~~her status~~corresponded with her gender identity. It was clear that this decision was made in ~~their system would not be changed~~accordance with the policies and procedures put into place by Defendants Elder and Gillespie.

~~55.~~58.  On December 9, 2020, Ms. Griffith filed another inmate grievance requesting that she be placed in a female unit. That grievance also ~~noted~~complained that deputies at the El Paso County Jail were continuously referring to her with male pronouns. Ms. Griffith again ~~noted~~pointed out that all of her documentation outside of the El Paso County system reflects her correct gender identity and that she had previously been housed in female units in other correctional facilities. On January 4, 2021, El Paso County responded to Ms. Griffith's grievance by stating that she would continue to be housed in a male unit based on El Paso County's policies and procedures.

59.    ~~Upon information and belief,~~ On January 15, 2021, Ms. Griffith again requested appropriate housing in a female ward. Ms. Griffith grieved numerous staff regarding the issue and alerted El Paso County ~~has never~~officials and its medical provider that she had previously been housed in two DOC facilities in female wards.

60.    On January 22, 2021, Ms. Griffith told jail mental health provider Raymond Carrington that she was suffering from extreme anxiety because she feared repercussion for grieving her treatment in custody: namely, that she was continuing to be housed in a male ward and treated as male, even though she is a transgender woman. Ms. Griffith also reported to the jail medical official that she felt as though people in the El Paso County Jail do not accept her for the person that she is and that she was being ostracized in the male ward for being a transgender woman. Ms. Griffith expressed to the jail

medical official the difficulty on her mental health of being housed in a male ward and expressed her desire to be housed with women ~~in a facility~~ because she is a transgender woman.

61.    On January 22, 2021, Ms. Griffith also wrote a grievance that again asked that she be moved to a women's unit. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being housed in an all-male unit with male guards. On January 23, 2021, Ms. Griffith wrote another grievance asking to be moved to a women's unit within the El Paso County Jail, stating that she was suffering on a daily basis due to El Paso County's failure to move her to a unit that corresponds with her gender identity. On January 23, 2021, Ms. Griffith wrote another kite complaining about the lack of accommodations for her Gender Dysphoria, including housing in a men's ward.

62.    On February 26, 2021, Ms. Griffith asked the mental health provider why she continued to be housed in a men's ward and that this was creating anxiety and depression for her. Ms. Griffith also stated that she continued to be called "sir" by deputies.

63.    On March 9, 2021, Ms. Griffith wrote a grievance requesting that Christine Mohr provide information about Ms. Griffith's diagnosed Gender Dysphoria to El Paso County Jail officials so that they would move Ms. Griffith to housing that corresponded with her gender identity which, upon ~~initial intake~~ information and belief, was communicated to El Paso County.

64.    On March 10, 2021, Ms. Griffith again wrote a kite complaining about being housed in a male ward and being considered a male within the Jail.

65.    On March 11, 2021, Ms. Griffith told Christine Mohr that she wanted to be housed with women and that she had previously been housed with women in CDOC, which Ms. Mohr confirmed by reviewing Ms. Griffith's previous incarceration records. Ms. Mohr acknowledged consulting with an El Paso County official about Ms. Griffith's housing and property requests.

66.    On March 19, 20201, Christine Mohr noted that Ms. Griffith expressed frustration to her because Ms. Griffith continued to want to be housed in a female unit but had not been moved. Ms. Mohr acknowledged talking to the multiple El Paso County officials about Ms. Griffith's concerns. On March 27, 2021, Ms. Mohr told Ms. Griffith that El Paso County had determined that she would not be moved to a female ward.

56.67.  El Paso County continues to house transgender women in facilities that do not correspond with their gender identity. El Paso County is routinely discriminating against these women, including Ms. Griffith, based on their sex, transgender status and/or disability and exposing them to harassment, rape, sexual assault, and other anti-transgender violence, or a heightened risk thereof by refusing to provide them safe housing.

57.68.  The decision to house Ms. Griffith in housing that does not conform with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

69.    As a result of El Paso County's, and its officials', decision to house Ms. Griffith in a housing unit that did not conform with her gender identity, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

58.70.  El Paso County's decision to house Ms. Griffith in housing that does not conform with her gender identity Ms. Griffith was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

**Defendant John DoeAndrew Mustapick Sexually Harassed And Assaulted Ms. Griffith During An Unconstitutional StripCross-Gender Visual Body-Cavity Search Pursuant To El Paso County's Official Policy That Male Guards Conduct Unsupervised StripVisual Body-Cavity Searches Of Transgender Women Inmates**

59.71.  It is El Paso County's official policy that transgender women (including those with Gender Dysphoria) are searched, including strip searched, by male staff and not by female staff. No

17

female guards are required to be present during searches (including ~~strip~~visual body-cavity searches).

Transgender women in El Paso County custody have routinely been subjected to searches, including ~~strip~~visual body-cavity searches, by male staff.

~~60.~~72.  Ms. Griffith was ~~strip searched~~subjected to a visual body-cavity search by a male deputy upon arrival at the El Paso County Jail in accordance with this policy.

~~61.~~73.  When Ms. Griffith was booked into the jail, she was taken to ~~the strip out~~a separate room. Before Ms. Griffith began stripping off her clothes, both a male and female deputy arrived.

~~62.~~74.  When Ms. Griffith saw that both a male and female deputy would be conducting her ~~strip~~visual body-cavity search, Ms. Griffith protested and asked that the male deputy leave. Ms. Griffith told both deputies that, because she is transgender, she ~~does~~did not want a male deputy to be present. Defendant ~~Jane Doe~~Dawn Elliss told Ms. Griffith that, per her sergeant's orders, the male deputy would stay throughout the entire ~~strip out~~visual body-cavity search process. ~~Deputy Jane Doe~~Defendant Elliss told Ms. Griffith that because she was "still a male" in El Paso County's "system" that a male deputy would be conducting her search pursuant to El Paso County policy and procedure. ~~That policy, 702(IV)(N)(3), states that a deputy that corresponds with the biological sex of the inmate must conduct the strip search.~~ Ms. Griffith again asked that Defendant ~~Jane Doe~~Elliss conduct the search because Ms. Griffith is a transgender woman. Defendant ~~Jane Doe~~Elliss refused and cited ~~the~~El Paso County's policy.

~~63.~~75.  Defendant ~~Jane Doe~~Elliss then told Ms. Griffith to take off her shirt, which she did. Ms. Griffith was compliant throughout the whole ~~strip out~~visual body-cavity search process.

~~64.~~76.  After examining Ms. Griffith's breasts, with Defendant ~~John Doe~~Andrew Mustapick present, Defendant ~~Jane Doe~~Elliss gave Ms. Griffith a sports bra and then left the room. As Defendant ~~Jane Doe~~Elliss left the room, she ~~told~~intentionally and discriminatorily mis-gendered Ms. Griffith,

telling Defendant ~~John Doe~~Mustapick, "*he* is all yours now to strip out." Defendant ~~Jane Doe~~Elliss left

Ms. Griffith alone with Defendant ~~John Doe~~Mustapick and did nothing to ensure that Defendant ~~John

Doe~~Mustapick did not sexually harass Ms. Griffith and subject her to an unconstitutional ~~strip~~visual

body-cavity search.

~~65.~~77.  After Defendant ~~Jane Doe~~Elliss left the room, Defendant ~~John Doe~~Mustapick ordered

Ms. Griffith to take off her socks, pants, and panties, and then place her hands on the wall. Defendant

~~John Doe~~Mustapick then told Ms. Griffith to step back, bend over, and "spread [her] sexy cheeks." Ms.

Griffith protested Defendant ~~John Doe's~~Mustapick's use of this derogatory and harassing language, but

complied with his directive.

~~66.~~78.  Defendant ~~John Doe~~Mustapick then told Ms. Griffith that he was "going to go balls deep

in that ass" while grabbing his own penis in view of Ms. Griffith. Defendant ~~John Doe~~Mustapick was

extremely aggressive while searching Ms. Griffith's genitals and making these comments.

~~67.~~79.  After Defendant ~~John Doe~~Mustapick was finished sexually harassing Ms. Griffith, he

warned her that she had better not tell anyone about what he did and said to her. He threatened Ms.

Griffith that if she did tell someone, he would make sure that she was brutalized by the guards at the El

Paso County Jail.

~~68.~~80.  There was no legitimate penological purpose for allowing a male guard to conduct a

~~strip~~visual body-cavity search of Ms. Griffith. And, there was certainly no penological purpose for any

of the actions taken by Defendants ~~John Doe~~Mustapick and ~~Jane Doe~~Elliss.

~~69.~~81.  El Paso County officials' threatening, intimidating and harassing ~~strip~~ visual body-cavity

search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, was a

discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender

Dysphoria.

70.82.  El Paso County officials' threatening, intimidating and harassing ~~strip~~ visual body-cavity search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

**~~Defendant Draper Sexually Assaulted Ms. Griffith During An Unconstitutional Search Pursuant To El Paso County's Official Policy That Male Guards Conduct Unsupervised Searches Of Transgender Women Inmates~~**

83.     ~~On August 8, 2020, while Ms.~~ As a result of El Paso County's, and its officials', decision to sexually harass Ms. Griffith, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

**Ms. Griffith Was Sexually Assaulted By A Male Inmate After Putting Defendants On Notice That She Was Not Safe In An All-Male Unit**

84.     After pleading to be moved to a female unit for over a year, and Defendants' refusal to heed her repeated pleas, Ms. Griffith was ~~housed in an~~ sexually assaulted by another male inmate on November 18, 2021.

85.     The inmate approached Ms. Griffith while she was laying in her bunk in the all-male unit she continued to be assigned to by El Paso County officials, and groped her right breast. Then, the inmate jeered Ms. Griffith, "you know you want this dick."

86.     After being sexually assaulted, Ms. Griffith was so distressed that she asked to see a mental health provider.

87.     This was not the first time that Ms. Griffith was assaulted by the other inmate. A witness to the assault told El Paso County officials that he witnessed at least three to four other similar assaults of Ms. Griffith.

88.     Even after being assaulted by another male inmate, Defendants did not move Ms. Griffith to a unit within the El Paso County Jail, that corresponded with her Gender Identity.

**Defendants Subjected Ms. Griffith** left her cell to go to the law library. Upon**To Continuous Cross-Gender Pat-Down Searches By Male Deputies, Which Caused Her Significant Distress, And Were Done Pursuant To El Paso County's Policies, Customs, And Practices**

89.      Throughout her leaving to go to the law library, Deputy Draper insisted that he searchincarceration at the El Paso County Jail, Defendants subjected Ms. Griffith. This was not a routine to continuous cross-gender pat-down searches by male deputies pursuant to official El Paso County policy. Ms. Griffith complained about these cross-gender searches, and the harmful effects they were having on her physical and mental health, but El Paso County did nothing to cease subjecting Ms. Griffith to cross-gender searches.

90.      On January 20, 2021, Ms. Griffith wrote a grievance where she stated that her anxiety was "through the roof" every time she is patted down by male deputies. Additionally, Ms. Griffith complained about male deputies continually touching her breast and groin when patting her down. Ms. Griffith pointed out that female inmates are not patted down by male deputies, and that she was being singled out as a transgender woman for different treatment. On January 21, 2021, Ms. Griffith complained to a jail medical provider about the effect of male pat downs on her mental health, and the disparate treatment given to her by male pat downs.

71.91.  On January 22, 2021, Ms. Griffith was especially upset that male officers continued to pat search her and, particularly, she was upset about a pat-down search performed by a male deputy that had just occurred when she returned from the law library. Ms. Griffith wrote a grievance because Defendants continued to subject her to cross-gender pat down searches, including the one in which the deputy intentionally touched her breast. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being patted down by male guards. Ms. Griffith wrote this grievance, which was viewed by El Paso County officials. Later that day, Ms. Griffith told a jail medical provider that she felt violated when male officers touch her.

92.    ~~While purportedly "searching" Ms. Griffith, Deputy Draper grabbed~~On January 23, 2021, Ms. Griffith wrote a kite complaining about the lack of accommodations for her Gender Dysphoria, including being constantly patted down by male deputies.

93.    On February 3, 2021, Ms. Griffith wrote yet another grievance because she was being subjected to non-routine cross-gender pat down searches on a daily basis, and that these pat-down searches were causing her physical and emotional pain.

~~72.    Ms. Griffith's breasts and began to fondle them. Deputy Draper then ran his hands on the inside of Ms. Griffith's thigh and slammed his hand against her crotch.~~

~~73.    Deputy Draper's decision to fondle Ms. Griffith's breasts caused her great physical discomfort and emotional distress. His decision to slam his hand into her crotch also caused Ms. Griffith great physical discomfort and emotional distress.~~

~~74.    Ms. Griffith went to the law library and, when she returned to her cell, Deputy Draper subjected her to another non-routine pat down search.~~

~~75.    Again, while purportedly "searching" Ms. Griffith, Deputy Draper grabbed Ms. Griffith's breasts and began to fondle them. Deputy Draper then ran his hands on the inside of~~El Paso County officials' continuous searches of Ms. ~~Ms. Griffith's thigh and slammed his hand against her crotch.~~

~~76.    This time, Ms. Griffith told Deputy Draper to stop fondling her breasts. In response, Deputy Draper directed Ms. Griffith to lift up her shirt to expose her breasts.~~ Griffith~~Ms. Griffith refused.~~

~~77.    Deputy Draper's decision to fondle Ms. Griffith's breasts a second time caused her great physical discomfort and emotional distress. His decision to direct her to expose her breasts was demeaning and caused her emotional distress. His decision to slam his hand into her crotch a second time also caused Ms. Griffith great physical discomfort and emotional distress.~~

78.    There was no penological purpose for Deputy Draper's fondling of Ms. Griffith's breasts, slamming his hand into her crotch, or his order that she expose her breasts to him.

79.    Deputy Draper's assault of Ms. Griffith was caused by the policy promulgated and enforced by Defendants El Paso County and Sheriff Elder housing transgender women, like Ms. Griffith, in the men's facility and continuing to require male deputies, like Defendant Draper, to search transgender women without any supervision.

80.94.  El Paso County officials' continuous searches of Ms. Griffith and related sexual assaults, which per policy, custom, and practice were conducted by unaccompanied male deputies, were discriminatory and harassing actions and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

81.    Defendants' decision to subject Ms. Griffith to continuous searchesEl Paso County officials' continuous searches of Ms. Griffith and related sexual assaults, which per policy were conducted by unaccompanied male deputies, have exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

**Defendants Wellpath, Elder, and Mohr Denied Necessary Mental Health Care To Ms. Griffith Pursuant To El Paso County's Customary Practice Of Denying Transgender Inmates Necessary Mental Health Care**

82.    Ms. Griffith, as a transgender inmate diagnosed with Gender Dysphoria, requires regular mental health care. Despite well-settled authority that dictates that mental health care is necessary to treat transgender women who suffer from Gender Dysphoria, Defendants Wellpath, El Paso County, Elder, and Mohr refuse to provide that necessary treatment.

83.    El Paso County and Wellpath officials denied Ms. Griffith medically necessary Gender Dysphoria care, including mental health treatment.

84. When Ms. Griffith initially arrived at the El Paso County Jail, she specifically requested mental health treatment for her diagnosed Gender Dysphoria. Defendant Mohr told her that she would not receive treatment for her Gender Dsyphoria. Instead, she would be seen once a month by a mental health professional that would ask her a few standard questions. Since her arrival at the El Paso County Jail, the only time that Ms. Griffith sees a mental health professional is once a month, when Defendant Mohr comes to Ms. Griffith's cell and asks her five standard questions (whether she is suicidal, whether she is hearing voices, etc.) and then leaves. None of the questions relate to Gender Dysphoria. Defendant Mohr's monthly visits are completed in a matter of minutes, and with no follow up whatsoever.

85. Ms. Griffith has repeatedly filed grievances requesting appropriate mental health treatment, in line with WPATH guidelines, for her Gender Dysphoria. Defendants have repeatedly denied these grievances.

86. Ms. Griffith specifically asked Defendant Mohr to provide appropriate mental health treatment, in line with WPATH guidelines, for her Gender Dysphoria. Defendant Mohr has not done so.

87. El Paso County Jail officials have told Ms. Griffith that the El Paso County Jail does not have a policy for treating inmates with Gender Dysphoria and, therefore, she would not receive mental health treatment for Gender Dysphoria.

88. Defendant Elder has specifically failed to implement a policy that would allow for Ms. Griffith to receive appropriate mental health treatment for Gender Dysphoria. It is obvious that the El Paso County Jail would house inmates with Gender Dysphoria and Defendant Elder's refusal to implement a policy to allow for appropriate mental health treatment of Gender Dysphoria was deliberately indifferent to the serious mental health needs of transgender inmates with Gender Dysphoria, including Ms. Griffith.

89.    Ms. Griffith's Gender Dysphoria consequently remained untreated leading her to become depressed and have increased ideation of self-harm.

90.    Defendants lack qualified mental health staff to provide the proper care and treatment required for Gender Dysphoria. Defendants have made an intentional decision not to hire qualified mental health staff.

91.    Upon information and belief, Defendants Wellpath, El Paso County, and Elder provide mental health care to inmates who do not suffer from Gender Dysphoria, but specifically deny mental health care to inmates who suffer from Gender Dysphoria.

92.    Ms. Griffith has been denied the programs, services and benefits of the El Paso County Jail on the basis of her disability and her sex.

93.    El Paso County and Sheriff Elder knew and know about the necessary accommodations, including the mental health care needed by Ms. Griffith, yet have denied these accommodations and/or have decision-making authority over whether the accommodations have been granted, and failed to take necessary action.

94.    Defendant Wellpath continues to have a legal and ethical duty to make independent medical decisions about what, if any, mental health accommodations are necessary for Ms. Griffith. Instead of exercising that independent medical judgment, Defendant Wellpath denied necessary accommodations and treatment in reckless disregard for the safety of Ms. Griffith and was deliberately indifferent to her serious mental health needs. Despite being responsible for the care and treatment of Ms. Griffith, Wellpath blatantly refused necessary care and accommodations.

95.    El Paso County's policy of not providing weekly therapy to transgender inmates from a qualified mental healthcare provider was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

96.95.   El Paso County policy of not providing weekly therapy to transgender inmates from a qualified mental healthcare provider have has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

**Defendants Wellpath, Elder**As a result of El Paso County's, and **Roe Denied Necessary Medical Care To**its officials', decision to subject Ms. Griffith **Pursuant To El Paso County's Customary Practice Of Denying Transgender Inmates Hormone Therapy**

97.     to continuous cross-gender pat-down searches, Ms. Griffith, as a transgender inmate diagnosed with Gender Dysphoria, requires regular medical care, including hormone therapy. Despite well-settled authority that dictates that hormone therapy is necessary to treat transgender women who suffer from Gender Dysphoria, Defendants refuse to provide that necessary treatment.

98.     Ms. Griffith has been on hormone therapy to treat her Gender Dysphoria for over twenty years.

99.     Defendants were aware of both Ms. Griffith's diagnosis and her long history of being treated with hormone therapy engaged in. When Ms. Griffith was booked into the El Paso County Jail, she noted that she was on hormone therapy.

100.     El Paso County and Wellpath refused to provide Ms. Griffith with hormone therapy shots.

101.     Ms. Griffith complained to the head of medical for Wellpath at the El Paso County Jail, Defendant Roe, and told Defendant Roe specifically that she has been receiving hormone therapy for over twenty years. Defendant Roe told Ms. Griffith that she would not receive hormone therapy at the El Paso County Jail.

102.     Because Defendants El Paso County, Wellpath, and Roe stopped Ms. Griffith's hormone therapy, her body went through physical changes and she suffered physical harm, along with emotional distress.

103.    Defendants El Paso County, Wellpath, and Roe denied Ms. Griffith hormone therapy for approximately five months. It was only after Ms. Griffith convinced a friend to bring her prescription for hormone therapy to the El Paso County Jail that Defendants El Paso County, Wellpath, and Roe eventually allowed Ms. Griffith to receive hormone therapy.

104.    Ms. Griffith continues to have difficulty getting Defendant Roe to provide her with hormone therapy shots on a regular basis. Ms. Griffith often has to argue with Defendant Roe to receive her shots. For instance, when Ms. Griffith was quarantined from potential exposure to the Coronavirus, she was denied her hormone replacement therapy shots. This has caused her great physical and emotional discomfort.

105.    El Paso County's and Wellpath's policy of not providing hormone therapy to transgender inmates was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

106.96.    Defendants' failure to provide Ms. Griffith with hormone therapy exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

**El Paso County Customarily Mis-Genders Ms. Griffith and other Transgender Individuals In Its Custody**

97.    WPATH guidelines dictate that, as part of treatment for Ms. Griffith's diagnosed Gender Dysphoria, she should have been treated as the woman that she is. That includes providing Ms. Griffith gender-affirming clothing, addressing her by her proper pronouns and name, and housing her in a unit that corresponds with her gender identity. El Paso County, and its officials, failed to provide Ms. Griffith with care in accordance with these widely recognized standards.

107.98.        El Paso County refuses to recognize transgender women in its custody as the women that they are. Instead, El Paso County officials routinely refersrefer to these women, including Ms. Griffith, using the male names they were assigned at birth. Documentation maintained by El Paso County, whether in case management, mental health or medical files, routinely refer to these women as "men" or using male pronouns, despite El Paso County's own documentation showing that these individuals belong to the community of transgender women.

99.        On multiple occasions throughoutThroughout her incarceration at the El Paso County Jail, sergeants and deputies have mis-gendered Ms. Griffith and used language that does not conform with her gender identity. For example, on January 12, 2021, Deputy Stirling mis-gendered

108.100.        On September 16, 2020, Ms. Griffith by calling complained to Deputy Daniel Holder about other inmates in her "sir."unit not wearing shirts because the male inmate's failure to wear their shirts made her uncomfortable as a transgender woman. In response, Deputy Holder walked over to the other inmates and loudly yelled at them, "the blind faggot said you need to put your shirts on" in reference to Ms. Griffith. Beyond mis-gendering Ms. Griffith (and highlighting her vision disability), this statement was designed to create an antagonistic relationship between her and other inmates, placing her at an even greater risk of assault. Based on our information, Deputy Holder was not disciplined for this gross abuse of his authority.

101.    AnotherOn November 10, 2020, Ms. Griffith wrote in a grievance that an El Paso County deputy had consistently mis-gendered her. When Ms. official, Specialist Gonzales,Griffith attempted to correct the deputy, the deputy confronted Ms. Griffith. El Paso County did not discipline the deputy for these actions. On December 9, 2020, Ms. Griffith wrote in a grievance that El Paso County deputies continuously mis-gendered her, which was causing her significant emotional distress.

102.    On February 3, 2021, Ms. Griffith ~~while~~wrote in a grievance that she was ~~receiving her COVID-19 vaccine; when Ms. Griffith protested Specialist Gonzales' mis-gendering of her, another~~being subjected to verbal harassment by male deputies in the El Paso County Jail ~~official, Sergeant Gomez, threatened to place Ms. Griffith in solitary confinement if~~on a daily basis, and that this harassment was causing her pain. On February 26, 2021, Ms. Griffith stated to a jail medical provider that she continued to ~~protest~~be called "sir" by deputies and that this caused her anxiety.

~~109.~~103.    On June 23, 2021, Ms. Griffith wrote a grievance because she was, again, mis-gendered by an El Paso County Jail ~~officials mis-gendering her and told Ms. Griffith that he did not believe that it was inappropriate for~~official, and felt as though El Paso County Jail officials ~~to call her "sir."~~were purposefully mis-gendering her to discriminate against her.

~~110.    On three separate other occasions El Paso County Jail officials, Deputies Motto, Blackberry, and Jaygo, mis-gendered Ms. Griffith.~~

~~111.    These are just a sampling of countless such incidents of mis-gendering.~~

104.    On July 1, 2021, Ms. Griffith told Raymond Carrington that when she identifies herself as female, the jail (including the guards) do not respect her wishes or use the appropriate pronouns. Ms. Griffith also told Defendant Carrington that she would remove her penis herself once she could figure out how to do it, and would do it as soon as possible.  Ms. Griffith told Mr. Carrington that the WPATH standards of care should be followed. Mr. Carrington informed El Paso County officials about Ms. Griffith's statements about self-harming, and El Paso County officials took no action to rectify the consistent mis-gendering that Ms. Griffith endured and did not take any action to ensure that Ms. Griffith was moved to an appropriate housing unit so as to prevent her from engaging in self-harming activity.

~~112.~~105.    Mis-gendering is a form of sexual harassment.

113.106.    This constant mis-gendering of Ms. Griffith has been caused by El Paso County's and Defendant Elder's policy of housing Ms. Griffith in a male unit, along with the customs and practices at the El Paso County Jail that condone discriminatory and harassing treatment of transgender prisoners.

114.107.    El Paso County officials' actions in constantly mis-gendering Ms. Griffith was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

115.108.    The constant mis-gendering of Ms. Griffith has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress, become depressed, and have increased ideation of self-harm.

109.    As a result of El Paso County's, and its officials', decision to constantly mis-gender and sexually harass Ms. Griffith, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

**El Paso County Customarily Denies Ms. Griffith And Other Transgender Inmates The Ability To Dress In Accordance With Their Gender Identity**

116.    On September 7, 2020, Ms. Griffith sought permission to purchase a sports bra and panties. Defendants denied that request. In response, Ms. Griffith filed a grievance seeking to allow her to purchase a sports bra and panties. Defendants denied that request as well. Eventually, Ms. Griffith filed another grievance seeking to talk to Sergeant Auyad about the purchase of a sports bra and panties. Defendants continued to deny Ms. Griffith's request to have the ability to purchase a sports bra and panties until October 5, 2020, when Sergeant Auyad approved her request but only to purchase a sports bra.

117.110.    Defendants denied Ms. Griffith wrote a grievance requesting the ability to dress in accordance with her gender identity. Specifically, Ms. Griffith requested that she be provided with a

sports bra and women's underwear. Previously, Ms. Griffith had orally requested to be provided with a sports bra and women's underwear. Ms. Griffith had been denied a sports bra since being incarcerated two months earlier. Defendants denied Ms. Griffith a reasonable accommodation for her Gender Dysphoria and forced to leave her breasts without a bra, to be ogled by male inmates and deputies for approximatelyover a month. This caused Ms. Griffith significant emotional distress and physical discomfort.

118.111.    Several days later, In response to her formal grievance, Ms. Griffith was provided with a sports bra. Lieutenant CornellEric Carnell came to Ms. Griffith's cell with a sports bra. Lieutenant CornellCarnell told Ms. Griffith that she would only receive one sports bra, and not panties, because she did not need to "hold female products down there." When Ms. Griffith protested, and again asked for an accommodation for her Gender Dysphoria in the form of being provided the ability to purchase panties, Lieutenant Cornell again denied her request. On October 24, 2020, Lieutenant Cornell filed a formal response to Ms. Griffith's grievance and, again, told her that she would not be issued, or allowed to purchase, panties. Lieutenant Cornell again denied Ms. Griffith's request for an accommodationCarnell again denied her request. Ms. Griffith did not receive the sports bra until the middle of October.

112.    On October 14, 2020, Ms. Griffith wrote another grievance requesting that she be given a medical permission slip to receive women's underwear. In response, Ms. Griffith was told that she would not receive a medical permission slip to purchase women's underwear.

113.    Eventually, El Paso County officials responded to Ms. Griffith's grievance from September 7, 2020. On October 24, 2020, Lieutenant Carnell, wrote an official response to Ms. Griffith's grievance and told her that she had been provided a sports bra, but that she would not be issued, or allowed to purchase, panties.

119.114.     Ms. Griffith subsequently elevated her concerns to Commander Cy Gillespie and requested that she be provided panties. In response, Defendant Gillespie told Ms. Griffith that she would never get panties in the El Paso County Jail.

115.     On January 15, 2021, Ms. Griffith requested panties rather than boxers because she is a transgender woman. This request was again denied.

116.     On March 11, 2021, Ms. Griffith told a jail medical provider that she would like to be provided women's underwear. On March 19, 2021, the provider noted that Ms. Griffith expressed frustration on wanting panties. The provider acknowledged talking to the El Paso County officials about Ms. Griffith's concerns. In a follow-up conversation on March 27, 2021, the medical provider told Ms. Griffith that El Paso County officials told her that Ms. Griffith would not be issued panties because Ms. Griffith does not require the use of feminine napkins. Illustrating the obviously pretextual nature of this articulated justification for their discriminatory conduct, Defendants do not require post-menopausal and other non-menstruating women in their custody to wear men's underwear.

120.117.     Defendants have also denied Ms. Griffith the ability to purchase lipstick because she is a transgender woman. Cisgender women are allowed to purchase lipstick at the commissary. Defendant Gillespie specifically told Ms. Griffith that she cannot purchase lipstick per El Paso County Jail policy.

121.118.     Defendants' denial of gender appropriate undergarments and lipstick to Ms. Griffith was caused by El Paso County's and Defendant Elder's policy of housing Ms. Griffith in a male unit, along with the customs and practices at the El Paso County Jail that condone discriminatory treatment of transgender prisoners.

122.119.        El Paso County officials' actions in denying Ms. Griffith access to female undergarments and lipstick was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

123.120.        El Paso County officials' customary decisions to deny Ms. Griffith the right to dress in accordance with her gender identity was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

124.121.        El Paso County officials' customary decisions to deny Ms. Griffith the right to dress in accordance with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

122.    As a result of El Paso County's, and its officials', decision to not allow Ms. Griffith to dress in accordance with her gender identity, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment – Equal Protection Discrimination
*Against All Defendants*

125.123.        Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

126.124.        Defendants were acting under color of state law at all times relevant to this action.

127.125.        Under the Equal Protection Clause of the Fourteenth Amendment, discrimination against transgender people is a form of sex discrimination that is presumptively unconstitutional and subject to heightened scrutiny.

128.126.        Discrimination based on sex includes, but is not limited to, discrimination based on gender, gender nonconformity, transgender status, gender expression, and gender transition.

129.127.     Discrimination based on transgender status is also presumptively unconstitutional under the Equal Protection Clause and subject to heightened scrutiny.

130.128.     Transgender people have suffered a long history of extreme discrimination across the country, in prisons and outside of prisons, and continue to suffer such discrimination to this day.

131.129.     Many, if not most, transgender and cisgender women who are incarcerated, including Plaintiff, have discernable feminine characteristics and secondary female-typical sex characteristics that place them at heightened risk of sexual victimization by male deputies without adequate safeguards and subject to the humiliation of searches by male deputies if placed in men's prisons.

132.130.     Both transgender and cisgender women face substantially similar risks of sexual victimization by male deputies without adequate safeguards and the humiliation through searches by male deputies.

133.131.     Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail and requiring that male deputies, like Defendants Doe and Draper, search transgender women without any supervision discriminatesdiscriminated against her on the basis of sex.

134.132.     Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail also discriminatesdiscriminated against her based on sex stereotyping, namely, treating her as though she were a cisgender man based on the presumptionconclusion that her gender identity and expression should align with her sex assigned at birth, and housing her in accordance with that perception.erroneous conclusion. This sex stereotyping is based solely on Plaintiff's sex assigned at birth, disregarding her gender identity even though she is a woman and has had medical treatment to bring her body into alignment with her female gender identity.

135.133.    Defendants, acting under color of state law, intentionally discriminated against Plaintiff by placing her, and continuing to house her, exclusively in men's ~~prisons~~wards without adequate safeguards, even though she faces similar risks as all other women in such custody.

136.134.    Defendants' actions as described herein were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility, based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities.

137.135.    Plaintiff was placed in the male unit and searched by male deputies at the El Paso County Jail in accordance with the customs, policies, and practices of the El Paso County Jail, which are set by Defendant El Paso County and Elder. Defendants El Paso County and Elder discriminated against Plaintiff and other transgender women by adopting and applying these customs policies, and practices that deny transgender women safe and appropriate housing placements based on their sex, transgender identity, and impermissible sex stereotypes without a compelling, important, or legitimate governmental interest.

138.136.    Defendants' actions and inactions were taken in reckless and callous indifference to the federally protected rights of Plaintiff.

139.137.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

140.138.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment
### Conditions Of Confinement
*Against All Defendants*

141.139.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

140.    Defendants were acting under color of state law at all times relevant to this action.

142.1.  Defendants were acting under color of state law at all times relevant to this action.

143.141.    Plaintiff was and is a pre-trial detainee.

144.142.    As a pre-trial detainee, Plainitff was and is protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

145.143.    Under the Fourteenth Amendment, Plaintifff was and is also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

146.144.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

147.145.    Defendants El Paso County's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posesposed an excessive risk to Ms. Griffith's health and safety.

148.146.    Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

149.147.    Despite this knowledge and Plaintiff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

150.148.    Defendants' failure to recognize Plaintiff as the transgender woman that she is subjected her to unconstitutional conditions of confinement.

151.149.    Defendants' sexual assault and harrassment of Plaintiff subjected her to unconstitutional conditions of confinement.

150.    Defendants' failure to provide Plaintiff appropriate medical and mental health care because she is a transgender womanDefendants subjected herPlaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches

152.151.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

153.152.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

154.153.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

155.154.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

156.155.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment
### Excessive Force
*Against Defendants El Paso County, Elder, and Draper*

157.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

158.    Defendants were acting under color of state law at all times relevant to this action.

159.    Defendant Draper purposefully and knowingly used physical force against Plaintiff by fondling her breasts and forcibly slamming his hand into her crotch without her consent.

160.    Defendant Draper's use of force against Plaintiff caused her unnecessary pain.

161.    Defendant Draper's use of force against Plaintiff had no legitimate penological purpose.

162.    Defendants El Paso County and Elder knowingly allowed male deputies, like Defendants Doe and Draper, to search transgender women without any supervision and it was obvious that sexual assault would occur through housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendant Draper, to search transgender women without any supervision.

163.    Defendants El Paso County and Elder exhibited deliberate indifference to the substantial risk of harm to Plaintiff, and other transgender women inmates in the El Paso County Jail, by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendant Draper, to search transgender women without any supervision.

164.    It was obvious to those in Defendants El Paso County's and Elder's positions that transgender inmates at El Paso County Jail, including Plaintiff, faced a substantial risk of serious harm from sexual abuse by male deputies.

165.    Defendants El Paso County and Elder failed to provide humane conditions of confinement for Plaintiff and other similarly situated transgender inmates by failing to implement practices, policies and procedures that protected transgender inmates, including Plaintiff, from the substantial risk of serious harm posed by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendant Draper, to search transgender women without any supervision.

166.    Therefore, Defendants El Paso County and Elder set in motion a series of events that they knew would cause an inmate in Plaintiff's situation to be deprived of her constitutional right to be free from excessive force; but for the above acts or omissions of Defendants El Paso County and Elder, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

167.1.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

168.1.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

169.1.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983  Fourth Amendment**
**Unreasonable Search**
*Against Defendants El Paso County, Elder, John Doe, Jane DoeMustapick, and DraperElliss*

39

~~170.~~156.    Plaintiff hereby incorporates all other paragraphs of this Third Amended

Complaint as if fully set forth herein.

~~171.~~157.    Defendants were acting under color of state law at all times relevant to this action.

~~172.~~158.    Plaintiff has a legitimate expectation of privacy in her body being free from

unreasonable governmental search.

~~173.~~159.    ~~Defendants Doe and Draper's~~Defendants' actions were objectively unreasonable

in light of the circumstances confronting them. Namely, there was no basis for Defendant ~~Doe~~Mustapick

to ~~strip~~perform a visual body-cavity search of Plaintiff. Defendant ~~Doe's~~Mustapick's sexually charged

and offensive comments while strip searching Plaintiff and sexual harassment of her ~~was objectively~~

~~unreasonable. And there was no objectively reasonable basis for Defendant Draper to grope Plaintiff's~~

~~breasts and slam his hand into her crotch during his search of her~~were objectively unreasonable.

~~174.~~160.    Defendants El Paso County and Elder's custom, policy, and practice of housing,

per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per

official policy, male deputies~~, like Defendants Doe and Draper,~~ to search transgender women without

any supervision caused the violation of Plaintiff's rights and it was obvious and foreseeable to

Defendants El Paso County and Elder that their custom, policy, and practice of allowing male deputies~~,~~

~~like Defendants Doe and Draper,~~ to search transgender women without any supervision would cause a

violation of Plaintiff's constitutional rights in the manner in which that violation occurred.

~~175.~~161.    Defendant ~~Jane Doe~~Elliss failed to intervene to prevent the unconstitutional

search by Defendant ~~John Doe~~Mustapick.

162.    Defendants' actions and inactions were taken in reckless and callous indifference to

Plaintiff's federally protected rights.

163.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

164.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FOURTH CLAIM FOR RELIEF**

176.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

177.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

178.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment – Substantive Due Process**
**Invasion of Bodily Privacy and Integrity**
*Against Defendants El Paso County, Elder, Gillespie, John Doe, Jane Doe Mustapick, and Draper Elliss*

179.165.        Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

166.    Defendants were acting under color of state law at all times relevant to this action.

180.1.  Defendants were acting under color of state law at all times relevant to this action.

181.167.    By sexually harassing and assaulting Plaintiff without her consent, Defendants Doe and Draper violated Plaintiff's right to be secure in her bodily integrity, a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

182.168.    Defendants El Paso County and Elder recklessly, with conscious disregard to the serious and obvious risk to the safety of transgender inmates like Plaintiff, violated Plaintiff's right to be secure in her bodily integrity by allowing male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

183.169.    Defendant Jane DoeElliss failed to intervene to prevent the unconstitutional invasion of privacy by Defendant John DoeMustapick.

184.170.    Defendants El Paso County and Elder knew that their acts or omissions were substantially certain to cause El Paso County officials to violate constitutional rights of transgender inmates like Plaintiff to be free from secure in their bodily integrity, and Defendants El Paso County and Elder consciously or deliberately chose to disregard this risk of harm in failing to provide and/or in deliberately choosing not to change the policy that housed transgender women inmates with men and required, per official policy, male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

185.171.    Defendants El Paso County and Elder exhibited deliberate indifference to the substantial and obvious risk of harm to Plaintiff, and other transgender inmates, by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

186.172.    Defendants El Paso County and Elder proximately caused an unconstitutional invasion of Plaintiff's bodily integrity by housing, per official policy, transgender women, like Plaintiff,

in the men's facility and continuing to require, per official policy, male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

187.173.    Defendants El Paso County and Elder set in motion a series of events that they knew would cause an inmate in Plaintiff's situation to be deprived of her constitutional right to be secure in her bodily integrity; but for the above acts or omissions of Defendants, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

188.174.    Defendant Gillespie's decision to house Plaintiff in an all-male unit subjected her to have her privacy constantly invaded.

189.175.    The policies implemented by Defendants El Paso County and Elder, as well as Defendants' actions and inactions, violated Plaintiff's substantive due process right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

190.176.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

191.177.    When viewed in total, this conduct is outrageous and shocks the conscience.

192.178.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

193.179.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FIFTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art.** ~~SIXTH CLAIM FOR RELIEF~~

**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25**
**Excessive Force**
*Against Defendants Elder and Draper*

194.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

195.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

196.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

197.    Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against being unreasonably harmed by the use of excessive force.

198.    Defendant Draper purposefully and knowingly used physical force against Plaintiff by fondling her breasts and forcibly grabbing her crotch without her consent.

199.    Defendant Draper's use of force against Plaintiff caused her unnecessary pain.

200.    Defendant Draper's use of force against Plaintiff had no legitimate penological purpose.

201.    Defendant Elder knowingly allowed male deputies, like Defendant Draper, to search transgender women without any supervision and it was obvious that sexual assault would occur through housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendant Draper, to search transgender women without any supervision.

202.    Defendant Elder exhibited deliberate indifference to the substantial risk of harm to Plaintiff, and other transgender women inmates in the El Paso County Jail, by housing, per official

policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendant Draper, to search transgender women without any supervision.

203.    It was obvious to those in Defendant Elder's positions that transgender inmates at El Paso County Jail, including Plaintiff, faced a substantial risk of serious harm from sexual abuse by male deputies.

204.    Defendant Elder failed to provide humane conditions of confinement for Plaintiff and other similarly situated transgender inmates by failing to implement practices, policies and procedures that protected inmates, including Plaintiff, from the substantial risk of serious harm posed by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendant Draper, to search transgender women without any supervision.

205.    Therefore, Defendant Elder set in motion a series of events that he knew would cause an inmate Plaintiff's situation to be deprived of her constitutional right to be free from excessive force; but for the above acts or omissions of Defendant Elder, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

206.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

207.    Defendants acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

208.1.   As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### SEVENTH CLAIM FOR RELIEF
C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25
#### Unreasonable Search
*Against Defendants Elder, John Doe, Jane Doe Gillespie, Mustapick, and Draper Elliss*

209. 180.      Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

210. 181.      Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

211. 182.      Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

212. 183.      Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against being unreasonably searched.

213. 184.      Plaintiff has a legitimate expectation of privacy in her body being free from unreasonable governmental search.

214. 185.      Defendants Doe and Draper's Defendants' actions were objectively unreasonable in light of the circumstances confronting them. Namely, there was no basis for Defendant Doe Mustapick to strip visually body-cavity search Plaintiff. Defendant Doe's Mustapick's offensive sexually charged comments while strip searching Plaintiff and sexual harassment of her was were objectively unreasonable. And there was no objectively reasonable basis for Defendant Draper to grope Plaintiff's breasts and slam his hand into her crotch during his search of her.

~~215.~~186.    Defendant ~~Jane Doe~~Elliss failed to intervene to prevent the unconstitutional search by Defendant ~~John Doe~~Mustapick.

~~216.~~187.    Defendant Elder's custom, policy, and practice of housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies~~, like Defendants Doe and Draper,~~ to search transgender women without any supervision caused the violation of Plaintiff's rights and it would have been obvious and foreseeable to Defendant Elder that his custom, policy, and practice of allowing male deputies~~, like Defendants Doe and Draper,~~ to search transgender women without any supervision would cause a violation of Plaintiff's constitutional rights in the manner in which that violation occurred.

~~217.~~188.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

~~218.~~189.    Defendants acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

~~219.~~190.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**SIXTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. ~~EIGHTH CLAIM FOR RELIEF~~**
**~~C.R.S. § 13-21-131 – Colo. Const. Art.~~ II, Section 29 — Equality of the Sexes**
**Discrimination**
*Against Defendants Elder, Gillespie, ~~John Doe, Jane Doe~~O'Neal, Mustapick, Elliss, Noe, and ~~Draper~~Ford*

~~220.~~191.    Plaintiffs hereby incorporate all other paragraphs of this Third Amended Complaint as if fully set forth herein.

47

221.192.     The Individual Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

222.193.     The Individual Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

223.194.     Plaintiffs had a protected Colo. Const. Art. II, Section 25 right against discrimination based on sex. The Colorado Constitution, Article II, Section 29 provides: "Equality of the sexes. Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex."

224.195.     Under Colo. Const. Art. II, Section 25, discrimination against transgender people is a form of sex discrimination that is presumptively unconstitutional and subject to strict scrutiny.

225.196.     Discrimination based on sex includes, but is not limited to, discrimination based on gender, gender nonconformity, transgender status, gender expression, and gender transition.

226.197.     Discrimination based on transgender status is also presumptively unconstitutional under the Equal Protection Clause and subject to strict, or at least heightened, scrutiny.

227.198.     Transgender people have suffered a long history of extreme discrimination across the country, in prisons and outside of prisons, and continue to suffer such discrimination to this day.

228.199.     Many, if not most, transgender and cisgender women who are incarcerated, including Plaintiff, have discernable feminine characteristics and secondary female-typical sex characteristics that place them at heightened risk of sexual victimization by male deputies without adequate safeguards and subject to the humiliation of searches by male deputies if placed in men's prisons.

229.200.     Both transgender and cisgender women face substantially similar risks of sexual victimization by male deputies without adequate safeguards and the humiliation through searches by male deputies.

230.201.     Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail and requiring that male deputies, like Defendants Doe and Draper, search transgender women without any supervision discriminatesdiscriminated against her on the basis of sex.

231.202.     Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail also discriminatesdiscriminated against her based on sex stereotyping, namely, treating her as though she were a cisgender man based on the presumptionconclusions that her gender identity and expression should align with her sex assigned at birth, and housing her in accordance with that perceptionconclusion. This sex stereotyping is based solely on Plaintiff's sex assigned at birth, disregarding her gender identity even though she is a woman and has had medical treatment to bring her body into alignment with her female gender identity.

232.203.     Defendants, acting under color of state law, intentionally discriminated against Plaintiff by placing her, and continuing to house her, exclusively in men's units without adequate safeguards, even though she faces similar risks as all other women in custody.

233.204.     Defendant's actions as described herein were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility, based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities.

234.205.     Plaintiff was placed in the male unit, and searched by male deputies, at the El Paso County Jail in accordance with the customs, policies, and practices of the El Paso County Jail, which are set by Defendant Elder. Defendant Elder discriminated against Plaintiff and other transgender

women by adopting and applying these customs policies, and practices that deny transgender women

safe and appropriate housing placements based on their sex, transgender identity, and impermissible sex

stereotypes without a compelling, important, or legitimate governmental interest.

235.206.    Defendants' actions and inactions were taken in reckless and callous indifference

to Plaintiff's federally protected rights.

236.207.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's

damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental

and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and

continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

237.208.    As a direct and proximate cause and consequence of the unconstitutional policies,

procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues

to suffer injuries, damages and losses as set forth herein.

**SEVENTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. NINTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Substantive Due Process**
**Invasion of Bodily Privacy and Integrity**
*Against Defendants Elder, Gillespie, John Doe, Jane DoeMustapick, and DraperElliss*

238.209.    Plaintiff hereby incorporates all other paragraphs of this Third Amended

Complaint as if fully set forth herein.

239.210.    Defendants acted under color of state law, and within the course and scope of

their employment, in their capacities as law enforcement officers at all times relevant to the allegations

in this Third Amended Complaint.

240.211.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local

government and therefore subject to C.R.S. § 13-21-131.

241.212.	Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against deprivation of life, liberty, or property without due process of law.

242.213.	By sexually harassing and assaulting Plaintiff without her consent, Defendants Doe and Draper violated Plaintiff's right to be secure in her bodily integrity, a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

243.214.	Defendant Elder recklessly, with conscious disregard to the serious and obvious risk to the safety of transgender inmates like Plaintiff, violated Plaintiff's right to be secure in her bodily integrity by allowing male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

244.215.	Defendant Jane DoeElliss failed to intervene to prevent the unconstitutional invasion of bodily integrity by Defendant John DoeMustapick.

245.216.	Defendant Elder knew that his acts or omissions were substantially certain to cause El Paso County officials to violate constitutional rights of transgender inmates like Plaintiff to be free from secure in their bodily integrity, and Defendant Elder consciously or deliberately chose to disregard this risk of harm in failing to provide and/or in deliberately choosing not to change the policy that housed transgender women inmates with men and required, per official policy, male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

246.217.	Defendant Elder exhibited deliberate indifference to the substantial and obvious risk of harm to Plaintiff, and other transgender inmates, by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

247.218.	Defendant Elder proximately caused an unconstitutional invasion of Plaintiff's bodily integrity by housing, per official policy, transgender women, like Plaintiff, in the men's facility

and continuing to require, per official policy, male deputies, like Defendants Doe and Draper, to search transgender women without any supervision.

248.219.     Defendant Elder set in motion a series of events that he knew would cause an inmate in Plaintiff's situation to be deprived of her constitutional right to be secure in her bodily integrity; but for the above acts or omissions of Defendants, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

249.220.     Defendant Gillespie's decision to house Plaintiff in an all-male unit subjected her to have her privacy constantly invaded.

250.221.     The policies implemented by Defendant Elder, as well as Defendants' actions and inactions, violated Plaintiff's substantive due process right to bodily integrity.

251.222.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

252.223.     When viewed in total, this conduct is outrageous and shocks the conscience.

253.224.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

254.225.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### EIGHTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. TENTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process
### Deliberately Indifferent Mental Health Care

*Against Defendants Elder and Gillespie*

255.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

256.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

257.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

258.    Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against deprivation of life, liberty, or property without due process of law

259.    Plaintiff was a pre-trial detainee.

260.    As a pre-trial detainee, Plainitff was and is protected from deliberate indifference to her serious medical needs by the Colorado Constitution's due process clause.

261.    Defendants knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

262.    Defendants knew that Plainitff has Gender Dysphoria, a serious medical need requiring treatment to avert a serious risk of physical and psychological harm. Defendants also knew that the medically accepted standards for the treatment of Gender Dysphoria are the Standards of Care.

263.    Defendants knew that the medically necessary treatments for Plainitff's Gender Dysphoria are hormone therapy in uninterrupted and therapeutic doses, accommodations related to her gender expression (including female undergarments, commissary items, and grooming allowances), and ongoing care and evaluations from mental health professionals qualified to treat Gender Dysphoria.

264.    Defendants knew that the Standards of Care require that Gender Dysphoria treatment be

administered in a manner sufficient to alleviate severe symptoms, which in the case of Plaintiff include severe depression and self-harm.

265.    Despite this knowledge and Plaintiff's repeated requests for care, Defendants refused to provide Plaintiff medically necessary treatment in deliberate indifference to her serious risk of harm.

266.    Defendants denied Plaintiff all ongoing care and evaluations from mental health professionals qualified to treat Gender Dysphoria and refused to provide her accommodations related to her gender expression. This included housing her in the men's unit of the El Paso County Jail and treating her in a manner inconsistent with her gender.

267.    Defendants provided Plaintiff care that was so poor, cursory, grossly inadequate, and out of step with accepted professional norms that it constitutes a wanton infliction of pain, not medical treatment at all—placing Plaintiff at serious risk of harm.

268.    By failing to provide Plaintiff with treatment sufficient to alleviate her symptoms, Defendants failed to provide the minimally adequate care required to be provided to incarcerated transgender people.

269.1.    Defendants' actions and omissions, as described herein, were done without the exercise of any individualized medical judgment whatsoever—based on the decision to take an easier but less efficacious course of (non)treatment—and were so cursory and inadequate that they amount to no treatment at all.

270.1.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

271.    Each Defendant's acts or omissions were the legal and proximate cause of Plaintiff's injuries.

272.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's protected rights.

273.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

274.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### ELEVENTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 20 – Cruel And Unusual Punishment
### Deliberately Indifferent Mental Health Care
*Against Defendants Elder and Gillespie*

275.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

276.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

277.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

278.    Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against deprivation of life, liberty, or property without due process of law

279.    Plaintiff was a pre-trial detainee.

280.    As a pre-trial detainee, Plainitff was and is protected from deliberate indifference to her serious medical needs by the Colorado Constitution's due process clause.

281.    Plaintifff was and is also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

282.    Defendants knew that Plainitff has Gender Dysphoria, a serious medical need requiring treatment to avert a serious risk of physical and psychological harm. Defendants also knew that the medically accepted standards for the treatment of Gender Dysphoria are the Standards of Care.

283.    Defendants knew that the medically necessary treatments for Plainitff's Gender Dysphoria are hormone therapy in uninterrupted and therapeutic doses, accommodations related to her gender expression (including female undergarments, commissary items, and grooming allowances), and ongoing care and evaluations from mental health professionals qualified to treat Gender Dysphoria.

284.    Defendants knew that the Standards of Care require that Gender Dysphoria treatment be administered in a manner sufficient to alleviate severe symptoms, which in the case of Plaintiff include severe depression and self-harm.

285.    Despite this knowledge and Plainitff's repeated requests for care, Defendants refused to provide Plaintiff medically necessary treatment in deliberate indifference to her serious risk of harm.

286.    Defendants denied Plaintiff all ongoing care and evaluations from mental health professionals qualified to treat Gender Dysphoria and refused to provide her accommodations related to her gender expression. This included housing her in the men's unit of the El Paso County Jail and treating her in a manner inconsistent with her gender.

287.    Defendants provided Plainitff care that was so poor, cursory, grossly inadequate, and out of step with accepted professional norms that it constitutes a wanton infliction of pain, not medical treatment at all—placing Plaintiff at serious risk of harm.

288.    By failing to provide Plaintiff with treatment sufficient to alleviate her symptoms, Defendants failed to provide the minimally adequate care required to be provided to incarcerated

transgender people.

289.1.   Defendants' actions and omissions, as described herein, done made without the exercise of any individualized medical judgment whatsoever—based on the decision to take an easier but less efficacious course of (non)treatment—and were so cursory and inadequate that they amount to no treatment at all.

290.1.   All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

291.   Each Defendants' acts or omissions of each Defendant were the legal and proximate cause of Plaintiff's injuries.

292.   Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's protected rights.

293.1.   Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

294.1.   As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**TWELFTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 20 – Cruel And Unusual Punishment**
**Conditions Of Confinement**
*Against Defendants Elder, John Doe, Jane Doe, Draper, Elder and Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

295.226.        Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

227.    Defendants were acting under color of state law at all times relevant to this action.

296.1.  Defendants were acting under color of state law at all times relevant to this action.

297.228.    Plaintiff was and is a pre-trial detainee.

298.229.    As a pre-trial detainee, Plaintiff was and is protected from unconstitutional conditions of confinement.

230.    Plaintiff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

231.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

232.    Defendant Elder' policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

233.    Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

234.    Despite this knowledge, and Plaintiff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

235.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by sexually harrassing her and failing to protect her from sexual assault.

236.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches.

237.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

238.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

239.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

240.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**NINTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process**
**Conditions Of Confinement**
*Against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

241.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

242.    Defendants were acting under color of state law at all times relevant to this action.

243.    Plaintiff was a pre-trial detainee.

244.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement.

299.245.        Plaintifff was and is also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

300.246.        Each Defendant knew or should have known of these clearly established rights at the time of Plaintiff's incarceration.

301.1.   Defendant Elder' policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, poses an excessive risk to Ms. Griffith's health and safety.

302.1.   Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

303.1.   Despite this knowledge, and Plaintiff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

304.     Defendants subjected Plaintiff to unconstitutional conditions of confinement by sexually harrassing and assaulting her.

305.1.   All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

306.1.   Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

307.1.   Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain

and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

308.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### THIRTEENTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process
### Conditions Of Confinement
*Against Defendants Elder, John Doe, Jane Doe, Draper, Elder and Gillespie*

309.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

310.1.  Defendants were acting under color of state law at all times relevant to this action.

311.    Plaintiff was and is a pre-trial detainee.

312.    As a pre-trial detainee, Plaintiff was and is protected from unconstitutional conditions of confinement.

313.    Plaintifff was and is also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

314.1.  Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

315.247.    Defendants Elder's policy of assigning all detained transgender individuals to housing units based on their anatomy as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posesposed an excessive risk to Ms. Griffith's health and safety.

316.248.    Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

317.249.    Despite this knowledge, and Plaintiff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

318.250.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by sexually harrassing and assaulting herher and failing to protect her from sexual assault.

251.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches

252.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

253.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

254.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

255.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein

**TENTH CLAIM FOR RELIEF**

319.1.   All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

320.   Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

321.   Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

322.1.   As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein

### FOURTEENTH CLAIM FOR RELIEF
**U.S.C. § 12101, *et. seq.* – Americans with Disabilities Act**
**Disability Discrimination**
*Against Defendant El Paso County*

323.256.     Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

324.257.     Title II of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

325.258.     In particular, in providing any aid, benefit, or service, under Title II of the ADA, a public entity "may not ... [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service," "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others,"

"[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity . . . as that provided to others," or "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others[.]" 28 C.F.R. § 35.130(b)(1)(i), (ii), (iii), and (vii).

326.259.    A public entity "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

327.260.    A public entity may not (1) "impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary," 28 C.F.R.§ 35.130(b)(8); or (2) "utilize criteria or methods of administration … that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability … or the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(i)(ii).

328.261.    A public entity is also prohibited from aiding and perpetuating discrimination against persons with disabilities in the programs, services, or activities it provides. 28 C.F.R. § 35.130(b)(1)(v).

329.262.    The ADA's "integration mandate" requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); 28 C.F.R. § 35.152(b)(2) (requiring that prisoners with disabilities be housed in the most integrated setting appropriate to their needs under the program access obligation); see also Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services, originally published July 26, 1991, 28 C.F.R. pt. 35, App. B

("Integration is fundamental to the purposes of the Americans with Disabilities Act. Provision of segregated accommodations and services relegates persons with disabilities to second-class status.").

~~330.~~263.    Defendant El Paso County violated the rights of Plaintiff secured by Title II of the ADA and its implementing regulations.

~~331.~~264.    El Paso County is currently, and at all times relevant to this action has been a "public entity" as defined by the ADA, 42 U.S.C. § 12131(1)(B), and provides a "program, service, or activity" within the meaning of the ADA, including educational and rehabilitative programs and services.

~~332.~~265.    Plaintiff suffers from Gender Dysphoria, Developmental Trauma Disorder.

~~333.~~266.    Gender Dysphoria is not excluded under the ADA, 42 U.S.C. § 12211(b)(1), because it is a gender identity disorder that results from a physical impairment. In 2015, the U.S. Department of Justice concluded that, "[i]n light of the evolving scientific evidence suggesting that Gender Dysphoria may have a physical basis, along with the remedial nature of the ADA and the relevant statutory and regulatory provisions directing that the terms 'disability' and 'physical impairment' be read broadly, the [ADA's exclusion of gender identity disorders not resulting from a physical impairment] should be construed narrowly such that Gender Dysphoria falls outside its scope."[2]

~~334.~~267.    Alternatively, Gender Dysphoria is not excluded under the ADA because it is not a "gender identity disorder" under 42 U.S.C. § 12211(b)(1)—it is a dysphoria.

~~335.~~268.    Because of the date of the actions complained of, the expanded definition of "disability" under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") applies.

~~336.~~269.    Under the ADAAA and DOJ regulations, the definition of disability is to be construed broadly in favor of expansive coverage. 42 U.S.C. § 12102(4)(A); 28 C.F.R. §§ 35.108(a)(2)(i),

---

[2] Second Statement of Interest of the United States at 5, *Blatt v. Cabela's Retail, Inc.*, No. 5:14-cv-4822-JFL, 2015 WL 9872493 (E.D. Pa. Nov. 16, 2015).

35.108(d)(1)(i). Accordingly, the terms "substantially" and "major" in the definition of disability are to be interpreted consistently with the ADAAA's findings and purposes, which reinstate "the broad scope of protection intended to be afforded by the ADA" and convey Congress's intent "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 42 U.S.C. §§ 12102(4)(B), ADA Amendments Act of 2008, Pub. L. No. 110-325, §§ (2)(a)(5), (b)(5).

337.270.      In determining disability, the ADAAA requires that impairments must be assessed "without regard to the ameliorative effects of mitigating measures," such as medication, therapy, and reasonable accommodations. 42 U.S.C. § 12102(4)(E)(i).

338.271.      In determining disability, the ADAAA requires that impairments that are "episodic or in remission" must be assessed in their active state. 42 U.S.C. § 12102(4)(D).

339.272.      In determining disability, a "major life activity" includes "the operation of a major bodily function," including neurological, brain, and reproductive functions. 42 U.S.C. § 12102(2)(B).

340.273.      Under the ADAAA and DOJ regulations, "an individual meets the requirement of 'being regarded as having' an impairment that substantially limits one or more major life activities if the individual establishes that he or she has been subjected to an action prohibited under th[e ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(3)(A); see also 28 C.F.R. § 35.108(f)(1); ADA Amendments Act of 2008, Pub. L. No. 110-325, § (2)(b)(3) (reinstating "broad view of the third prong" of the definition of disability). Accordingly, no showing of substantial limitation of a major life activity is required under the regarded-as prong. 28 C.F.R. § 35.108(a)(2)(iii) ("[T]he 'regarded as' prong of the definition of "disability" . . . does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment.").

341.274.      Plainitff's Gender Dysphoria substantially limits one or more major life activities,

including her ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and also substantially limits the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

342.275.    Plaintiff has a record of Gender Dysphoria, which substantially limits one or more major life activities, including her ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and also substantially limits the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

343.276.    Plaintiff "meets the requirement of 'being regarded as having' an impairment that substantially limits one or more major life activities" because El Paso County excluded her from participation in and denied her the benefits of El Paso County's programs, services, and activities based on Gender Dysphoria, and also subjected her to discrimination based on Gender Dysphoria.

344.277.    Plaintiff is currently and at all times relevant to this action has been a "qualified individual with a disability" within the meaning of Title II of the ADA.

345.278.    As an inmate in the custody of El Paso County, Plaintiff was qualified to participate in El Paso County's programs, services, and activities. El Paso County provides these services to other inmates committed to its custody.

346.    El Paso County failed to provide reasonable modification to its policies, procedures, and practices regarding Ms. Griffith, as it was legally required to do. 28 C.F.R. § 35.130(b)(7). El Paso County did not attempt accommodations such as increased mental health counseling.

347.    El Paso County failed to provide Plaintiff with intensive individual psychotherapy from a developmentally, psychodynamicallyapprorpiate housing, dress, and trauma-oriented clinician with sensitivity to transgender issues.

348.279.        access to female grooming products, and gender-appropriate searches. By virtue of

the fact that El Paso County did not put these or other reasonable modifications in place, Plaintiff was

discriminated against because of her disabilities.

349.280.        By confining Plainitff in the men's unit at the El Paso County Jail, a facility where

staff members referred to Plaintiff using a male pronoun and her male given name and staff refused to

permit Plaintiff to wear her own gender's clothes and underwear, El Paso County subjected Plaintiff to

discrimination based on Gender Dysphoria.

350.281.        Defendants' actions and inactions were taken in reckless and callous indifference

to the protected rights of Plaintiff.

351.282.        Defendants' acts or omissions were the legal and proximate cause of Plaintiff's

damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and

anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest

of her life.

352.283.        As a direct and proximate cause and consequence of the unconstitutional policies,

procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to

suffer injuries, damages and losses as set forth herein.

### ELEVENTH CLAIM FOR RELIEF
### ~~FIFTEENTH CLAIM FOR RELIEF~~
**U.S.C. § 701, *et. seq.* – Rehabilitation Act of 1973**
**Disability Discrimination**
*Against Defendant El Paso County*

353.284.        Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint

as if fully set forth herein.

354.285.        Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

355.286.     El Paso County accepts federal financial assistance and has done so at all times relevant to this complaint.Third Amended Complaint. El Paso County is therefore a "program . . . receiving Federal financial assistance" for purposes of the Rehabilitation Act. 214. The definition of disability is identical under the ADA and Rehabilitation Act, and the expanded definition of "disability" under the ADAAA applies with equal force to the definition of "disability" under Section 504 of the Rehabilitation Act. See ADA Amendments Act of 2008, Pub. L. No. 110-325, §7 (conforming Section 504 of Rehabilitation Act's definition of "disability," 29 U.S.C. § 705, to definition of disability "in section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102))."

356.287.     Plaintiff suffers from Gender Dysphoria, which substantially limits one or more major life activities and also the operation of major bodily functions. Plaintiff "meets the requirement of 'being regarded as having' an impairment that substantially limits one or more major life activities" because El Paso County excluded her from participation in and denied her the benefits of El Paso County's programs, services, and activities based on Gender Dysphoria, and also subjected her to discrimination based on these impairments.

357.288.     Gender Dysphoria is not excluded under the Rehabilitation Act because it is a gender identity disorder that results from a physical impairment or, alternatively, it is not a gender identity disorder—it is a dysphoria.

358.289.     Plaintiff is currently and at all times relevant to this action has been a "qualified individual with a disability" for purposes of the Rehabilitation Act.

359.290.     By confining Plaintiff in the men's unit at the El Paso County Jail, a facility where staff members referred to Plaintiff using a male pronoun and her male given name and staff refused to

permit Plainitff to wear her own gender's clothes and underwear, El Paso County subjected Plainitff to discrimination based on Gender Dysphoria in violation of Section 504 of the Rehabilitation Act.

360.291.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's protected rights.

361.292.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

362.293.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

## TWELFTH CLAIM FOR RELIEF
## SIXTEENTH CLAIM FOR RELIEF
### C.R.S. § 24-34-601, *et. seq.* – Colorado Anti-Discrimination Act
### Sex and Transgender Discrimination
### *Against All Defendants*

363.294.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

364.295.    The Colorado Anti-Discrimination Act, C.R.S. § 24-34-601(2)(a) provides that it is a violation of Colorado law for any place of public accommodation to discriminate against any person based on sex or sexual orientation, including transgender status.[3]

365.296.    The El Paso County Jail is a place of "public accommodation" as defined under

---

[3] Although sexual orientation and gender identity are separate concepts, C.R.S. § 24-34-301(7) defines "sexual orientation" as "an individual's orientation toward heterosexuality, homosexuality, bisexuality, or transgender status or another individual's perception thereof."

C.R.S. § 24-34-601(1). Defendants operate the facilities that ~~house~~housed Plaintiff and are responsible for providing the full and equal enjoyment of its services, programs and benefits to the public regardless of the status of Plaintiff as a transgender woman.

~~366.1.  Defendants refuse to provide these services, programs and benefits of these public accommodations to Plaintiff because of her transgender status.~~

~~367.1.  Defendants provide these public accommodations to cisgender men and cisgender women but deny these services to transgender women because of their sex and transgender status.~~

297.  Defendants refused to provide these services, programs and benefits of these public accommodations to Plaintiff because of her transgender status.

298.  Defendants provide these public accommodations to cisgender men and cisgender women but deny these services to transgender women because of their sex and transgender status.

~~368.~~299.  Defendants ~~discriminate~~discriminated against Plaintiff on the basis of her sex and transgender status, in violation of Colorado law, and in so doing, ~~cause~~caused Plaintiff serious physical and psychological harm, and ~~subject them~~subjected her to an unreasonable risk of harm.

~~SEVENTEENTH CLAIM FOR RELIEF~~
**THIRTEENTH CLAIM FOR RELIEF**
**C.R.S. § 24-34-601, *et. seq.* – Colorado Anti-Discrimination Act**
**Disability Discrimination**
*Against All Defendants*

~~369.~~300.  Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

~~370.~~301.  The Colorado Anti-Discrimination Act, C.R.S. § 24-34-601(2)(a) provides that it is a violation of Colorado law for any place of public accommodation to discriminate against any person based the disability of that person.

~~371.~~302.  The El Paso County Jail is a place of "public accommodation" as defined under

C.R.S. § 24-34-601(1). Defendants operate the facilities that ~~house~~housed Plaintiff and are responsible for providing the full and equal enjoyment of its services, programs and benefits to the public regardless of the status of Plaintiff as a transgender woman.

303.    Defendants refused to provide these services, programs and benefits of these public accommodations to Plaintiff because of her transgender status.

304.    Defendants provide these public accommodations to cisgender men and cisgender women but deny these services to transgender women because of their sex and transgender status.

~~372.1.    Defendants refuse to provide these services, programs and benefits of these public accommodations to Plaintiff because of her transgender status.~~

~~373.1.    Defendants provide these public accommodations to cisgender men and cisgender women but deny these services to transgender women because of their sex and transgender status.~~

~~374.~~305.    Defendants ~~discriminate~~discriminated against Plaintiff on the basis of her sex and transgender status, in violation of Colorado law, and in so doing, ~~her women~~caused Plaintiff serious physical and psychological harm, and ~~subject them~~subjected her to an unreasonable risk of harm.

**FOURTEENTH CLAIM FOR RELIEF**
~~**EIGHTEENTH CLAIM FOR RELIEF**~~
~~**Negligence**~~
**42 U.S.C. § 1983 – Fourteenth Amendment**
**Failure To Protect**
*Against Defendants ~~Wellpath, Roe~~El Paso County, Elder, Gillespie, O'Neal, Noe, and ~~Mohr~~Ford*

~~375.~~306.    Plaintiff hereby incorporates all other paragraphs of this ~~Second~~Third Amended Complaint as if fully set forth herein.

307.    Defendants were acting under color of state law at all times relevant to this action.

308.    ~~At all times relevant, Wellpath~~Plaintiff was a ~~private corporation~~pre-trial detainee.

309.    As a pre-trial detainee, Plaintiff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

310.     Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

311.     Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

312.     ~~contracted~~Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

313.     Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

314.     Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

315.     Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

316.     All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

317.     ~~El Paso County to provide medical care~~Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

318.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish,

and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

319.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### FIFTEENTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 20 – Cruel And Unusual Punishment
health services to inmates at the **Failure To Protect**
*Against Defendants El Paso County Jail, and Wellpath is not entitled to immunity under the CGIA.,*
*Elder, Gillespie, O'Neal, Noe, and Ford*

320.    Plaintiff hereby incorporatesAt all other paragraphs of this Third Amended Complaint as if fully set forth herein.

321.    Defendants were acting under color of state law at all times relevant, to this action.

322.    Plaintiff was in a pre-trial detainee.

323.    As a pre-trial detainee, Plaintiff was protected from unconstitutional conditions of confinement by the involuntary custody of Fourteenth Amendment.

324.    Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

325.    Each Defendant knew or should have known of these clearly established rights at the time of Plaintiff's incarceration.

376.326.    Defendants El Paso County JailCounty's, Elder's, and under the medical responsibility, care Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the

individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and ~~treatment of Wellpath~~safety.

327.    Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

328.    Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

329.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

330.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

~~377.~~  Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.~~Wellpath, and its employees Roe and Mohr, had a duty to provide reasonable medical care and treatment to detainees at the El Paso County Jail, including Plaintiff.~~

~~378.    Wellpath's employees, including Roe and Mohr, had a psychotherapist-patient relationship with Ms. Griffith at all relevant times and were acting within the scope of their employment throughout the duration of that relationship.~~

~~379.    With respect to their care and treatment of Plaintiff, Wellpath and its employees, including Roe and Mohr, owed her a duty to exercise the degree of care, skill, caution, diligence, and foresight exercised by and expected of mental health personnel in similar situations.~~

380. Wellpath had a duty to exercise reasonable care in providing mental health care and treatment to the El Paso County Jail detainees, including Plaintiff, and to exercise reasonable care in the training and supervision of Wellpath's employees.

381. These duties of care are informed by state law. Under Colo. Rev. Stat. § 16-3-401, prisoners arrested or in custody shall be treated humanely and provided with adequate food, shelter, and, if required mental health treatment. The provision of adequate mental health treatment and humane care is a statutory (as well as constitutional) obligation.

382. Wellpath and its employees, including Roe and Mohr, breached their duty of care to Plaintiff and deviated from the standard of care they owed her when they failed to timely provide her with reasonably obtainable and necessary medical assessment, monitoring, care, and treatment.

383. As a direct and proximate result of the Wellpath's, and its employees' (including Roe's and Mohr's), breach of their duty to provide reasonable care and treatment to Plaintiff, she suffered significant physical and mental pain and suffering, permanent injury, and other damages.

384. Wellpath is sued directly and indirectly for negligence, negligent supervision, and negligent training of its staff; for failing to ensure the provision of appropriate care in the treatment of Plaintiff; for the acts and omissions of its agents and/or employees; and for the herein described acts by its involved employees, agents, staff, and affiliates, who were acting within the scope and course of their employment.

385. Wellpath is vicariously liable for the negligent acts and omissions by its non-physician agents and/or employees, including, but not limited to, those named individually herein, and those directly liable for negligent failures in training, policies, and practices.

386.    Wellpath is directly liable for breaching its duty to exercise reasonable care in its training and supervision of its employees and agents and El Paso County Jail staff in a manner that provided El Paso County Jail detainees with reasonable medical care and treatment.

387.    Wellpath knew or should have known that the lack of adequate supervision and training of its employees and agents, including Mohr, and El Paso County Jail staff was likely to harm El Paso County Jail detainees in need of medical care, like Plaintiff.

388.    In failing to exercise reasonable care in the training and supervision of its employees and agents and El Paso County Jail staff, as it relates to their providing reasonable medical care and treatment, Wellpath was negligent and proximately caused Plaintiff's harm.

389.    The negligent acts and omissions by Wellpath were a substantial and significant contributing cause of Ms. Griffith's injury and suffering, and it was reasonably foreseeable that these Wellpath and its employees' (including Mohr's) negligence would cause the harm or a similar harm that Plaintiff suffered.

331.    

332.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

390.    As a direct and proximate result of the negligent conduct of Wellpath and its employees, Plaintiff suffered significant permanent harm and physical and mental pain and suffering and other damages.

391.333.    cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer economic and non-

economic damages due to Wellpath's, and its employees', negligent conduct, including but not limited to economic damages for medical expenses and lost wages, and non-economic damages for impairment in the quality of his life, inconvenience, pain and suffering, and extreme emotional stressinjuries, damages and losses as set forth herein.

### SIXTEENTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process
### Failure To Protect
*Against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford*

334.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

392.    Defendants were acting under color of state law at all times relevant to this action. Wellpath's, and its employees', conduct was attended by circumstances of malice, or willful and wanton conduct, which Wellpath and its employees must have realized was dangerous, or that was done recklessly, without regard to the consequences to Plaintiff.

335.    Wellpath and its employees consciously disregarded a substantial and unjustifiable risk that they

336.    Plaintiff was a pre-trial detainee.

337.    As a pre-trial detainee, Plaintiff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

338.    Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

339.    Each Defendant knew or should have known would cause of these clearly established rights at the time of Plaintiff's incarceration.

340.    Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

341.    Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

393.342.    Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to another.[4]her.

343.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

344.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

345.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

346.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

---

[4] Given the circumstances of malice and willful and wanton conduct surrounding Wellpath's, and its employees', treatment of Plaintiff, Plaintiff anticipates seeking exemplary damages for Wellpath's, and its employees', negligence once Plaintiff has established prima facie proof of a triable issue of exemplary damages.

347.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant:

(a)    Appropriate declaratory and other injunctive and/or equitable relief;

(b)    Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)    All economic losses on all claims allowed by law;

(d)    Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)    Attorney fees and the costs associated with this action on all claims allowed by law;

(f)    Pre- and post-judgment interest at the lawful rate; and

(g)    Any further relief that this court deems just and proper, and any other relief as allowed by law and equity.

## PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this ~~4th~~2nd day of ~~October 2021~~June 2022.

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*

_____

Andy McNulty
Mari Newman

1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

ATTORNEYS FOR PLAINTIFF