# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

      Plaintiff,

v.

EL PASO COUNTY, COLORADO,
BILL ELDER, in his individual and official capacities,
CY GILLESPIE, in his individual capacity,
ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity,
BRANDE FORD, in her individual capacity,

      Defendants.

---

## THIRD AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff, by and through her attorneys, Andy McNulty and Mari Newman of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her Third Amended Complaint and Jury Demand as follows:

### INTRODUCTION

1.      Darlene Griffith suffered repeated sexual harassment, sexual assault, and discrimination as a result of El Paso County's policy of refusing to house transgender inmates based on their gender identity, and a pervasive culture of purposeful discrimination against, and subjugation of, transgender inmates who suffer from Gender Dysphoria.

2.      Ms. Griffith is a transgender woman who has been diagnosed with Gender Dysphoria. In the community, she lives in accordance with her female gender identity and undergoes hormone therapy.

1

Despite this well-documented history, Defendants purposefully housed Ms. Griffith in an all-male unit in the El Paso County Jail. Despite Ms. Griffith's multiple requests to be moved to a unit that corresponds with her gender identity, El Paso County continued to discriminatorily house her in a unit that exposed her to a significantly increased risk of sexual harassment, assault, and emotional distress.

3.      Defendants also subjected Ms. Griffith to a pervasive culture of discrimination and sexual harassment at the El Paso County Jail. Defendant Andrew Mustapick, an El Paso County Sheriff Deputy, sexually harassed Ms. Griffith and subjected her to a highly invasive (and completely unnecessary) visual body cavity search upon intake, while telling her that he wanted to go "balls deep in [her] ass." Because she was housed in an all-male unit, Ms. Griffith was then subjected to repeated cross-gender pat-down searches. Defendants continuously and intentionally mis-gendered Ms. Griffith while she was incarcerated. Defendants denied Ms. Griffith clothing that conforms with her gender identity despite the fact that cisgendered women are allowed panties and lipstick. When El Paso County officials learned that Ms. Griffith had told her medical care providers that she would attempt to self-castrate due to the pervasive discrimination that she faced, they took no action to rectify their on-going discrimination and harassment of her, and continued to house her in an all-male housing unit.

4.      Defendants took all of these actions in accordance with the official policies of El Paso County, or pursuant to widespread unwritten customs and practices that El Paso County has condoned.

5.      Ms. Griffith brings this lawsuit to vindicate her rights and the rights of all transgender women, so that they do not have to suffer the daily indignities that she suffered in the El Paso County Jail.

## JURISDICTION AND VENUE

6.      This action arises under the Constitution and laws of the United States.

2

7.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Jurisdiction supporting Plaintiff's claims for attorney fees and costs is conferred by 42 U.S.C. § 1988.

8.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all times relevant to the subject matter of this Third Amended Complaint.

9.     Supplemental pendent jurisdiction for Plaintiff's state law claims is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent state law causes of action derive from a common nucleus of operative facts.

## PARTIES

**Plaintiff:**

10.     At all times relevant to the subject matter of this Third Amended Complaint, Plaintiff Darlene Griffith was a citizen of the United States and a resident of the State of Colorado.

11.     During the relevant time period, Ms. Griffith was detained at the El Paso County Jail.

12.     All available administrative remedies have been exhausted to the extent required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). There are no other administrative exhaustion requirements that would pose as a bar to the claims asserted herein.

**Defendants:**

13.     Defendant El Paso County is a municipality and as such is a proper defendant under 42 U.S.C. § 1983.

14.     At all times relevant to the subject matter of this litigation, Defendant Bill Elder was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Elder was acting under color of state law in his capacity as the El Paso County Sheriff. Defendant Elder was responsible for training and supervising all other Defendants and other employees of the El Paso County Sheriff's

3

Department working at the jail, for setting jail policy for the county and the overall management of the jail, and for insuring the health and welfare of all persons detained in the El Paso County Jail.

15. At all times relevant to the subject matter of this litigation, Defendant Cy Gillespie was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Gillespie was acting under color of state law in his capacity as a Commander employed by El Paso County and Defendant Elder.

16. At all times relevant to the subject matter of this litigation, Defendant Elizabeth O'Neal was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant O'Neal was acting under color of state law in her capacity as an official employed by El Paso County and Defendant Elder.

17. At all times relevant to the subject matter of this litigation, Defendant Andrew Mustapick was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Mustapick was acting under color of state law in his capacity as a deputy employed by El Paso County and Defendant Elder.

18. At all times relevant to the subject matter of this litigation, Defendant Dawne Elliss was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Elliss was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

19. At all times relevant to the subject matter of this litigation, Defendant Tiffany Noe was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Noe was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

20. At all times relevant to the subject matter of this litigation, Defendant Brande Ford was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Ford was acting under color of state law in her capacity as a deputy employed by El Paso County and Defendant Elder.

## FACTUAL ALLEGATIONS

### Gender Identity, Gender Dysphoria, And The Incarceration Of Transgender Women Like Ms. Griffith

21.     Gender identity is an innate, internal sense of one's sex—e.g., being male or female—and is a basic part of every person's core identity. Everyone has a gender identity. Most people's gender identity is consistent with the sex they were assigned at birth ("assigned sex"). Transgender people, however, have a gender identity that is different from their assigned sex. For example, a transgender woman is a woman who was assigned male at birth and has a female gender identity. A cisgender woman is a woman who was assigned female at birth and has a female gender identity.

22.     The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-5") recognizes that being transgender is not itself a disability, but that the clinically relevant condition is the "Gender Dysphoria" experienced by many individuals whose gender identity conflicts with their assigned sex. Gender Dysphoria is defined as the significant distress that may accompany the incongruence between a transgender person's gender identity and assigned sex. This distress limits major life activities and is therefore a disability. A transgender person's Gender Dysphoria can be alleviated when the person is able to live, and be treated by others, consistently with the person's gender identity.

23.     Gender Dysphoria often, but not always, emerges during childhood.

24.     The accepted course of medical treatment to alleviate the symptoms of Gender Dysphoria often involves allowing the individual to live as his or her chosen gender through one or more of the following treatments: changes in gender expression and role; dressing, grooming, and otherwise outwardly presenting in a manner consistent with one's gender identity; hormone therapy; psychotherapy; and, in some cases, surgery to change primary and/or secondary sex characteristics.

25.    Ms. Griffith has been diagnosed with Gender Dysphoria and has been living as a transgender woman for over twenty years. As part of her medically supervised treatment, she changed her name and altered her physical appearance to conform to her female gender identity, including dressing in feminine attire and taking feminizing hormones, which caused her to develop female secondary sex characteristics such as breasts, soft skin, a lack of facial hair, and other characteristics typically associated with women.

26.    At all times relevant to this action, Defendants were aware of Ms. Griffith's Gender Dysphoria and her identity as a transgender woman.

27.    At all times relevant to this action, Defendants were aware of Ms. Griffith's history of Gender Dysphoria and her identity as a transgender woman.

28.    At all times relevant to this action, Defendants perceived Ms. Griffith as having Gender Dysphoria and being a transgender woman.

29.    Defendants were aware that Ms. Griffith has a history of self-harm, which is a symptom and manifestation of her diagnosed Gender Dysphoria. Defendants were also aware that Ms. Griffith had an increased suicide risk because of her transgender status and history of past suicide attempts. And, Ms. Griffith alerted Defendants to self-harming thoughts throughout her incarceration.

30.    On March 11, 2021, Ms. Griffith told Christine Mohr, a Wellpath mental health provider, that she wanted to cut off her penis on a daily basis. Ms. Mohr acknowledged that Ms. Griffith has an extensive history of self-mutilation. Ms. Mohr spoke with an El Paso County sergeant about Ms. Griffith's expressed intent to self-mutilate and her housing, but the El Paso County official decided that Ms. Griffith would remain housed in an all-male unit.

31.    On July 1, 2021, Ms. Griffith told Raymond Carrington, a Wellpath mental health provider, that she would remove her penis herself once she could figure out how to do it and would do it

as soon as possible. Mr. Carrington noted the conversation in Ms. Griffith's medical records.  Mr. Carrington also alerted an El Paso County official that Ms. Griffith had expressed ideation of self-harm, but the El Paso County official deliberately decided not to place Ms. Griffith on housing precautions or move her to housing that conforms with her gender identity.

32.     After alerting El Paso County officials, and its medical contractors (who communicated those concerns to El Paso County officials), that she was contemplating engaging in self-castration because of the pervasive discrimination and harassment she experienced within the El Paso County Jail, Ms. Griffith attempted to self-castrate by wrapping a rubber band around her genitals.

33.     Ms. Griffith's Gender Dysphoria is a mental impairment that substantially limits one or more major life activities.

34.     Ms. Griffith is substantially limited in her ability to care for herself because she requires regular, ongoing, and life-long medical treatment, including ongoing psychotherapy and periodic hormone treatment. She is also substantially limited in other major life activities, such as eating, sleeping, learning, concentrating, thinking, communicating, and interacting with others because of distress associated with her Gender Dysphoria

35.     Ms. Griffith is substantially limited in the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

36.     Ms. Griffith has a history of Gender Dysphoria, which substantially limits one or more major life activities, including the ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and which substantially limits neurological function, brain function, endocrine function, and reproductive function.

37.     When a transgender person's Gender Dysphoria is left untreated, or is inadequately treated, the consequences can be dire. Symptoms of untreated Gender Dysphoria often include intense

emotional suffering, anxiety and depression, suicidality, and thoughts or acts of self-harm. All of those

symptoms can be mitigated, and often prevented altogether, for transgender people with access to

appropriate individualized medical care as part of their gender transitions.

38.    Ms. Griffith has engaged in multiple acts of self-harm since childhood during times when

her Gender Dysphoria has not been accommodated and treated. Ms. Griffith engages in self-harm,

specifically self-castration behavior, regularly. This activity is worsened when she is not receiving

treatment for Gender Dysphoria, which includes not being allowed to live, and dress, consistent with her

gender identity and being subjected to sexual harassment in the form of mis-gendering.

39.    The prison environment can be particularly harmful to transgender women. Reports

(including the 2009 report by the National Prison Rape Elimination Commission) consistently document

that transgender women are victims of sexual abuse at much higher rates than the rest of the population

while in custodial environments including lock-ups, jails and prisons, as well as while being searched by

male prison guards. In its June 2015 report of data collection activities, the Bureau of Justice Statistics

("BJS") disclosed that an estimated 35% of transgender people held in prisons such as those in Colorado

reported experiencing one or more incidents of sexual victimization in the past 12 months or since

admission. According to the BJS report, when asked about the experiences surrounding their

victimization by other incarcerated people, 72% of the transgender respondees said they experienced

force or threat of force and 29% said they were physically injured.

**The Relevant Standards For Incarcerating Transgender People**

40.    The World Professional Association for Transgender Health ("WPATH") is an

"international, multidisciplinary, professional association whose mission is to promote evidence-based

care, education, research, advocacy, public policy, and respect for transgender health. The vision of

WPATH is to bring together diverse professionals dedicated to developing best practices and supportive

policies worldwide that promote health, research, education, respect, dignity, and equality for transsexual, transgender, and gender nonconforming people in all cultural settings."[1] All Defendants entrusted with the care and safety of the transgender women in the El Paso County Jail are aware that WPATH standards of care are applicable to Ms. Griffith and other transgender women in the El Paso County Jail. The WPATH Standards of Care are widely recognized as the authoritative standard for the treatment of transgender individuals and the National Commission on Correctional Healthcare recommends the WPATH standards for use in all correctional facilities.

41.    The WPATH standards of care apply in their entirety to transgender people in prisons and require individual assessment for appropriate treatment in a fair and tolerant climate, which may consist of outward expression of one's internal sense of gender identity, and social role transition, including access to gender-affirming canteen items, like feminine grooming products and clothing.

42.    The WPATH standards dictate that placement of transgender people in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia places transgender people at risk for victimization. Despite these known risks, El Paso County and its officials promulgating and carrying out official policy, including Defendants Elder and Gillespie, make facility assignments to people in custody solely on the basis of the individual's genitalia.

43.    The WPATH standards state that housing and shower/bathroom facilities for transsexual, transgender, and gender nonconforming people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. Placement in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia may not be appropriate and may place the individual at risk for victimization. Institutions where transsexual, transgender, and

---

[1] WPATH Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, p. 1 (available at https://www.wpath.org/media/cms/Documents/SOC%20v7/SOC%20V7_English.pdf.)

gender nonconforming people reside and receive health care should monitor for a tolerant and positive climate to ensure that residents are not under attack by staff or other residents.

44.    WPATH also provides that housing and shower/bathroom facilities for transgender people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. Defendants have failed to follow these requirements for Ms. Griffith and other transgender women in El Paso County's care, resulting in the continued violation of their rights and exposure to obvious danger from other inmates and self-mutilation.

45.    In 2003, Congress passed the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 et seq. ("PREA"). PREA establishes a zero-tolerance standard against sexual abuse in adult prisons and other confinement centers. PREA requires agencies to comply with national standards to eliminate sexual abuse, recognizes that transgender people face elevated risks of being victimized in prisons, mandates that state correctional facilities provide proper training to correctional staff, and requires subject agencies to establish methods to deter and detect sexual violence in prison, to identify and treat such victims, and to report incidents of such violence to the Bureau of Justice Statistics.

46.    The Commission established to monitor compliance with PREA noted in 2009 that gender nonconformity places transgender people at extremely high risk for abuse, and, as a result, the Commission opined that, "In determining whether to house transgender individuals in men's or women's facilities, the Commission requires individualized determinations based on other factors in addition to the person's current genital status" (NPREC, 2009, p. 89). Defendants are and have been aware of the standards required by PREA.

**El Paso County And Its Officials Have An Official Policy Of Housing Transgender Women, Like Ms. Griffith, In All-Male Units At The El Paso County Jail**

47.    When Ms. Griffith first entered El Paso County Jail on July 20, 2020, she was an openly transgender woman with a feminine appearance.

48.     During her intake screening, she notified El Paso County Jail and its healthcare personnel that she was a transgender woman with a diagnosis of Gender Dysphoria. Ms. Griffith explicitly requested placement in a women's facility because she feared being sexually abused and assaulted in male facilities by both guards and inmates, along with fearing the humiliation of being constantly searched by male guards in a male unit and the general degradation of being considered a man when she is a transgender woman.

49.     Ms. Griffith's medical records note that she has been diagnosed with Gender Dysphoria.

50.     Ms. Griffith also alerted Defendants that she is legally blind.

51.     El Paso County, as a matter of official policy, refuses to house transgender women in female housing facilities. El Paso County continued to house Ms. Griffith, and continues to house other transgender women in its custody, in male units within the El Paso County Jail.

52.     El Paso County officials ignored Ms. Griffith's health and safety requests, despite knowing the risks she faced, and subjected her to a terrible sequence of constitutional violations throughout the entirety of her incarceration.

53.     El Paso County officials disregarded Ms. Griffith's safety concerns and housed her in men's units within the El Paso County Jail where she foreseeably became a victim of multiple instances of sexual assault, harassment, and degrading and transphobic behavior at the hands of male deputies.

54.     On intake, Defendant Noe classified Ms. Griffith and purposefully placed her into an all-male unit despite knowing that Ms. Griffith is a transgender woman and that Ms. Griffith wished to be placed into housing that corresponded with her gender identity. Defendant Noe did this in accordance with the customs, policies, and practices of El Paso County and Defendant Elder.

55.     On July 29, 2020, Defendant Brande Ford did an ADA initial interview of Ms. Griffith. It was clear to Defendant Ford that Ms. Griffith is a transgender woman and that Ms. Griffith wished to be

placed into housing that corresponded with her gender identity. Despite this, Defendant Forde did not re-classify Ms. Griffith and place her into a unit that corresponded with her gender identity. In fact, despite Gender Dysphoria being a disability under the Americans with Disabilities Act, Defendant Forde wrote in Ms. Griffith's records that there were no disability concerns related to Ms. Griffith's housing.

56.     After her initial classification into an all-male unit, Ms. Griffith continuously requested that she be placed in a unit that conformed with her gender identity.

57.     On October 29, 2020, Ms. Griffith filed an inmate grievance, which she believed would be transmitted to Defendant Gillespie, requesting that she be housed in a female ward because she is a transgender woman. Ms. Griffith further informed Defendant Gillespie that she had previously been housed in the Denver Women's Prison Facility and that all of her documentation outside of El Paso County's system correctly notes that she is a transgender woman. In response to Ms. Griffith's grievance, Defendant O'Neal stated that El Paso County had reviewed Ms. Griffith's request and denied her the accommodation of housing her in a facility that corresponded with her gender identity. It was clear that this decision was made in accordance with the policies and procedures put into place by Defendants Elder and Gillespie.

58.     On December 9, 2020, Ms. Griffith filed another inmate grievance requesting that she be placed in a female unit. That grievance also complained that deputies at the El Paso County Jail were continuously referring to her with male pronouns. Ms. Griffith again pointed out that all of her documentation outside of the El Paso County system reflects her correct gender identity and that she had previously been housed in female units in other correctional facilities. On January 4, 2021, El Paso County responded to Ms. Griffith's grievance by stating that she would continue to be housed in a male unit based on El Paso County's policies and procedures.

59.     On January 15, 2021, Ms. Griffith again requested appropriate housing in a female ward. Ms. Griffith grieved numerous staff regarding the issue and alerted El Paso County officials and its medical provider that she had previously been housed in two DOC facilities in female wards.

60.     On January 22, 2021, Ms. Griffith told jail mental health provider Raymond Carrington that she was suffering from extreme anxiety because she feared repercussion for grieving her treatment in custody: namely, that she was continuing to be housed in a male ward and treated as male, even though she is a transgender woman. Ms. Griffith also reported to the jail medical official that she felt as though people in the El Paso County Jail do not accept her for the person that she is and that she was being ostracized in the male ward for being a transgender woman. Ms. Griffith expressed to the jail medical official the difficulty on her mental health of being housed in a male ward and expressed her desire to be housed with women because she is a transgender woman.

61.     On January 22, 2021, Ms. Griffith also wrote a grievance that again asked that she be moved to a women's unit. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being housed in an all-male unit with male guards. On January 23, 2021, Ms. Griffith wrote another grievance asking to be moved to a women's unit within the El Paso County Jail, stating that she was suffering on a daily basis due to El Paso County's failure to move her to a unit that corresponds with her gender identity. On January 23, 2021, Ms. Griffith wrote another kite complaining about the lack of accommodations for her Gender Dysphoria, including housing in a men's ward.

62.     On February 26, 2021, Ms. Griffith asked the mental health provider why she continued to be housed in a men's ward and that this was creating anxiety and depression for her. Ms. Griffith also stated that she continued to be called "sir" by deputies.

63.     On March 9, 2021, Ms. Griffith wrote a grievance requesting that Christine Mohr provide information about Ms. Griffith's diagnosed Gender Dysphoria to El Paso County Jail officials so that

they would move Ms. Griffith to housing that corresponded with her gender identity which, upon information and belief, was communicated to El Paso County.

64.    On March 10, 2021, Ms. Griffith again wrote a kite complaining about being housed in a male ward and being considered a male within the Jail.

65.    On March 11, 2021, Ms. Griffith told Christine Mohr that she wanted to be housed with women and that she had previously been housed with women in CDOC, which Ms. Mohr confirmed by reviewing Ms. Griffith's previous incarceration records. Ms. Mohr acknowledged consulting with an El Paso County official about Ms. Griffith's housing and property requests.

66.    On March 19, 20201, Christine Mohr noted that Ms. Griffith expressed frustration to her because Ms. Griffith continued to want to be housed in a female unit but had not been moved. Ms. Mohr acknowledged talking to the multiple El Paso County officials about Ms. Griffith's concerns. On March 27, 2021, Ms. Mohr told Ms. Griffith that El Paso County had determined that she would not be moved to a female ward.

67.    El Paso County continues to house transgender women in facilities that do not correspond with their gender identity. El Paso County is routinely discriminating against these women, including Ms. Griffith, based on their sex, transgender status and/or disability and exposing them to harassment, rape, sexual assault, and other anti-transgender violence, or a heightened risk thereof by refusing to provide them safe housing.

68.    The decision to house Ms. Griffith in housing that does not conform with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

69.     As a result of El Paso County's, and its officials', decision to house Ms. Griffith in a

housing unit that did not conform with her gender identity, Ms. Griffith engaged in self-harm by

wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

70.     El Paso County's decision to house Ms. Griffith in housing that does not conform with

her gender identity was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's

diagnosed Gender Dysphoria.

**Defendant Andrew Mustapick Sexually Harassed And Assaulted Ms. Griffith During An
Unconstitutional Cross-Gender Visual Body-Cavity Search Pursuant To El Paso County's
Official Policy That Male Guards Conduct Unsupervised Visual Body-Cavity Searches Of
Transgender Women Inmates**

71.     It is El Paso County's official policy that transgender women (including those with

Gender Dysphoria) are searched, including strip searched, by male staff and not by female staff. No

female guards are required to be present during searches (including visual body-cavity searches).

Transgender women in El Paso County custody have routinely been subjected to searches, including

visual body-cavity searches, by male staff.

72.     Ms. Griffith was subjected to a visual body-cavity search by a male deputy upon arrival

at the El Paso County Jail in accordance with this policy.

73.     When Ms. Griffith was booked into the jail, she was taken to a separate room. Before Ms.

Griffith began stripping off her clothes, both a male and female deputy arrived.

74.     When Ms. Griffith saw that both a male and female deputy would be conducting her

visual body-cavity search, Ms. Griffith protested and asked that the male deputy leave. Ms. Griffith told

both deputies that, because she is transgender, she did not want a male deputy to be present. Defendant

Dawn Elliss told Ms. Griffith that, per her sergeant's orders, the male deputy would stay throughout the

entire visual body-cavity search process. Defendant Elliss told Ms. Griffith that because she was "still a

male" in El Paso County's "system" that a male deputy would be conducting her search pursuant to El

Paso County policy and procedure. Ms. Griffith again asked that Defendant Elliss conduct the search because Ms. Griffith is a transgender woman. Defendant Elliss refused and cited El Paso County's policy.

75.    Defendant Elliss then told Ms. Griffith to take off her shirt, which she did. Ms. Griffith was compliant throughout the whole visual body-cavity search process.

76.    After examining Ms. Griffith's breasts, with Defendant Andrew Mustapick present, Defendant Elliss gave Ms. Griffith a sports bra and then left the room. As Defendant Elliss left the room, she intentionally and discriminatorily mis-gendered Ms. Griffith, telling Defendant Mustapick, "*he* is all yours now to strip out." Defendant Elliss left Ms. Griffith alone with Defendant Mustapick and did nothing to ensure that Defendant Mustapick did not sexually harass Ms. Griffith and subject her to an unconstitutional visual body-cavity search.

77.    After Defendant Elliss left the room, Defendant Mustapick ordered Ms. Griffith to take off her socks, pants, and panties, and then place her hands on the wall. Defendant Mustapick then told Ms. Griffith to step back, bend over, and "spread [her] sexy cheeks." Ms. Griffith protested Defendant Mustapick's use of this derogatory and harassing language, but complied with his directive.

78.    Defendant Mustapick then told Ms. Griffith that he was "going to go balls deep in that ass" while grabbing his own penis in view of Ms. Griffith. Defendant Mustapick was extremely aggressive while searching Ms. Griffith's genitals and making these comments.

79.    After Defendant Mustapick was finished sexually harassing Ms. Griffith, he warned her that she had better not tell anyone about what he did and said to her. He threatened Ms. Griffith that if she did tell someone, he would make sure that she was brutalized by the guards at the El Paso County Jail.

80.     There was no legitimate penological purpose for allowing a male guard to conduct a visual body-cavity search of Ms. Griffith. And, there was certainly no penological purpose for any of the actions taken by Defendants Mustapick and Elliss.

81.     El Paso County officials' threatening, intimidating and harassing visual body-cavity search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

82.     El Paso County officials' threatening, intimidating and harassing visual body-cavity search of Ms. Griffith, which per policy was conducted by an unaccompanied male deputy, has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

83.     As a result of El Paso County's, and its officials', decision to sexually harass Ms. Griffith, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

**Ms. Griffith Was Sexually Assaulted By A Male Inmate After Putting Defendants On Notice That She Was Not Safe In An All-Male Unit**

84.     After pleading to be moved to a female unit for over a year, and Defendants' refusal to heed her repeated pleas, Ms. Griffith was sexually assaulted by another male inmate on November 18, 2021.

85.     The inmate approached Ms. Griffith while she was laying in her bunk in the all-male unit she continued to be assigned to by El Paso County officials, and groped her right breast. Then, the inmate jeered Ms. Griffith, "you know you want this dick."

86.     After being sexually assaulted, Ms. Griffith was so distressed that she asked to see a mental health provider.

87.    This was not the first time that Ms. Griffith was assaulted by the other inmate. A witness to the assault told El Paso County officials that he witnessed at least three to four other similar assaults of Ms. Griffith.

88.    Even after being assaulted by another male inmate, Defendants did not move Ms. Griffith to a unit within the El Paso County Jail that corresponded with her Gender Identity.

**Defendants Subjected Ms. Griffith To Continuous Cross-Gender Pat-Down Searches By Male Deputies, Which Caused Her Significant Distress, And Were Done Pursuant To El Paso County's Policies, Customs, And Practices**

89.    Throughout her incarceration at the El Paso County Jail, Defendants subjected Ms. Griffith to continuous cross-gender pat-down searches by male deputies pursuant to official El Paso County policy. Ms. Griffith complained about these cross-gender searches, and the harmful effects they were having on her physical and mental health, but El Paso County did nothing to cease subjecting Ms. Griffith to cross-gender searches.

90.    On January 20, 2021, Ms. Griffith wrote a grievance where she stated that her anxiety was "through the roof" every time she is patted down by male deputies. Additionally, Ms. Griffith complained about male deputies continually touching her breast and groin when patting her down. Ms. Griffith pointed out that female inmates are not patted down by male deputies, and that she was being singled out as a transgender woman for different treatment. On January 21, 2021, Ms. Griffith complained to a jail medical provider about the effect of male pat downs on her mental health, and the disparate treatment given to her by male pat downs.

91.    On January 22, 2021, Ms. Griffith was especially upset that male officers continued to pat search her and, particularly, she was upset about a pat-down search performed by a male deputy that had just occurred when she returned from the law library. Ms. Griffith wrote a grievance because Defendants continued to subject her to cross-gender pat down searches, including the one in which the

deputy intentionally touched her breast. Ms. Griffith wrote that every day she was suffering mentally and physically due to the trauma of being patted down by male guards. Ms. Griffith wrote this grievance, which was viewed by El Paso County officials. Later that day, Ms. Griffith told a jail medical provider that she felt violated when male officers touch her.

92.    On January 23, 2021, Ms. Griffith wrote a kite complaining about the lack of accommodations for her Gender Dysphoria, including being constantly patted down by male deputies.

93.    On February 3, 2021, Ms. Griffith wrote yet another grievance because she was being subjected to non-routine cross-gender pat down searches on a daily basis, and that these pat-down searches were causing her physical and emotional pain.

94.    El Paso County officials' continuous searches of Ms. Griffith, which per policy, custom, and practice were conducted by unaccompanied male deputies, were discriminatory and harassing actions and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

95.    Defendants' decision to subject Ms. Griffith to continuous searches by unaccompanied male deputies has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

96.    As a result of El Paso County's, and its officials', decision to subject Ms. Griffith to continuous cross-gender pat-down searches, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

### El Paso County Customarily Mis-Genders Ms. Griffith and other Transgender Individuals In Its Custody

97.    WPATH guidelines dictate that, as part of treatment for Ms. Griffith's diagnosed Gender Dysphoria, she should have been treated as the woman that she is. That includes providing Ms. Griffith gender-affirming clothing, addressing her by her proper pronouns and name, and housing her in a unit

that corresponds with her gender identity. El Paso County, and its officials, failed to provide Ms. Griffith with care in accordance with these widely recognized standards.

98.     El Paso County refuses to recognize transgender women in its custody as the women that they are. Instead, El Paso County officials routinely refer to these women, including Ms. Griffith, using the male names they were assigned at birth. Documentation maintained by El Paso County, whether in case management, mental health or medical files, routinely refer to these women as "men" or using male pronouns, despite El Paso County's own documentation showing that these individuals belong to the community of transgender women.

99.     Throughout her incarceration at the El Paso County Jail, sergeants and deputies mis-gendered Ms. Griffith and used language that does not conform with her gender identity.

100.     On September 16, 2020, Ms. Griffith complained to Deputy Daniel Holder about other inmates in her unit not wearing shirts because the male inmate's failure to wear their shirts made her uncomfortable as a transgender woman. In response, Deputy Holder walked over to the other inmates and loudly yelled at them, "the blind faggot said you need to put your shirts on" in reference to Ms. Griffith. Beyond mis-gendering Ms. Griffith (and highlighting her vision disability), this statement was designed to create an antagonistic relationship between her and other inmates, placing her at an even greater risk of assault. Based on our information, Deputy Holder was not disciplined for this gross abuse of his authority.

101.     On November 10, 2020, Ms. Griffith wrote in a grievance that an El Paso County deputy had consistently mis-gendered her. When Ms. Griffith attempted to correct the deputy, the deputy confronted Ms. Griffith. El Paso County did not discipline the deputy for these actions. On December 9, 2020, Ms. Griffith wrote in a grievance that El Paso County deputies continuously mis-gendered her, which was causing her significant emotional distress.

102.    On February 3, 2021, Ms. Griffith wrote in a grievance that she was being subjected to verbal harassment by male deputies in the El Paso County Jail on a daily basis, and that this harassment was causing her pain. On February 26, 2021, Ms. Griffith stated to a jail medical provider that she continued to be called "sir" by deputies and that this caused her anxiety.

103.    On June 23, 2021, Ms. Griffith wrote a grievance because she was, again, mis-gendered by an El Paso County Jail official, and felt as though El Paso County Jail officials were purposefully mis-gendering her to discriminate against her.

104.    On July 1, 2021, Ms. Griffith told Raymond Carrington that when she identifies herself as female, the jail (including the guards) do not respect her wishes or use the appropriate pronouns. Ms. Griffith also told Defendant Carrington that she would remove her penis herself once she could figure out how to do it, and would do it as soon as possible.  Ms. Griffith told Mr. Carrington that the WPATH standards of care should be followed. Mr. Carrington informed El Paso County officials about Ms. Griffith's statements about self-harming, and El Paso County officials took no action to rectify the consistent mis-gendering that Ms. Griffith endured and did not take any action to ensure that Ms. Griffith was moved to an appropriate housing unit so as to prevent her from engaging in self-harming activity.

105.    Mis-gendering is a form of sexual harassment.

106.    This constant mis-gendering of Ms. Griffith has been caused by El Paso County's and Defendant Elder's policy of housing Ms. Griffith in a male unit, along with the customs and practices at the El Paso County Jail that condone discriminatory and harassing treatment of transgender prisoners.

107.    El Paso County officials' actions in constantly mis-gendering Ms. Griffith was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

108.    The constant mis-gendering of Ms. Griffith has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress, become depressed, and have increased ideation of self-harm.

109.    As a result of El Paso County's, and its officials', decision to constantly mis-gender and sexually harass Ms. Griffith, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

### El Paso County Customarily Denies Ms. Griffith And Other Transgender Inmates The Ability To Dress In Accordance With Their Gender Identity

110.    On September 7, 2020, Ms. Griffith wrote a grievance requesting the ability to dress in accordance with her gender identity. Specifically, Ms. Griffith requested that she be provided with a sports bra and women's underwear. Previously, Ms. Griffith had orally requested to be provided with a sports bra and women's underwear. Ms. Griffith had been denied a sports bra since being incarcerated two months earlier. Defendants denied Ms. Griffith a reasonable accommodation for her Gender Dysphoria and forced to leave her breasts without a bra, to be ogled by male inmates and deputies for over a month. This caused Ms. Griffith significant emotional distress and physical discomfort.

111.    In response to her formal grievance, Ms. Griffith was provided with a sports bra. Lieutenant Eric Carnell came to Ms. Griffith's cell with a sports bra. Lieutenant Carnell told Ms. Griffith that she would only receive one sports bra, and not panties, because she did not need to "hold female products down there." When Ms. Griffith protested, and again asked for an accommodation for her Gender Dysphoria in the form of being provided the ability to purchase panties, Lieutenant Carnell again denied her request. Ms. Griffith did not receive the sports bra until the middle of October.

112.    On October 14, 2020, Ms. Griffith wrote another grievance requesting that she be given a medical permission slip to receive women's underwear. In response, Ms. Griffith was told that she would not receive a medical permission slip to purchase women's underwear.

113.    Eventually, El Paso County officials responded to Ms. Griffith's grievance from September 7, 2020. On October 24, 2020, Lieutenant Carnell, wrote an official response to Ms. Griffith's grievance and told her that she had been provided a sports bra, but that she would not be issued, or allowed to purchase, panties.

114.    Ms. Griffith subsequently elevated her concerns to Commander Cy Gillespie and requested that she be provided panties. In response, Defendant Gillespie told Ms. Griffith that she would never get panties in the El Paso County Jail.

115.    On January 15, 2021, Ms. Griffith requested panties rather than boxers because she is a transgender woman. This request was again denied.

116.    On March 11, 2021, Ms. Griffith told a jail medical provider that she would like to be provided women's underwear. On March 19, 2021, the provider noted that Ms. Griffith expressed frustration on wanting panties. The provider acknowledged talking to the El Paso County officials about Ms. Griffith's concerns. In a follow-up conversation on March 27, 2021, the medical provider told Ms. Griffith that El Paso County officials told her that Ms. Griffith would not be issued panties because Ms. Griffith does not require the use of feminine napkins. Illustrating the obviously pretextual nature of this articulated justification for their discriminatory conduct, Defendants do not require post-menopausal and other non-menstruating women in their custody to wear men's underwear.

117.    Defendants have also denied Ms. Griffith the ability to purchase lipstick because she is a transgender woman. Cisgender women are allowed to purchase lipstick at the commissary. Defendant Gillespie specifically told Ms. Griffith that she cannot purchase lipstick per El Paso County Jail policy.

118.    Defendants' denial of gender appropriate undergarments and lipstick to Ms. Griffith was caused by El Paso County's and Defendant Elder's policy of housing Ms. Griffith in a male unit, along

with the customs and practices at the El Paso County Jail that condone discriminatory treatment of transgender prisoners.

119.    El Paso County officials' actions in denying Ms. Griffith access to female undergarments and lipstick was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

120.    El Paso County officials' customary decisions to deny Ms. Griffith the right to dress in accordance with her gender identity was a discriminatory action and a failure to reasonably accommodate Ms. Griffith's diagnosed Gender Dysphoria.

121.    El Paso County officials' customary decisions to deny Ms. Griffith the right to dress in accordance with her gender identity has exacerbated symptoms of her Gender Dysphoria leading her to suffer significant emotional distress and have increased ideation of self-harm.

122.    As a result of El Paso County's, and its officials', decision to not allow Ms. Griffith to dress in accordance with her gender identity, Ms. Griffith engaged in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment – Equal Protection Discrimination
*Against All Defendants*

123.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

124.    Defendants were acting under color of state law at all times relevant to this action.

125.    Under the Equal Protection Clause of the Fourteenth Amendment, discrimination against transgender people is a form of sex discrimination that is presumptively unconstitutional and subject to heightened scrutiny.

126.    Discrimination based on sex includes, but is not limited to, discrimination based on gender, gender nonconformity, transgender status, gender expression, and gender transition.

127.    Discrimination based on transgender status is also presumptively unconstitutional under the Equal Protection Clause and subject to heightened scrutiny.

128.    Transgender people have suffered a long history of extreme discrimination across the country, in prisons and outside of prisons, and continue to suffer such discrimination to this day.

129.    Many, if not most, transgender and cisgender women who are incarcerated, including Plaintiff, have discernable feminine characteristics and secondary female-typical sex characteristics that place them at heightened risk of sexual victimization by male deputies without adequate safeguards and subject to the humiliation of searches by male deputies if placed in men's prisons.

130.    Both transgender and cisgender women face substantially similar risks of sexual victimization by male deputies without adequate safeguards and the humiliation through searches by male deputies.

131.    Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail and requiring that male deputies search transgender women without any supervision discriminated against her on the basis of sex.

132.    Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail also discriminated against her based on sex stereotyping, namely, treating her as though she were a cisgender man based on the conclusion that her gender identity and expression should align with her sex assigned at birth, and housing her in accordance with that erroneous conclusion. This sex stereotyping is based solely on Plaintiff's sex assigned at birth, disregarding her gender identity even though she is a woman and has had medical treatment to bring her body into alignment with her female gender identity.

133.    Defendants, acting under color of state law, intentionally discriminated against Plaintiff by placing her, and continuing to house her, exclusively in men's wards without adequate safeguards, even though she faces similar risks as all other women in such custody.

134.    Defendants' actions as described herein were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility, based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities.

135.    Plaintiff was placed in the male unit and searched by male deputies at the El Paso County Jail in accordance with the customs, policies, and practices of the El Paso County Jail, which are set by Defendant El Paso County and Elder. Defendants El Paso County and Elder discriminated against Plaintiff and other transgender women by adopting and applying these customs policies, and practices that deny transgender women safe and appropriate housing placements based on their sex, transgender identity, and impermissible sex stereotypes without a compelling, important, or legitimate governmental interest.

136.    Defendants' actions and inactions were taken in reckless and callous indifference to the federally protected rights of Plaintiff.

137.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

138.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment**
**Conditions Of Confinement**
*Against All Defendants*

139.     Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

140.     Defendants were acting under color of state law at all times relevant to this action.

141.     Plaintiff was a pre-trial detainee.

142.     As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

143.     Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

144.     Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

145.     Defendants El Paso County's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

146.     Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

147.    Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

148.    Defendants' failure to recognize Plaintiff as the transgender woman that she is subjected her to unconstitutional conditions of confinement.

149.    Defendants' sexual harrassment of Plaintiff subjected her to unconstitutional conditions of confinement.

150.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches

151.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

152.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

153.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

154.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

155.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment**
**Unreasonable Search**
*Against Defendants El Paso County, Elder, Mustapick, and Elliss*

156.   Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

157.   Defendants were acting under color of state law at all times relevant to this action.

158.   Plaintiff has a legitimate expectation of privacy in her body being free from unreasonable governmental search.

159.   Defendants' actions were objectively unreasonable in light of the circumstances confronting them. Namely, there was no basis for Defendant Mustapick to perform a visual body-cavity search of Plaintiff. Defendant Mustapick's sexually charged and offensive comments while strip searching Plaintiff and sexual harassment of her were objectively unreasonable.

160.   Defendants El Paso County and Elder's custom, policy, and practice of housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision caused the violation of Plaintiff's rights and it was obvious and foreseeable to Defendants El Paso County and Elder that their custom, policy, and practice of allowing male deputies to search transgender women without any supervision would cause a violation of Plaintiff's constitutional rights in the manner in which that violation occurred.

161.   Defendant Elliss failed to intervene to prevent the unconstitutional search by Defendant Mustapick.

162.   Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

163.   Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental

29

and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and

continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

164.    As a direct and proximate cause and consequence of the unconstitutional policies,

procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues

to suffer injuries, damages and losses as set forth herein.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment – Substantive Due Process**
**Invasion of Bodily Privacy and Integrity**
*Against Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss*

165.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if

fully set forth herein.

166.    Defendants were acting under color of state law at all times relevant to this action.

167.    By sexually harassing and assaulting Plaintiff without her consent, Defendants violated

Plaintiff's right to be secure in her bodily integrity, a liberty interest protected by the Due Process

Clause of the Fourteenth Amendment.

168.    Defendants El Paso County and Elder recklessly, with conscious disregard to the serious

and obvious risk to the safety of transgender inmates like Plaintiff, violated Plaintiff's right to be secure

in her bodily integrity by allowing male deputies to search transgender women without any supervision.

169.    Defendant Elliss failed to intervene to prevent the unconstitutional invasion of privacy by

Defendant Mustapick.

170.    Defendants El Paso County and Elder knew that their acts or omissions were

substantially certain to cause El Paso County officials to violate constitutional rights of transgender

inmates like Plaintiff to be free from secure in their bodily integrity, and Defendants El Paso County and

Elder consciously or deliberately chose to disregard this risk of harm in failing to provide and/or in

deliberately choosing not to change the policy that housed transgender women inmates with men and required, per official policy, male deputies to search transgender women without any supervision.

171.    Defendants El Paso County and Elder exhibited deliberate indifference to the substantial and obvious risk of harm to Plaintiff, and other transgender inmates, by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

172.    Defendants El Paso County and Elder proximately caused an unconstitutional invasion of Plaintiff's bodily integrity by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

173.    Defendants El Paso County and Elder set in motion a series of events that they knew would cause an inmate in Plaintiff's situation to be deprived of her constitutional right to be secure in her bodily integrity; but for the above acts or omissions of Defendants, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

174.    Defendant Gillespie's decision to house Plaintiff in an all-male unit subjected her to have her privacy constantly invaded.

175.    The policies implemented by Defendants El Paso County and Elder, as well as Defendants' actions and inactions, violated Plaintiff's substantive due process right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

176.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

177.    When viewed in total, this conduct is outrageous and shocks the conscience.

178.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

179.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FIFTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25**
**Unreasonable Search**
*Against Defendants Elder, Gillespie, Mustapick, and Elliss*

180.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

181.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

182.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

183.    Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against being unreasonably searched.

184.    Plaintiff has a legitimate expectation of privacy in her body being free from unreasonable governmental search.

185.    Defendants' actions were objectively unreasonable in light of the circumstances confronting them. Namely, there was no basis for Defendant Mustapick to visually body-cavity search

Plaintiff. Defendant Mustapick's offensive sexually charged comments while strip searching Plaintiff and sexual harassment of her were objectively unreasonable.

186.    Defendant Elliss failed to intervene to prevent the unconstitutional search by Defendant Mustapick.

187.    Defendant Elder's custom, policy, and practice of housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision caused the violation of Plaintiff's rights and it would have been obvious and foreseeable to Defendant Elder that his custom, policy, and practice of allowing male deputies to search transgender women without any supervision would cause a violation of Plaintiff's constitutional rights in the manner in which that violation occurred.

188.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

189.    Defendants acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

190.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**SIXTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 29 – Equality of the Sexes Discrimination**
*Against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

191.    Plaintiffs hereby incorporate all other paragraphs of this Third Amended Complaint as if fully set forth herein.

192.    The Individual Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

193.    The Individual Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

194.    Plaintiffs had a protected Colo. Const. Art. II, Section 25 right against discrimination based on sex. The Colorado Constitution, Article II, Section 29 provides: "Equality of the sexes. Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex."

195.    Under Colo. Const. Art. II, Section 25, discrimination against transgender people is a form of sex discrimination that is presumptively unconstitutional and subject to strict scrutiny.

196.    Discrimination based on sex includes, but is not limited to, discrimination based on gender, gender nonconformity, transgender status, gender expression, and gender transition.

197.    Discrimination based on transgender status is also presumptively unconstitutional under the Equal Protection Clause and subject to strict, or at least heightened, scrutiny.

198.    Transgender people have suffered a long history of extreme discrimination across the country, in prisons and outside of prisons, and continue to suffer such discrimination to this day.

199.    Many, if not most, transgender and cisgender women who are incarcerated, including Plaintiff, have discernable feminine characteristics and secondary female-typical sex characteristics that place them at heightened risk of sexual victimization by male deputies without adequate safeguards and subject to the humiliation of searches by male deputies if placed in men's prisons.

200.    Both transgender and cisgender women face substantially similar risks of sexual victimization by male deputies without adequate safeguards and the humiliation through searches by male deputies.

201.    Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail and requiring that male deputies search transgender women without any supervision discriminated against her on the basis of sex.

202.    Defendants' actions and inactions in placing and keeping Plaintiff in the men's unit at the El Paso County Jail also discriminated against her based on sex stereotyping, namely, treating her as though she were a cisgender man based on the conclusions that her gender identity and expression should align with her sex assigned at birth, and housing her in accordance with that conclusion. This sex stereotyping is based solely on Plaintiff's sex assigned at birth, disregarding her gender identity even though she is a woman and has had medical treatment to bring her body into alignment with her female gender identity.

203.    Defendants, acting under color of state law, intentionally discriminated against Plaintiff by placing her, and continuing to house her, exclusively in men's units without adequate safeguards, even though she faces similar risks as all other women in custody.

204.    Defendant's actions as described herein were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility, based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities.

205.    Plaintiff was placed in the male unit, and searched by male deputies, at the El Paso County Jail in accordance with the customs, policies, and practices of the El Paso County Jail, which are set by Defendant Elder. Defendant Elder discriminated against Plaintiff and other transgender women by

adopting and applying these customs policies, and practices that deny transgender women safe and appropriate housing placements based on their sex, transgender identity, and impermissible sex stereotypes without a compelling, important, or legitimate governmental interest.

206.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

207.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

208.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**SEVENTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Substantive Due Process**
**Invasion of Bodily Privacy and Integrity**
*Against Defendants Elder, Gillespie, Mustapick, and Elliss*

209.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

210.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Third Amended Complaint.

211.    Defendants are "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

212.    Plaintiff had a protected Colo. Const. Art. II, Section 25 interest against deprivation of life, liberty, or property without due process of law.

213.    By sexually harassing and assaulting Plaintiff without her consent, Defendants violated Plaintiff's right to be secure in her bodily integrity, a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

214.    Defendant Elder recklessly, with conscious disregard to the serious and obvious risk to the safety of transgender inmates like Plaintiff, violated Plaintiff's right to be secure in her bodily integrity by allowing male deputies to search transgender women without any supervision.

215.    Defendant Elliss failed to intervene to prevent the unconstitutional invasion of bodily integrity by Defendant Mustapick.

216.    Defendant Elder knew that his acts or omissions were substantially certain to cause El Paso County officials to violate constitutional rights of transgender inmates like Plaintiff to be free from secure in their bodily integrity, and Defendant Elder consciously or deliberately chose to disregard this risk of harm in failing to provide and/or in deliberately choosing not to change the policy that housed transgender women inmates with men and required, per official policy, male deputies to search transgender women without any supervision.

217.    Defendant Elder exhibited deliberate indifference to the substantial and obvious risk of harm to Plaintiff, and other transgender inmates, by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

218.    Defendant Elder proximately caused an unconstitutional invasion of Plaintiff's bodily integrity by housing, per official policy, transgender women, like Plaintiff, in the men's facility and continuing to require, per official policy, male deputies to search transgender women without any supervision.

219.     Defendant Elder set in motion a series of events that he knew would cause an inmate in Plaintiff's situation to be deprived of her constitutional right to be secure in her bodily integrity; but for the above acts or omissions of Defendants, Plaintiff would not have been subjected to a violation of her constitutional rights; and such a deprivation was a natural and foreseeable consequence of these acts and omissions.

220.     Defendant Gillespie's decision to house Plaintiff in an all-male unit subjected her to have her privacy constantly invaded.

221.     The policies implemented by Defendant Elder, as well as Defendants' actions and inactions, violated Plaintiff's substantive due process right to bodily integrity.

222.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

223.     When viewed in total, this conduct is outrageous and shocks the conscience.

224.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical intrusion into bodily privacy and integrity, humiliation, and mental and emotional pain and anguish, physical manifestations of emotional distress, physical injury, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

225.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**EIGHTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 20 – Cruel And Unusual Punishment**
**Conditions Of Confinement**
*Against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

226.     Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

227.    Defendants were acting under color of state law at all times relevant to this action.

228.    Plaintiff was a pre-trial detainee.

229.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement.

230.    Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

231.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

232.    Defendant Elder' policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

233.    Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

234.    Despite this knowledge, and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

235.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by sexually harrassing her and failing to protect her from sexual assault.

236.    Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches.

237.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

238.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

239.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

240.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**NINTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process**
**Conditions Of Confinement**
*Against Defendants Elder, Gillespie, O'Neal, Mustapick, Elliss, Noe, and Ford*

241.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

242.    Defendants were acting under color of state law at all times relevant to this action.

243.    Plaintiff was a pre-trial detainee.

244.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement.

245.    Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose.

246.     Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

247.     Defendants Elder's policy of assigning all detained transgender individuals to housing units based on their anatomy as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

248.     Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

249.     Despite this knowledge, and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

250.     Defendants subjected Plaintiff to unconstitutional conditions of confinement by sexually harrassing her and failing to protect her from sexual assault.

251.     Defendants subjected Plaintiff to unconstitutional conditions of confinement by subjecting her to continuous mis-gendering and cross-gender pat-down searches

252.     All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

253.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

254.     Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain

and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

255.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein

### TENTH CLAIM FOR RELIEF
### U.S.C. § 12101, *et. seq.* – Americans with Disabilities Act
### Disability Discrimination
*Against Defendant El Paso County*

256.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

257.    Title II of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

258.    In particular, in providing any aid, benefit, or service, under Title II of the ADA, a public entity "may not ... [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service," "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity . . . as that provided to others," or "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others[.]" 28 C.F.R. § 35.130(b)(1)(i), (ii), (iii), and (vii).

259.    A public entity "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. §

35.130(b)(7).

260.    A public entity may not (1) "impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary," 28 C.F.R.§ 35.130(b)(8); or (2) "utilize criteria or methods of administration … that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability … or the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(i)(ii).

261.    A public entity is also prohibited from aiding and perpetuating discrimination against persons with disabilities in the programs, services, or activities it provides. 28 C.F.R. § 35.130(b)(1)(v).

262.    The ADA's "integration mandate" requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); 28 C.F.R. § 35.152(b)(2) (requiring that prisoners with disabilities be housed in the most integrated setting appropriate to their needs under the program access obligation); see also Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services, originally published July 26, 1991, 28 C.F.R. pt. 35, App. B ("Integration is fundamental to the purposes of the Americans with Disabilities Act. Provision of segregated accommodations and services relegates persons with disabilities to second-class status.").

263.    Defendant El Paso County violated the rights of Plaintiff secured by Title II of the ADA and its implementing regulations.

264.    El Paso County is currently, and at all times relevant to this action has been a "public entity" as defined by the ADA, 42 U.S.C. § 12131(1)(B), and provides a "program, service, or activity" within the meaning of the ADA, including educational and rehabilitative programs and services.

265.     Plaintiff suffers from Gender Dysphoria, Developmental Trauma Disorder.

266.     Gender Dysphoria is not excluded under the ADA, 42 U.S.C. § 12211(b)(1), because it is a gender identity disorder that results from a physical impairment. In 2015, the U.S. Department of Justice concluded that, "[i]n light of the evolving scientific evidence suggesting that Gender Dysphoria may have a physical basis, along with the remedial nature of the ADA and the relevant statutory and regulatory provisions directing that the terms 'disability' and 'physical impairment' be read broadly, the [ADA's exclusion of gender identity disorders not resulting from a physical impairment] should be construed narrowly such that Gender Dysphoria falls outside its scope."[2]

267.     Alternatively, Gender Dysphoria is not excluded under the ADA because it is not a "gender identity disorder" under 42 U.S.C. § 12211(b)(1)—it is a dysphoria.

268.     Because of the date of the actions complained of, the expanded definition of "disability" under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") applies.

269.     Under the ADAAA and DOJ regulations, the definition of disability is to be construed broadly in favor of expansive coverage. 42 U.S.C. § 12102(4)(A); 28 C.F.R. §§ 35.108(a)(2)(i), 35.108(d)(1)(i). Accordingly, the terms "substantially" and "major" in the definition of disability are to be interpreted consistently with the ADAAA's findings and purposes, which reinstate "the broad scope of protection intended to be afforded by the ADA" and convey Congress's intent "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 42 U.S.C. §§ 12102(4)(B), ADA Amendments Act of 2008, Pub. L. No. 110-325, §§ (2)(a)(5), (b)(5).

270.     In determining disability, the ADAAA requires that impairments must be assessed "without regard to the ameliorative effects of mitigating measures," such as medication, therapy, and

---

[2] Second Statement of Interest of the United States at 5, *Blatt v. Cabela's Retail, Inc.*, No. 5:14-cv-4822-JFL, 2015 WL 9872493 (E.D. Pa. Nov. 16, 2015).

reasonable accommodations. 42 U.S.C. § 12102(4)(E)(i).

271.    In determining disability, the ADAAA requires that impairments that are "episodic or in remission" must be assessed in their active state. 42 U.S.C. § 12102(4)(D).

272.    In determining disability, a "major life activity" includes "the operation of a major bodily function," including neurological, brain, and reproductive functions. 42 U.S.C. § 12102(2)(B).

273.    Under the ADAAA and DOJ regulations, "an individual meets the requirement of 'being regarded as having' an impairment that substantially limits one or more major life activities if the individual establishes that he or she has been subjected to an action prohibited under th[e ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(3)(A); see also 28 C.F.R. § 35.108(f)(1); ADA Amendments Act of 2008, Pub. L. No. 110-325, § (2)(b)(3) (reinstating "broad view of the third prong" of the definition of disability). Accordingly, no showing of substantial limitation of a major life activity is required under the regarded-as prong. 28 C.F.R. § 35.108(a)(2)(iii) ("[T]he 'regarded as' prong of the definition of "disability" . . . does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment.").

274.    Plainitff's Gender Dysphoria substantially limits one or more major life activities, including her ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and also substantially limits the operation of major bodily functions, including neurological function, brain function, endocrine function, and reproductive function.

275.    Plaintiff has a record of Gender Dysphoria, which substantially limits one or more major life activities, including her ability to care for herself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing, and also substantially limits the operation of major bodily functions, including neurological function, brain function, endocrine function, and

reproductive function.

276.    Plaintiff "meets the requirement of 'being regarded as having' an impairment that substantially limits one or more major life activities" because El Paso County excluded her from participation in and denied her the benefits of El Paso County's programs, services, and activities based on Gender Dysphoria, and also subjected her to discrimination based on Gender Dysphoria.

277.    Plaintiff is currently and at all times relevant to this action has been a "qualified individual with a disability" within the meaning of Title II of the ADA.

278.    As an inmate in the custody of El Paso County, Plaintiff was qualified to participate in El Paso County's programs, services, and activities. El Paso County provides these services to other inmates committed to its custody.

279.    El Paso County failed to provide reasonable modification to its policies, procedures, and practices regarding Ms. Griffith, as it was legally required to do. 28 C.F.R. § 35.130(b)(7). El Paso County did not attempt accommodations such as approrpiate housing, dress, and access to female grooming products, and gender-appropriate searches. By virtue of the fact that El Paso County did not put these or other reasonable modifications in place, Plaintiff was discriminated against because of her disabilities.

280.    By confining Plainitff in the men's unit at the El Paso County Jail, a facility where staff members referred to Plaintiff using a male pronoun and her male given name and staff refused to permit Plainitff to wear her own gender's clothes and underwear, El Paso County subjected Plainitff to discrimination based on Gender Dysphoria.

281.    Defendants' actions and inactions were taken in reckless and callous indifference to the protected rights of Plaintiff.

282.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish,

and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

283.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**ELEVENTH CLAIM FOR RELIEF**
**U.S.C. § 701, *et. seq.* – Rehabilitation Act of 1973**
**Disability Discrimination**
*Against Defendant El Paso County*

284.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

285.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

286.    El Paso County accepts federal financial assistance and has done so at all times relevant to this Third Amended Complaint. El Paso County is therefore a "program . . . receiving Federal financial assistance" for purposes of the Rehabilitation Act. 214. The definition of disability is identical under the ADA and Rehabilitation Act, and the expanded definition of "disability" under the ADAAA applies with equal force to the definition of "disability" under Section 504 of the Rehabilitation Act. See ADA Amendments Act of 2008, Pub. L. No. 110-325, §7 (conforming Section 504 of Rehabilitation Act's definition of "disability," 29 U.S.C. § 705, to definition of disability "in section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102))."

287.    Plaintiff suffers from Gender Dysphoria, which substantially limits one or more major life activities and also the operation of major bodily functions. Plaintiff "meets the requirement of 'being

regarded as having' an impairment that substantially limits one or more major life activities" because El Paso County excluded her from participation in and denied her the benefits of El Paso County's programs, services, and activities based on Gender Dysphoria, and also subjected her to discrimination based on these impairments.

288.    Gender Dysphoria is not excluded under the Rehabilitation Act because it is a gender identity disorder that results from a physical impairment or, alternatively, it is not a gender identity disorder—it is a dysphoria.

289.    Plaintiff is currently and at all times relevant to this action has been a "qualified individual with a disability" for purposes of the Rehabilitation Act.

290.    By confining Plaintiff in the men's unit at the El Paso County Jail, a facility where staff members referred to Plaintiff using a male pronoun and her male given name and staff refused to permit Plainitff to wear her own gender's clothes and underwear, El Paso County subjected Plainitff to discrimination based on Gender Dysphoria in violation of Section 504 of the Rehabilitation Act.

291.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's protected rights.

292.    Defendants' acts and omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

293.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**TWELFTH CLAIM FOR RELIEF**
**C.R.S. § 24-34-601, *et. seq.* – Colorado Anti-Discrimination Act**

**Sex and Transgender Discrimination**
*Against All Defendants*

294.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

295.    The Colorado Anti-Discrimination Act, C.R.S. § 24-34-601(2)(a) provides that it is a violation of Colorado law for any place of public accommodation to discriminate against any person based on sex or sexual orientation, including transgender status.

296.    The El Paso County Jail is a place of "public accommodation" as defined under C.R.S. § 24-34-601(1). Defendants operate the facilities that housed Plaintiff and are responsible for providing the full and equal enjoyment of its services, programs and benefits to the public regardless of the status of Plaintiff as a transgender woman.

297.    Defendants refused to provide these services, programs and benefits of these public accommodations to Plaintiff because of her transgender status.

298.    Defendants provide these public accommodations to cisgender men and cisgender women but deny these services to transgender women because of their sex and transgender status.

299.    Defendants discriminated against Plaintiff on the basis of her sex and transgender status, in violation of Colorado law, and in so doing, caused Plaintiff serious physical and psychological harm, and subjected her to an unreasonable risk of harm.

**THIRTEENTH CLAIM FOR RELIEF**
**C.R.S. § 24-34-601, *et. seq.* – Colorado Anti-Discrimination Act**
**Disability Discrimination**
*Against All Defendants*

300.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

301.    The Colorado Anti-Discrimination Act, C.R.S. § 24-34-601(2)(a) provides that it is a

violation of Colorado law for any place of public accommodation to discriminate against any person based

the disability of that person.

302.    The El Paso County Jail is a place of "public accommodation" as defined under C.R.S. §

24-34-601(1). Defendants operate the facilities that housed Plaintiff and are responsible for providing the

full and equal enjoyment of its services, programs and benefits to the public regardless of the status of

Plaintiff as a transgender woman.

303.    Defendants refused to provide these services, programs and benefits of these public

accommodations to Plaintiff because of her transgender status.

304.     Defendants provide these public accommodations to cisgender men and cisgender women

but deny these services to transgender women because of their sex and transgender status.

305.    Defendants discriminated against Plaintiff on the basis of her sex and transgender status,

in violation of Colorado law, and in so doing, caused Plaintiff serious physical and psychological harm,

and subjected her to an unreasonable risk of harm.

### FOURTEENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment
### Failure To Protect
*Against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford*

306.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if

fully set forth herein.

307.    Defendants were acting under color of state law at all times relevant to this action.

308.    Plaintiff was a pre-trial detainee.

309.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of

confinement by the Fourteenth Amendment.

310.    Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

311.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

312.    Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

313.    Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

314.    Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

315.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

316.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

317.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

318.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish,

and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

319.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

**FIFTEENTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 20 – Cruel And Unusual Punishment**
**Failure To Protect**
*Against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford*

320.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

321.    Defendants were acting under color of state law at all times relevant to this action.

322.    Plaintiff was a pre-trial detainee.

323.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

324.    Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

325.    Each Defendant knew or should have known of these clearly established rights at the time of Plainitff's incarceration.

326.    Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

327.    Defendants knew that Plainitff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

328.    Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

329.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

330.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

331.    Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

332.    Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

333.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

### SIXTEENTH CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 25 – Due Process
### Failure To Protect
*Against Defendants El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford*

334.    Plaintiff hereby incorporates all other paragraphs of this Third Amended Complaint as if fully set forth herein.

53

335.    Defendants were acting under color of state law at all times relevant to this action.

336.    Plaintiff was a pre-trial detainee.

337.    As a pre-trial detainee, Plainitff was protected from unconstitutional conditions of confinement by the Fourteenth Amendment.

338.    Under the Fourteenth Amendment, Plaintifff was also protected from conduct that is not rationally related to a legitimate nonpunitive governmental purpose or actions that appear objectively excessive in relation to that purpose under *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

339.    Each Defendant knew or should have known of these clearly established rights at the time of Plaintiff's incarceration.

340.    Defendants El Paso County's, Elder's, and Gillespie's policy of assigning all detained transgender individuals to housing units based on their genitalia as the default or sole criterion, without any individualized assessment of the individual's safety or gender identity, posed an excessive risk to Ms. Griffith's health and safety.

341.    Defendants knew that Plaintiff was a transgender woman and that housing her in an all-male unit subjected her to a risk of sexual harrassment, sexual assault, and extreme emotional distress from being treated as a man given her Gender Dysphoria. They knew that this posed a substantial risk of serious harm to Plaintiff.

342.    Despite this knowledge and Plainitff's repeated requests for a transfer, Defendants refused to house Plaintiff in a unit that conformed with her gender identity in deliberate indifference to a serious risk of harm to her.

343.    Defendants failed to protect Plaintiff from sexual assault at the hands of other inmates.

344.    All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

345.     Defendants' actions and inactions were taken in reckless and callous indifference to Plaintiff's federally protected rights.

346.     Defendants' acts or omissions were the legal and proximate cause of Plaintiff's damages in that she suffered physical pain and suffering, humiliation, and mental and emotional pain and anguish, and continues to suffer mental and emotional pain and anguish to this day and likely for the rest of her life.

347.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, acts, inactions, and/or practices described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant:

(a)     Appropriate declaratory and other injunctive and/or equitable relief;

(b)     Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)     All economic losses on all claims allowed by law;

(d)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)     Attorney fees and the costs associated with this action on all claims allowed by law;

(f)     Pre- and post-judgment interest at the lawful rate; and

(g)     Any further relief that this court deems just and proper, and any other relief as

allowed by law and equity.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 2nd day of June 2022.

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*

_____

Andy McNulty
Mari Newman
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

ATTORNEYS FOR PLAINTIFF