**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al*.

     Defendants.

---

**OBJECTION TO REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**
**PURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6) [Doc. #165]**

---

1. **<u>Introduction</u>**

     Plaintiff Darlene Griffith is a transgender woman who has been diagnosed with Gender Dysphoria. In the community, she lives in accordance with her female gender identity. Despite this well-documented history, Defendants Bill Elder, Cy Gillespie, Elizabeth O'Neal, Tiffany Noe, and Brande Ford purposefully housed Plaintiff in an all-male unit in the El Paso County Jail. Even in the face of Plaintiff's repeated requests to be moved to a unit that corresponds with her gender identity, Defendants continued to deny her this reasonable accommodation. Defendants' decision to house Plaintiff in a unit that does not conform with her gender identity also subjected Plaintiff to repeated discrimination and harassment. Plaintiff brought this case to protect "the rights of transgender people in public spaces and not forc[e] them to exist on the margins." *G.G. v. Gloucester Cty. Sch. Bd.*, 853 F.3d 729, 730 (4th Cir. 2017) (Davis, J., concurring). It is a case that is, at its core, "about governmental validation of the existence and experiences of transgender people, as well as the simple recognition of their humanity." *Id.*

2. **Relevant Factual Allegations**

As alleged in Plaintiff's Third Amended Complaint, El Paso County and its officials violated Plaintiff's Constitutional and statutory rights in a variety of different ways. First, Defendants Ford, O'Neal, Noe, Gillespie, and Elder intentionally disregarded Plaintiff's repeated requests to be housed in a unit that corresponded with her female gender identity. [Doc. #124], ¶¶ 47-70. Defendants made this conscious decision despite knowing that Plaintiff suffered from Gender Dysphoria that was exacerbated by being housed in an all-male unit and that doing so would expose her to risk of sexual assault and harassment. *Id.*

Second, Defendant Mustapick sexually harassed Plaintiff during an unconstitutional cross-gender visual body-cavity search while Defendant Elliss stood by and did nothing to intervene. *Id.*, ¶¶ 71-83. After Defendant Elliss left Plaintiff alone with Defendant Mustapick (a male deputy), Defendant Mustapick ordered Plaintiff to take off her socks, pants, and panties, place her hands on the wall, bend over, and "spread [her] sexy cheeks." *Id.*, ¶ 77. Defendant Mustapick then told Plaintiff that he was "going to go balls deep in that ass" while grabbing his own penis in view of Plaintiff. *Id.*, ¶78. Defendant Mustapick's threatening and demeaning search of Plaintiff served no legitimate penological purpose. *Id.*, ¶ 80.

Third, Defendants Elder, Gillespie, Ford, O'Neal, and Noe failed to protect Plaintiff by housing her in an all-male unit, which predictably led to her being assaulted by a male inmate. That inmate approached Plaintiff while she was laying in her bunk and groped her right breast while telling Plaintiff, "you know you want this dick." *Id.*, ¶¶ 84-88.

Fourth, because of Defendants' Elder, Gillespie, Ford, O'Neal, and Noe's decision to house Plaintiff in an all-male facility, El Paso County officials subjected Plaintiff to continuous cross-gender pat-down searches. *Id.*, ¶¶ 89-96. Male deputies repeatedly touched Plaintiff's breasts and groin when patting her down. *Id.*, ¶ 90.

Fifth, because of Defendants' Elder, Gillespie, Ford, O'Neal, and Noe's decision to house Plaintiff in an all-male facility, El Paso County officials constantly mis-gendered Plaintiff throughout her incarceration. *Id.*, ¶¶ 97-109. In one instance, an El Paso County deputy called Plaintiff a "blind faggot" in front of other inmates. *Id.*, ¶ 100. Mis-gendering is a form of sexual harassment.

Sixth, because of Defendants' Elder, Gillespie, Ford, O'Neal, and Noe's decision to house Plaintiff in an all-male facility, she was denied the ability to dress in accordance with her gender identity. *Id.*, ¶¶ 110-122. Plaintiff repeatedly requested gender affirming clothing, but was denied each time. *Id.*, ¶¶ 115-117.

Importantly, all of this conduct that violated Plaintiff's Constitutional and statutory rights was undertaken either pursuant to official El Paso County Jail policies (enacted and implemented by Defendant Elder and Gillespie), *id.*, ¶¶ 42, 57, 74, 81, 94, 106, 117, 118, and/or the widespread customs and practices at the El Paso County Jail. Doc. *Id.*, ¶¶ 67, 87, 94, 106, 118. These policies, customs, and practices directly caused the violation of Plaintiff's Constitutional rights. *Id.*, ¶¶ 42, 57, 67, 74, 81, 87, 94, 106, 117, 118. All of these actions by Defendants also caused Plaintiff to engage in self-harm by wrapping a rubber band around her genitalia extremely tightly with the purpose of self-castration. *Id.*, ¶¶ 69, 83, 96, 109, 122.

## 3. PROCEDURAL HISTORY

Defendants filed a motion to dismiss Plaintiff's Third Amended Complaint in its entirety. [Doc. #132]. Plaintiff responded and outlined why dismissal is improper. [Doc. #147]. On February 27, 2023, Magistrate Judge Neureiter issued a report and recommendation. [Doc. #165]. In that order, Magistrate Judge Neureiter recommended dismissing all of Plaintiff's claims. *Id.* Plaintiff timely objects to that order.

## 4. STANDARD OF REVIEW

### 4.1 The general standard of review disfavors granting motions to dismiss.

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." A party properly objects if its objection is both timely and specific. *U.S. v. One Parcel of Real Prop. Known as 2121 East 30th St*., 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id*. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

"There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6)" *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1055 (D. Colo. 2012). Evaluating a Rule 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). Generally, a complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### 4.2  Qualified immunity does not shield defendants from liability where their conduct is egregious, or where caselaw puts them on notice their conduct is unconstitutional.

To show that a right was clearly established, a plaintiff may point to "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citations omitted). But, even absent such a showing, qualified immunity does not shield a defendant when "a reasonable officer would understand that what he is doing violates that right." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Nor does qualified immunity require the plaintiff to show "the very act in question previously was held unlawful." *Gutierrez*, 841 F.3d at 899 (10th Cir.

2016). "[N]ot every constitutional violation has factual antecedents," and courts "can occasionally rely on the general proposition that it would be 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted…even though existing precedent does not address similar circumstances.'" *Colbruno v. Kessler*, 928 F.3d 1156, 1165 (10th Cir. 2019) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)). The Tenth Circuit has held, in line with Supreme Court precedent, that "general statements of the law are not inherently incapable of giving fair and clear warning to officers as long as the unlawfulness of an action is apparent[.]" *Ashaheed v. Currington*, 7 F.4th 1236, 1246 (U.S. 10th Cir. 2021).

5. **ARGUMENT**

   5.1 **Plaintiff adequately alleges that El Paso County is a proper defendant.**

The Magistrate Judge erroneously determined that El Paso County was not a proper defendant. "As the United States Supreme Court repeatedly has stated, a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity." *Stump v. Gates*, 777 F.Supp. 808, 816 n.3 (D. Colo. 1991) (Carrigan, J.) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiff has done exactly that by naming El Paso County, Colorado as a Defendant. The County is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[T]he real party in interest is the entity."). Numerous courts presiding over Section 1983 actions in this District have correctly concluded that the county that employs the defendant law enforcement officers is the proper defendant because counties are "persons" under § 1983.[1] Thus, El Paso County, Colorado is a proper Defendant in this matter.

---

[1] *See Lounsbury v. Darr*, 2012 U.S. Dist. LEXIS 33904, at *3-4 (D. Colo. Mar. 14, 2012) (Babcock, J.); *Pixley v. Adams County*, 2011 U.S. Dist. LEXIS 111639, at *3 (D. Colo. Sept.

5.2 **Plaintiff adequately alleges that Defendants Elder and Gillespie personally participated in the violation of her Constitutional rights.**

The Magistrate Judge erroneously determined that Plaintiff had not adequately alleged that Defendants Elder and Gillespie personally participated in the violation of her constitutional rights. "Personal involvement [in a constitutional violation] does not require direct participation because § 1983 states any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citation omitted). In *Dodds*, the court held that a sheriff was personally responsible under Section 1983 where the enforcement of jail policy caused the violation of the plaintiff's constitutional rights when the sheriff was "responsible for the policies that operated [at the jail] and [those policies] enforced by his subordinates at the jail." *Id.* at 1203. Similarly, here, Plaintiff alleges that the policies enacted by Defendant Elder and Gillespie, [Doc. #124], ¶¶ 14, 57, caused the violation of her constitutional rights. Further, Plaintiff alleges that Defendants Elder and Gillespie make facility assignments to people in custody solely on the basis of the individual's genitalia, in contravention of widely accepted standards, *Id.*, ¶ 42, which caused the violation of Plaintiff's constitutional rights in numerous ways. *Id.*, ¶¶ 47-122.

Further, where the "underlying unconstitutional misconduct was so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of it," a factfinder may infer that the governing officials *did* know about the misconduct. *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995). The violation of Plaintiff's rights

---

28, 2011) (Babcock, J.); *Moore v. Commerce City Police Dep't*, 2011 U.S. Dist. LEXIS 151897, at *2 (D. Colo. Jan. 20, 2011); *Cross v. Denver Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 147731, at *6-7 (D. Colo. Oct. 15, 2014); *Hammond v. Beicker*, 2014 U.S. Dist. LEXIS 130184, at *7 (D. Colo. Sept. 17, 2014) (Babcock, J.); *O'Neill v. El Paso County Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 106412, at *2 (D. Colo. Aug. 4, 2014) (Shaffer, J.); *Dodds v. Trinity Group*, 2014 U.S. Dist. LEXIS 32675, at *2 (D. Colo. Mar. 13, 2014); *Stump*, 777 F.Supp. at 816.

was no secret, and transgender inmates at the El Paso County Jail are constantly housed in facilities that do not correspond with their gender identity, subjecting them to discrimination and exposing them to an extreme risk of assault and harassment. [Doc. #124], ¶ 67. This case is very similar to *Lopez v. LeMaster*, in which the Tenth Circuit held that a sheriff was liable for deliberate indifference because he did not take action to prevent inmates from being attacked by other inmates at the jail, despite being aware of prior attacks and deficiencies in staffing and surveillance that prevented the jail from preventing attacks. 172 F.3d 756, 760-64 (10th Cir. 1999). As alleged, Defendants Elder and Gillespie are personally liable for the violation of Plaintiff's Constitutional rights.[2]

### 5.3 **Plaintiff adequately alleges that Defendants violated her rights under the Fourteenth Amendment's Equal Protection clause.**

The Magistrate Judge erroneously concluded that Plaintiff had not adequately alleged that Defendants violated her rights under the Fourteenth Amendment's Equal Protection clause. The Equal Protection clause of the Fourteenth Amendment directs that "all persons similarly situated should be treated alike," thereby protecting against intentional discrimination by way of classifications that reflect "a bare . . . desire to harm a politically unpopular group." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). As alleged, Plaintiff is a transgender woman and Defendants knew as much. [Doc. #124], ¶¶ 25-27, 110-112. Defendants' decision to disregard Plaintiff's identity as a transgender woman, and instead treat her as a male inmate, violated her Fourteenth Amendment rights.

### 5.3.1 **As alleged, Defendants engaged in sex- and gender-based discrimination against Plaintiff.**

---

[2] *Dodds* and *Lopez* clearly establish that an official who implements an official policy that causes the violation of the Constitution is not entitled to qualified immunity.

The Magistrate Judge erred in failing to consider that Defendants engaged in sex-and gender-based discrimination, which triggers intermediate scrutiny. Refusing to allow transgender individuals to use public facilities that correspond with their gender identities is sex- and gender-based discrimination under the Fourteenth Amendment. *Adams v. Sch. Bd.*, 968 F.3d 1286, 1302 (11th Cir. 2020); *Grimm v. Gloucester Cty. Sch. Bd.*, 976 F.3d 399, 402 (4th Cir. 2020); *Whitaker*, 858 F.3d at 1048-49. When an inmate is "placed in a facility based on their genitalia… a sex-based classification is used, and intermediate scrutiny must be applied." *Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *32-37 (S.D. Ill. Nov. 7, 2018); *see also Tay v. Dennison*, 457 F. Supp. 3d 657 (S.D. Ill. 2020); *Doe v. Mass. Dep't of Corr.*, No. 17-12255-RGS, 2018 U.S. Dist. LEXIS 99925, at *25 (D. Mass. June 14, 2018) (holding that a transgender prisoner's "compulsory assignment to a men's prison caused Doe to be treated differently from other female prisoners"); *Iglesias v. Fed. Bureau of Prisons*, No. 19-CV-415-NJR, 2021 U.S. Dist. LEXIS 245517, at *72 (S.D. Ill. Dec. 27, 2021).[3] Defendants violated Plaintiff's rights under the Equal Protection Clause in the same way by housing her in an all-male unit and denying her access to women's facilities, solely based on her transgender status and the fact that she has male genitalia. [Doc. #124], ¶¶ 42, 47-70. The Supreme Court recently held that transgender classifications are sex-based. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020). Every Court of Appeals that has considered whether transgender classifications are sex-based, and, consequently, are deserving of intermediate scrutiny has concluded they are, and intermediate scrutiny applies. *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020); *EEOC v. R.G.*, 884 F.3d 560, 580 (6th Cir. 2018); *Whitaker v. Kenosha*

---

[3] *Nation v. White*, No. 5:20-cv-P104-BJB, 2021 U.S. Dist. LEXIS 36388, at *12 (W.D. Ky. Feb. 26, 2021); *Lesperance v. Manning*, No. 2:16-cv-0764 JAM AC P, 2019 U.S. Dist. LEXIS 150710, at *14 (E.D. Cal. July 30, 2019).

*Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017); *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011).[4] At least one court in this District has found that discrimination against transgender individuals constitutes sex-based discrimination. *EEOC v. A&E Tire, Inc.*, 325 F. Supp. 3d 1129, 1134 (D. Colo. 2018).

Moreover, Defendants discriminated against Plaintiff by denying her items to which cisgender women have access, including clothing and grooming products, solely based on her transgender status. [Doc. #124], ¶¶ 110-122. The United States Supreme Court has long held that sex stereotyping based on preconceived notions about appropriate dress for men and women is intolerable sex discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Smith v. City of Salem*, 378 F.3d 566, 574 (6th Cir. 2004) ("After *Price Waterhouse*, an employer who discriminates against women because, for instance, they do not wear dresses or makeup, is engaging in sex discrimination because the discrimination would not occur but for the victim's sex."); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 221 (2d Cir. 2005).

Simply put, "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock*, 140 S. Ct. at 1741. Plaintiff adequately alleges that Defendants' actions constituted sex- and gender-based discrimination.

### 5.3.2 Plaintiff, as a transgender woman, is a member of a suspect, or quasi-suspect, class.

The Magistrate Judge erred in concluding that transgender individuals are not members of a suspect or quasi-suspect class. A growing consensus of courts have held that

---

[4] *See also Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004); *Doe v. Boyertown Area Sch. Dist.*, 893 F.3d 179, 199 (3d Cir. 2018). "

transgender individuals constitute a suspect or quasi-suspect class.[5] And, when evaluating transgender individuals under the four-factor test outlined for determining whether a class qualifies as suspect or quasi-suspect, it becomes clear that discrimination against transgender individuals merits heightened scrutiny. Heightened scrutiny is appropriate when the class being discriminated against: (1) has been "historically subjected to discrimination," (2) has a defining characteristic bearing no "relation to ability to perform or contribute to society," (3) has "obvious, immutable, or distinguishing characteristics," and (4) is a "minority or is politically powerless." *Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012), *aff'd on other grounds*, 570 U.S. 744 (2013); *see also Bowen v. Gilliard*, 483 U.S. 587, 602 (1987); *Cleburne*, 473 U.S. at 440-41. Transgender individuals, like Plaintiff, meet all of these criteria.

First, "[i]t is generally accepted that transgender individuals face an alarming rate of discrimination, harassment, and violence." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *32-35;[6] *see also Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730, 749 (E.D. Va. 2018). For example, the transgender community "suffers from high rates of employment

---

[5] *See, e.g., Grimm*, 972 F.3d at 610-13; *Crowder v. Diaz*, No. 2:17-CV-1657-TLN-DMC, 2019 U.S. Dist. LEXIS 140306, at *30 (E.D. Cal. Aug. 16, 2019); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 873 (S.D. Ohio 2016); *M.A.B. v. Bd. of Educ.*, 286 F. Supp. 3d 704, 718-19 (D. Md. 2018); *Norsworthy*, 87 F. Supp. 3d at 1119; *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1145 (D. Idaho 2018); *Karnoski v. Trump*, 2018 U.S. Dist. LEXIS 63563, 2018 WL 1784464 (W.D. Wash. Apr. 13, 2018); *see also Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d 931, 951-53 (W.D. Wis. 2018); *Doe v. Wash. State Dep't of Corr.*, No. 4:21-CV-5059-TOR, 2021 U.S. Dist. LEXIS 93455, at *21 (E.D. Wash. May 17, 2021); *McQueen v. Brown*, No. 2:15-cv-2544 JAM AC P, 2018 U.S. Dist. LEXIS 66377, 2018 WL 1875631, at *3 (E.D. Cal. Apr. 19, 2018*), report and recommendation adopted*, No. 2:15-cv-2544 JAM AC P, 2018 U.S. Dist. LEXIS 91170, 2018 WL 2441713 (E.D. Cal. May 31, 2018); *Karnoski v. Trump*, No. C17-1297-MJP, 2018 U.S. Dist. LEXIS 63563, 2018 WL 1784464, at *1 (W.D. Wash. Apr. 13, 2018).

[6] Citing Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, Nat'l Center for Transgender Equality (2011), available at https://www.transequality.org/sites/default/files/docs/resources/NTDS_Report.pdf.

discrimination, economic instability, and homelessness." *Grimm*, 972 F.3d at 611. Additionally, transgender individuals frequently experience harassment in places such as schools, medical settings, and retail stores, while also experiencing physical assault in places such as schools and places of public accommodation, at high levels and being disproportionate victims of violent crime. *Id.* "In the prison context, [PREA] exposed heightened risk of sexual assault against LGBTQI prisoners and the atypical severity of punishments LGBTQI people face solely for being themselves" and "transgender inmates are thirteen times more likely to be assaulted than other prisoners." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *33. And, the El Paso County Jail's treatment of Plaintiff is an exemplar of how "current measures and policies continue to target transgender persons for differential treatment." *Grimm*, 972 F.3d at 611.

Second, in *Windsor*, the Second Circuit concluded "the aversion homosexuals experience has nothing to do with aptitude or performance." 699 F.3d at 182-83. "The same can be said of discrimination leveled at transgender people." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *35; *Grimm*, 972 F.3d at 611.

Third, the Fourteenth Amendment is meant to protect citizens from discrimination based on circumstances beyond their control. *See Plyler*, 457 U.S. at 216 n.14. "[B]eing transgender is not a choice." *Grimm*, 972 F.3d at 612. At least three courts, based on substantial evidence, have acknowledged that gender identity is biologically determined. *Id.*; *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *35-36; *Doe v. McConn*, 489 F. Supp. 76, 78 (S.D. Tex. 1980) ("These findings indicate that the transsexual has not made a choice to be as he is, but rather that the choice has been made for him through many causes preceding and beyond his control"). And, "given the discrimination transgender individuals face, it is illogical to assert that a person would actively choose this 'lifestyle.'" *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *35-36 (quoting *Hernandez-Montiel v. Immigration & Naturalization Serv.*,

225 F.3d 1084, 1095 (9th Cir. 2000) (stating a transgender asylum applicant's female sexual identity "must be fundamental, or [s]he would not have suffered this persecution and would have changed years ago")).

Fourth, "transgender people constitute a minority lacking political power" given that "approximately 0.6% of the adult population in the United States" identifies as transgender. *Grimm*, 972 F.3d at 612. "[T]ransgender persons are underrepresented and have not gained positions of significant power" and "no acknowledged transgender person has ever held a significant position in Congress or the federal judiciary." *Crowder*, 2019 U.S. Dist. LEXIS 140306, at *36-37 (citing *Adkins*, 143 F. Supp. 3d at 140 ("[T]here is no indication that there have ever been any transgender members of the United States Congress or the federal judiciary."); *M.A.B. v. Bd. of Educ.*, 286 F. Supp. 3d 704, 721 (D. Md. 2018) ("Only two openly transgender candidates have ever been elected; both won seats in a state legislature.")). Importantly, "the examples of discrimination" against transgender individuals (which this case represents) "affirm what we intuitively know: Transgender people constitute a minority that has not yet been able to meaningfully vindicate their rights through the political process." *Grimm*, 972 F.3d at 612.

For these reasons, a growing consensus of courts that have held "transgender persons constitute a quasi-suspect class" and discrimination against them is subject to heightened scrutiny. *Id*. at 613. Plaintiff is a member of a quasi-suspect class.

### 5.3.3 *Brown v. Zavaras* does not control this case.

The Magistrate Judge erred in concluding that *Brown v. Zavaras* controls this case. 63 F.3d 967 (10th Cir. 1995). First, *Brown* never addressed whether discrimination against transgender individuals constitutes sex- or gender-based discrimination. This Court can, and should, hold as much, which triggers intermediate scrutiny. Second, *Brown* did not engage in the requisite four-factor analysis for determining whether transgender individuals are a

suspect or quasi-suspect class. *Id.* at 971. This failure to apply binding precedent, which this Court must apply in determining whether transgender individuals are part of a suspect or quasi-suspect class, makes *Brown* inapplicable. *See Windsor*, 699 F.3d at 181; *see also Bowen*, 483 U.S. at 602; *Cleburne*, 473 U.S. at 440-41. Second, as the Magistrate Judge properly recognized, the Ninth Circuit authority on which *Brown* rests has been overruled and, therefore, *Brown* is no longer applicable. *See Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000). Third, *Brown* is inapposite nearly every single case that has been decided since, which "have analyzed the relevant factors for determining suspect class status and held that transgender people are at least a quasi-suspect class." *Grimm*, 972 F.3d at 610 (citing cases). This overwhelming authority deems *Brown* to be bad law. It should be discarded on the scrap heap of past decisions, like *Plessy*, *Korematsu*, and *Bowers*, that allowed for state-sanctioned discrimination.

### 5.3.4 Defendants' deliberate decision to disregard Plaintiff's female gender identity, and instead treat her as a male inmate, was not substantially related to an important interest and violated the Equal Protection clause.

Under intermediate scrutiny, "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives" in order to be upheld. *Craig v. Boren*, 429 U.S. 190, 197 (1976). "When a sex-based classification is used, the burden rests with the state to demonstrate that its proffered justification is 'exceedingly persuasive.'" *Whitaker*, 858 F.3d at 1050 (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). "It is not sufficient to provide a hypothesized or *post hoc* justification created in response to litigation." *Id.* The Tenth Circuit has recognized that "[a]t least since *Virginia*, [the arc of the Supreme Court's equal protection jurisprudence] bends toward requiring more—not less—judicial scrutiny when asserted physical differences are raised to justify gender-based discrimination[.]" *Free the Nipple-Fort Collins v. City of Fort*

*Collins*, 916 F.3d 792, 805 (10th Cir. 2019). Ultimately, the question this Court must answer is whether Defendants' "policy of placing transgender inmates in the prison of their assigned sex at birth [is] substantially related to the achievement of prison security?" *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *32-37. The answer to that question is a resounding no.

As alleged, there was no reason for Defendants to assign Plaintiff – who for decades has lived in society as a woman, and who has previously been housed with female offenders in the Colorado Department of Corrections ("CDOC") – to an all-male unit other than the fact that she has male genitalia and her sex assigned at birth was male. [Doc. #124], ¶¶ 42, 47-70. Courts have held that transgender inmates do not generally pose a greater security threat than cisgender inmates. *Doe*, 2018 U.S. Dist. LEXIS 99925, 2018 WL 2994403, at *10 (citing *Virginia*, 518 U.S. at 531 and holding that "generalized concerns for prison security are insufficient to meet the 'demanding' burden placed on the State to justify sex-based classifications"). Defendants' placement of Plaintiff in an all-male facility is particularly glaring in light of her previous placement with female inmates in the CDOC, of which, as alleged, Defendants were aware. [Doc. #124], ¶ 65. As alleged, given the lack of any justification for housing Plaintiff in an all-male unit other than her genitalia and sex assigned at birth, that classification does not pass intermediate scrutiny. And, based on substantial precedent, it is clear that, as alleged, Plaintiff's placement in an all-male unit was not substantially related to an important government interest. *See Tay*, 457 F. Supp. 3d at 682; *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *12; *Doe*, 2018 U.S. Dist. LEXIS 99925, 2018 WL 2994403, at *9; *Norsworthy*, 87 F. Supp. 3d at 1120.[7]

---

[7] The Individual Defendants are not entitled to qualified immunity based on the caselaw and well-established legal principles outlined above. Particularly, the Supreme Court's decision in *Bostock*, the weight of authority from other circuits holding that discrimination against transgender individuals violates the Fourteenth Amendment, and the Tenth Circuit's decision

### 5.3.5 **Even if this Court finds that Plaintiff is not a member of a suspect or quasi-suspect class, Defendants' actions fail rational basis review.**

The Magistrate Judge incorrectly held that Defendants' actions satisfy rational basis review.[8] "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare … desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534–535 (1973). For example, in *Romer v. Evans*, the Supreme Court of the United States overturned a Colorado constitutional amendment that denied gays and lesbians access to the protection of antidiscrimination laws. 517 U. S. 620, 632, 635 (1996). The amendment, the Supreme Court held, was "divorced from any factual context from which we could discern a relationship to legitimate state interests," and "its sheer breadth [was] so discontinuous with the reasons offered for it" that the initiative seemed "inexplicable by anything but animus." *Id*. Similarly, here, Defendants' actions, and policy, of making facility assignments to people in custody solely on the basis of the individual's genitalia, despite knowing that this places transgender people at risk for victimization and that these discriminatory placement decisions and denial of gender-affirming clothing were taken without an important or legitimate governmental interest or rational reason, and they had no penological basis to deny Plaintiff a safe and appropriate placement in a female facility,

---

in *Free the Nipple-Fort Collins* would have put Defendants on notice that they were violating Plaintiff's Fourteenth Amendment rights.

[8] There are two versions of the rational basis test: traditional rational basis review and a more rigorous rational basis standard "sometimes referred to as 'rational basis with a bite.'" *Dairy v. Bonham*, No. C-13-1518 EMC, 2013 U.S. Dist. LEXIS 103033, 2013 WL 3829268, at *5 n.4 (N.D. Cal. July 23, 2013) (citations omitted); *see also* Erwin Chemerinsky, *Constitutional Law: Principles and Policies*, 680 (3d ed. 2006). The rational basis "with a bite" standard, which applies in this case, is less deferential to the legislative enactment, and a challenged law will be struck down if the court determines that it is in fact arbitrary, irrational, and/or unreasonable. *See, e.g., Cleburne*, 473 U.S. at 450 (striking down a city ordinance that reflected nothing more than "irrational prejudice"); *Romer*, 517 U.S. at 634 (striking down a state initiative grounded solely in "animosity toward the class of persons affected"); *Moreno*, 413 U.S. at 534 (holding that discrimination against "hippies" was not a valid state objective). "

based on her sex, gender identity, characteristics, risk factors, and her history of sexual victimization in male facilities. [Doc. #124], ¶¶ 42, 110–22, 134.

Ultimately, even under the rational basis test, discriminatory animus toward a group is not a valid state objective. *Cleburne*, 473 U.S. at 446–447; *Moreno*, 413 U.S. at 534–535. The practical effect of Defendants' actions was "to impose a disadvantage, a separate status, and so a stigma upon" transgender individuals. *United States v. Windsor*, 570 U.S. 744, 770 (2013). This is not a rational basis for government officials' actions and policies. This Court need not hold, therefore, that transgender individuals are members of a "suspect class" in order to allow Plaintiff's claims to continue to discovery in this case.

### 5.3.6 Separately, the sexual harassment to which Plaintiff was subjected demonstrates that Defendants violated the Equal Protection clause.

The Magistrate Judge did not consider the second basis for Plaintiff's Equal Protection claim: that she was subjected to significant verbal and physical harassment by staff and other inmates. "[I]t is well-settled that sexual harassment also violates the Equal Protection clause[.]" *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 304, 305 (2d Cir. 2020); *Doe v. Beaumont Indep. Sch. Dist.*, No. 1:21-CV-00132, 2022 U.S. Dist. LEXIS 125296, at *31 n.15 (E.D. Tex. July 14, 2022) (citing cases). "To succeed on her sexual harassment claim under the Equal Protection Clause, [Plaintiff] must establish (1) the harassment was intentional and based on sex and (2) the harassment was 'sufficiently severe or pervasive.'" *Hampton*, 2018 U.S. Dist. LEXIS 190682, at *37-39 (quoting *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). "[A] plaintiff wishing to sustain an equal protection claim of sexual harassment must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens." *Id*. at 1040.

As alleged, Plaintiff was sexually harassed by Defendant Mustapick who, on intake to the El Paso County Jail, ordered Plaintiff to undress, bend over, and "spread [her] sexy

cheeks," and then grabbed his own penis while threatening Plaintiff that he was "going to go balls deep in that ass". [Doc. #124], ¶¶ 71-83. After this egregious harassment, Plaintiff continued to be consistently harassed and mis-gendered by deputies because she is a transgender woman (including an incident where a deputy called Plaintiff a "blind faggot"). *Id.*, ¶¶ 97-109. Plaintiff was also assaulted by another inmate because she was discriminatorily placed into a unit that does not correspond with her gender identity. *Id.*, ¶ 84-88. Given all of this, Plaintiff has alleged a compelling sexual harassment claim under the Equal Protection clause. *See* McNamarah, Chan Tov, *Misgendering as Misconduct*, 68 UCLA L. Rev. Disc. 40, 43 (2020).[9]

### 5.4 **Plaintiff adequately alleges that Defendants violated her substantive due process rights under the Fourteenth Amendment.**

The Magistrate Judge erred in finding that Plaintiff has not adequately alleged a violation of her substantive due process rights. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

#### 5.4.1 **Defendants subjected Plaintiff to unconstitutional conditions of confinement through near-constant sexual harassment and unwanted cross-gender touching.**

The Magistrate Judge erred in concluding that Plaintiff has not plead a claim against Defendants El Paso County, Elder, Gillespie, Noe, and Ford for subjecting her to near-constant sexual harassment and unwanted cross-gender touching. "[A] female detainee has the right not to be sexually harassed, verbally or physically, by other detainees or guards." *Shaw v. District of Columbia*, 944 F. Supp. 2d 43, 58-59 (D.D.C. 2013); *Farmer v. Brennan*,

---

[9] Citing *G. G. ex rel. Grimm v Gloucester Cty. Sch. Bd.*, 822 F3d 709, 716 (4th Cir 2016), *vacated*, 137 S Ct 1239 (2017); *Hampton*, 2018 U.S. Dist. LEXIS 190682, 2018 WL 5830730, at *2; *Prescott v Rady Children's Hosp.-San Diego*, 265 F Supp 3d 1090, 1096 (S.D. Cal. 2017); *Rumble v Fairview Health Servs.*, No. 14-CV-2037, 2015 U.S. Dist. LEXIS 31591, at *71 (D. Minn. Mar. 16, 2015); *Doe v City of New York*, 42 Misc. 3d 502 (Sup Ct NY County); *see also Gregory v. Jeffreys*, No. 21-1097, 2021 U.S. Dist. LEXIS 206187, at *10 (C.D. Ill. Oct. 26, 2021); *Tay*, 457 F. Supp. 3d at 683 (S.D. Ill. 2020); *Hecox v. Little*, 479 F. Supp. 3d 930, 957 (D. Idaho 2020); *Joyner v. Snyder*, No. 06-3062, 2007 U.S. Dist. LEXIS 7214, 2007 WL 401269, at *2 (C.D. Ill. Feb. 1, 2007).

511 U.S. at 834 (1994) (unsolicited sexual touching, harassment, and coercion are "simply not part of the penalty that criminal offenders pay for their offenses against society" (internal quotations omitted)).[10] Defendants Elder's, Gillespie's, Noe's, Ford's, and O'Neal's decisions to house Plaintiff in an all-male unit foreseeably resulted in her continuous harassment and repeated unwanted cross-gender touching. [Doc. #124], ¶¶ 97-109. This violated her due process rights.

###### 5.4.2 Defendant Mustapick subjected Plaintiff to unconstitutional conditions of confinement through the cross-gender visual body-cavity search he performed on her.

The Magistrate Judge erred in concluding that Plaintiff has not alleged Defendant Mustapick violated her clearly established due process rights through his cross-gender visual body-cavity search of her. A visual body-cavity search violates the Constitution where the search was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Fillmore v. Page,* 358 F.3d 496, 505 (7th Cir. 2004); *Calhoun,* 319 F.3d at 939. "[E]xposing a person's naked body involuntarily is a severe invasion of personal privacy." *Colbruno v. Kessler*, 928 F.3d 1155, 1161-63 (10th Cir. 2019) (holding that pretrial detainee who was walked naked through public areas of a hospital had a valid claim under the Fourteenth Amendment that his jailers violated clearly established law). Forcing Plaintiff to be naked in front of a male guard, who then made her spread her "sexy" butt cheeks to "go balls deep" while grabbing his own penis, [Doc. #124], ¶¶ 71-83, certainly rises to "calculated harassment unrelated to prison needs" with the intent to humiliate Plaintiff. *Richards v. Wexford*, 2021 U.S. App. LEXIS 31545, 2021 WL 4892160, at *3 (7th Cir. Oct. 20, 2021). This is highlighted by the multiple courts that have held that actions similar to, and less

---

[10] *See also Women Prisoners of the District of Columbia Dep't of Corrections v. D.C.*, 877 F. Supp. 634, 664-67 (D.D.C. 1994); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Joseph v. U.S. Fed. Bureau of Prisons*, 232 F.3d 901 (10th Cir. 2000); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998).

egregious than, the actions of Defendant Mustapick constituted unconstitutional conditions of confinement; these cases and legal principles also demonstrate why Defendant Mustapick is not entitled to qualified immunity.[11] It was also clearly established by the Tenth Circuit's decision in *Colbruno*, 928 F.3d at 1161.

### 5.4.3 Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal subjected Plaintiff to unconstitutional conditions of confinement by forcing her to endure repeated cross-gender pat-down searches.

The Magistrate Judge erred in finding that Plaintiff has not pled with adequate specificity that Defendants Elder's, Gillespie's, Noe's, and Ford's decisions to house Plaintiff in an all-male unit foreseeably resulted in Plaintiff being subjected to repeated cross-gender pat-down searches, which violated her due process rights. The cross-gender pat-down searches inflicted on Plaintiff violated her Fourteenth Amendment rights by imposing on her an unconstitutional condition of confinement. [Doc. #124], ¶¶ 89-96. Multiple courts have held that repeated cross-gender pat-down searches of women, absent emergency circumstances that would necessitate performing a cross-gender pat-down search, impose unconstitutional conditions of confinement. *See Jordan*, 986 F.2d at 1526; *Colman v. Vasquez*, 142 F.Supp.2d 226 (D. Conn. 2001); *Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 U.S. Dist. LEXIS 8907, at *72-73 (D. Conn. Jan. 25, 2012). For example, in *Colman*, a court addressed the constitutionality of cross-gender at searches in the context of a female prisoner incarcerated in a special unit for victims of sexual assault who was forced to submit to pat searches by male guards. 142 F.Supp.2d at 226. The *Colman* court noted that

---

[11] *See Vazquez v. Cty. of Kern*, 949 F.3d 1153, 1163-64 (9th Cir. 2020); *Kent v. Johnson*, 821 F.2d 1220, 1227- 28 (6th Cir. 1987); *Semelbauer v. Muskegon Cnty.*, No. 1:14-cv-1245, 2015 U.S. Dist. LEXIS 189417, 2015 WL 9906265, at *3-4 (W.D. Mich. Sept. 11, 2015); *Payette v. Hoenisch,* 284 Fed. Appx. 348, 2008 U.S. App. LEXIS 14441, No. 07-3249, 2008 WL 2648917, at *5 (7th Cir. 2008); *Solan v. Ranck,* No. CV-06-0049, 2007 U.S. Dist. LEXIS 84903, 2007 WL 4111424, at *8 (M.D. Pa. 2007); *see also Vasquez v. Raemisch,* 480 F. Supp. 2d 1120, 1131-32 (W.D. Wis. 2007).

"'women experience unwanted touching by men differently from men subject to comparable touching by women.'" 142 F.Supp.2d at 232 (quoting *Jordan*, 986 F.2d at 1521). And, in *Jordan*, the Court found that women who expressed significant emotional distress at being continually being subjected to cross-gender pat-down searches had a claim for violation of their Constitutional rights. *Jordan*, 986 F.2d at 1531 (*en banc*) (holding that a cross-gender clothed body search policy at a women's prison constituted cruel and unusual punishment because many of the inmates had histories of sexual or physical abuse by men and because cross-gender bodily searches, even if conducted properly, would likely inflict psychological trauma).

Here, Plaintiff was part of a particularly vulnerable population, transgender woman inmates, and suffered from Gender Dysphoria. [Doc. #124], ¶¶ 48-49. She is also blind. *Id.*, ¶¶ 50. The searches were not performed under exigent circumstances or due to any emergency; she was routinely patted-down by male deputies. *Id.*, ¶¶ 89-96. Defendants purposefully housed her in an all-male unit, which they knew would expose her to continuous cross-gender pat-down searches. *Id.*, ¶¶ 54, 57, 135. Plaintiff has adequately alleged a claim against Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal for causing her to be subject to continuous cross-gender pat-down searches. *Id.*, ¶¶ 89-96.

### 5.4.4 Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal violated Plaintiff's rights under the United States and Colorado Constitutions by failing to protect her from assault.

The Magistrate Judge erred in finding that Plaintiff has not pled with adequate specificity that Defendants El Paso County's, Elder's, Gillespie's, Noe's, Ford's, and O'Neal's decisions to house Plaintiff in an all-male unit failed to protect her from assault. Prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. More to the point, they "have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. "A prison official

violates the [Constitution] 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists[,] the official does not respond reasonably to the risk,'" and the official's actions or inaction causes the injury. *Id*. The prison official must be both aware of the risk and draw the inference. *Farmer*, 511 U.S. at 837. The Supreme Court in *Farmer* held that circumstantial evidence and the obviousness of the substantial risk of harm, not just actual notification, may be used to establish subjective awareness. 511 U.S. at 842-44. Further, allegations suggesting the substantial risk was "long-standing, pervasive, [or] well-documented" and the defendants "had been exposed to information concerning the risk and thus must have known about it ... could be sufficient ... to find that [the defendants] had actual knowledge of the risk." *Id*. at 842-43 (internal quotation marks and citation omitted).

When analyzing subjective awareness, courts have considered the obviousness of the risk to inmate safety, the defendant's knowledge about the vulnerability of certain types of inmates to risk of harm, prison policies pertaining to such inmates, and their housing placements. *See Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81-82 (6th Cir. 1995).[12] Placing Plaintiff, a blind, transgender woman, into a general population male ward was nearly *per se* deliberately indifferent to a risk that she would be assaulted by male inmates. *See Diamond v. Owens*, 131 F. Supp. 3d 1346, 1376-79 (M.D. Ga. 2015) (holding that a non-violent, transgender female inmate, faced a substantial risk of sexual assault at closed-security facilities because the risk was obvious

---

[12] *See also Green v. Hooks*, 2013 U.S. Dist. LEXIS 124806, 2013 WL 4647493, at *2-*3 (S.D. Ga.); *Shaw*, 944 F. Supp. 2d at 59-60 ("Plaintiff ... points ... to [reports, regulations, and professional guidelines] ... to provide factual grounding to support the inference that the risk to transgender detainees was obvious, well-documented, and known to [d]efendants." (internal quotation marks and citation omitted)); *Newsome v. Higham*, 2010 U.S. Dist. LEXIS 29521, 2010 WL 1258013, at *3-*4 (M.D. Ga.); *Farmer v. Carlson*, 685 F. Supp. 1335, 1342 (M.D. Penn. 1988) ("Clearly, placing plaintiff, a twenty-one year old transsexual, into the general population at ... a [high-]security institution, could pose a significant threat to internal security in general and to plaintiff in particular.").

and that guards are obviously aware from PREA that transgender inmates face a substantial vulnerability to sexual assault).

*Farmer* itself provides strong and binding authority that Defendants violated Plaintiff's rights by not protecting her from male inmates. In *Farmer*, a transgender inmate, allegedly known to be vulnerable to sexual assault, complained prison officials were deliberately indifferent to a substantial risk of sexual assault by placing her in general population at a "higher security facility" known for its violent environment and history of assaults. *Farmer*, 511 U.S. at 825. The Supreme Court emphasized the constitutional right of prisoners to be reasonably protected from the violence of other inmates. *Id.* at 833 ("[G]ratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e].'" (citation omitted)). The Supreme Court ultimately held that "a prison official may be held liable... if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Here, Defendants were aware that Plaintiff is a transgender female, knew she is blind, and knew, because of these two things, that placing her into an all-male unit would make her particularly vulnerable to sexual assault. [Doc. #124], ¶¶ 47-50. They also knew that incarceration standards dictated that transgender women are vulnerable to sexual assault when placed in all-male units. *Id.*, ¶¶ 42-43, 45-46. Still, Defendants purposefully housed her in an all-male unit, which they knew would expose her to continuous cross-gender pat-down searches. *Id.*, ¶¶ 54, 57, 135. This violated Plaintiff's rights. *See Diamond*, 131 F. Supp. 3d at 1379-80.[13]

5.5 **Plaintiff adequately alleges that Defendants EL Paso County, Elder, Gillespie, Mustapick, and Elliss subjected her to multiple unlawful searches under the Fourth Amendment.**

---

[13] Defendants El Paso County, Elder, Gillespie, Noe, Ford, and O'Neal are not entitled to qualified immunity based on the caselaw and well-established legal principles outlined above.

The Magistrate Judge erred in finding that Plaintiff has not adequately plead that Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss are liable for the cross-gender visual body-cavity search conducted by Defendants Mustapick and Elliss. Whether a particular search is constitutional is judged by "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Courts make this determination by balancing four non-exclusive factors. *Id.*; *see also Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). Those factors are: "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Id.*

Defendant Mustapick's visual body-cavity of Plaintiff, which included an inspection of her anal and genital areas, violated her constitutional rights. [Doc. #124], ¶¶ 71-83; *see Maricopa Cnty. Sheriff's Dep't*, 629 F.3d at 1142 (holding that a cross-gender strip search was unreasonable as a matter of law where there was no emergency). A strip-search, let alone a visual body-cavity search, is "one of the clearest forms of degradation in Western Society" and the indignity imposed by strip searches is multiplied when one's body is "viewed by a member of the opposite gender." *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994); *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir.1993). Courts have held that blanket policies subjecting all newly-arrested detainees in a local correctional facility to visual body cavity searches, even when performed by guard who is a member of the same gender as the detainee, are unconstitutional. *See Shain v. Ellison*, 273 F.3d 56, 64-65 (2d Cir. 2001); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). In order for a visual body cavity search to be found reasonable under the circumstances, there must be some "'particularized suspicion,' arising either from the nature of the charge or specific circumstances relating to the arrestee and/or the arrest," that the arrestee is concealing

weapons or other contraband. *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986); *Murcia v. County of Orange*, 226 F. Supp. 2d 489, 494 (S.D.N.Y. 2002).

First, "regardless of who performs the search, a visual body cavity search, such as the one conducted here, is invasive." *Harris*, 818 F.3d at 58. A search "that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012) (Breyer, J., dissenting).[14]

Second, "while all forced observations or inspections of the naked body implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex." *Canedy*, 16 F.3d at 185; *see also Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011). For this reason, "[c]ourts throughout the country have universally frowned upon cross-gender strip searches in the absence of an emergency or exigent circumstances." *Byrd*, 629 F.3d at 1143.[15] "Indeed, best-practice standards in prison management typically discourage cross-gender strip searches." *Harris*, 818 F.3d at 59. For example, the 2009 National Prison Rape Elimination Commission Report "determined that[,] '[t]o prevent abuse, . . . the [Commission's recommended] standard on this subject strictly prohibits non-medical staff from conducting cross-gender strip and visual body cavity searches—except in the case of an emergency—because of their extraordinarily intrusive nature.'" *Byrd*, 629 F.3d at 1142 (quoting the Commission Report at 63). Likewise, the American Correctional Association's recommended standard for cross-gender strip

---

[14] *See also Canedy*, 16 F.3d at 185 ("[O]ne of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy." (quoting 3 George B. Trubow, ed., *Privacy Law and Practice*, ¶ 25.02[1] (1991))); *Cookish v. Powell*, 945 F.2d 441, 446 (1st Cir. 1991) ("[A] 'severe if not gross interference with a person's privacy [] occurs when guards conduct a visual inspection of body cavities.").

[15] *See also Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981); *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993).

searches "provide[s] that, except in emergency situations, visual inspections of inmate body cavities are conducted by officers of the same sex, in private." *Id.* (quoting Standards for Adult Correctional Institutions § 4-4194 (2003)).

Third, a visual body-cavity search conducted in an unprofessional manner is unreasonable. *See Byrd*, 629 F.3d at 1143. As the Supreme Court stated in *Bell*: "[O]n occasion a security guard may conduct the search in an abusive fashion. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner." *Bell*, 441 U.S. at 560 (citations omitted). Here, the visual body-cavity search was conducted in a disgusting and degrading manner by a male guard who made clear his prurient gratification, despite the ready availability of female officers to do the search. *See, e.g., Lee*, 641 F.2d at 1120.

Fourth, there was no justification for subjecting Plaintiff to a cross-gender visual body-cavity search. *See, e.g., Byrd*, 629 F.3d at 1137 n.2, 1142, 1143; *Hayes*, 70 F.3d at 1148.

Fifth, the fact that the visual body-cavity search was conducted outside of the presence of other individuals makes it less reasonable because there was greater chance for abuse. *See Byrd*, 629 F.3d at 1143. Indeed, Defendant Mustapick predictably seized this opportunity to sexually degrade Plaintiff for his own prurient gratification.

The Tenth Circuit, in an analogous case, held that a cross-gender strip-search, less egregious than the one performed by Defendant Mustapick, violated an inmate's right to be free from unreasonable searches and seizures. In *Hayes v. Marriott*, the male plaintiff alleged that a video-taped strip search conducted in the presence of female corrections officers violated his constitutional rights under the Fourth Amendment. 70 F.3d 1144, 1145 (10th Cir. 1995). Despite an affidavit from a prison official attesting that no females actively participated in the strip search and expressing staffing considerations, the Tenth Circuit reversed the grant of summary judgment in favor of the prison officials. *Id.* at 1147-48. In doing so, the Tenth Circuit explicitly recognized that an inmate's privacy rights may be violated by a single

cross-gender strip-search. *Id*. at 1147. And, in another case, the Tenth Circuit held that an officer who forced a female inmate to expose her breasts to a female deputy in order to pump her breast milk, without any penological justification, violated her right to be free from unreasonable searches. *Shroff v. Spellman*, 604 F.3d 1179, 1191 (10th Cir. 2010). Importantly, the Tenth Circuit defined the right of the plaintiff that was violated as the "personal right not to be required to expose her breasts before another person." *Id.*

Ultimately, the caselaw is clear that "cross-gender strip searches" let alone cross-gender visual body-cavity searches, "in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." *Byrd*, 629 F.3d at 1144-47; *Cookish*, 945 F.2d at 442; *Moore v. Carwell*, 168 F.3d 234, 235 (5th Cir. 1999); *Shaw*, 944 F. Supp. 2d at 56-57.

5.6 **Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss violated Plaintiff's rights under the Fourteenth Amendment by unconstitutionally invading her right to privacy and bodily integrity.**

The Magistrate Judge erred in finding that Plaintiff has not adequately pled that Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss are liable for the violation of Plaintiff's Fourteenth Amendment rights through the cross-gender visual body-cavity search conducted by Defendants Mustapick and Elliss. "Visual body cavity searches are invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a person's bodily integrity." *Sloley v. Vanbramer*, 945 F.3d 30, 38 (2d Cir. 2019); *Vazquez*, 949 F.3d at 1165 (quoting *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007); *Shroff*, 604 F.3d at 1191.

"[A]ll forced observations or inspections of the naked body implicate a privacy concern." *Canedy*, 16 F.3d at 185. To state the obvious, visual body-cavity searches are even more intrusive as they "require an arrestee not only to strip naked in front of a stranger, but also to expose the most private areas of her body to others. This is often, as here, done

while the person arrested is required to assume degrading and humiliating positions." *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997). The freedom from such "degrading body inspections is . . . basic to the concept of privacy." *Canedy*, 16 F.3d at 185 (internal quotation marks omitted); *Byrd*, 845 F.3d at 922-24.

Moreover, "any reasonable adult in our society would understand that the involuntary exposure of an adult's nude body is a significant imposition on the victim. And law-enforcement officers in this circuit have been taught this lesson repeatedly." *Colbruno*, 928 F.3d at 1163-65.[16] Several other circuits have recognized that officials can violate the Eighth Amendment (which imposes a higher burden than the Fourteenth Amendment) by forcing inmates to expose their naked bodies for the purpose of humiliation. *See Calhoun*, 319 F.3d at 939; *Kent*, 821 F.2d at 1227-28; *Lee*, 641 F.2d at 1119. When considering Defendant Mustapick's sexually degrading statements and gesture, in combination with his position of power over Plaintiff and the humiliating position that he had Plaintiff in when he made the statements, it is clear that he violated her right to privacy and bodily integrity. *See Vazquez*, 949 F.3d at 1162; *Fontana v. Haskin*, 262 F.3d 871, 881-82 n.6. (9th Cir. 2001). According to this authority, Defendants El Paso County, Elder, Gillespie, Mustapick, and Elliss all violated Plaintiff's clearly established rights.

5.7 **Defendant Elliss failed to intervene to prevent the violation of Plaintiff's Fourth and Fourteenth Amendment rights.**

---

[16] In *Cumbey v. Meachum*, the Tenth Circuit reversed the dismissal of a prisoner's complaint that his constitutional rights had been violated because female prison guards "are assigned to posts where they observe[d] him dressing and undressing and using the toilet and the shower," holding that "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." 684 F.2d 712, 713-14 (10th Cir. 1982). More recently, the Tenth Circuit stated that "exposing a person's naked body involuntarily is a severe invasion of personal privacy" in a case where it held that parading a naked inmate through a hospital violated his clearly established right to privacy and bodily integrity under the Fourteenth Amendment. *Colbruno*, 928 F.3d at 1163-65.

The Magistrate Judge erred by failing to consider an additional basis for liability against Defendant Elliss: that she failed to intervene to prevent the violation of Plaintiff's Fourth and Fourteenth Amendment rights. As alleged, Defendant Elliss failed to intervene to prevent the violation of Plaintiff's Constitutional rights. [Doc. #124], ¶¶ 71-83. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). For failure to intervene liability to attach, a plaintiff must simply establish that "officers have knowledge of a constitutional violation," *Jones v. Norton*, 809 F.3d 564 (10th Cir. 2015), and "a realistic opportunity to intervene to prevent the harm from occurring." *Vondrak*, 535 F.3d at 1210. The Tenth Circuit has repeatedly found an officer to possess knowledge where there was indeed an underlying constitutional violation, and where the officer was "on the scene[,]" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1283 (10th Cir. 2017), or "present for the [violation]." *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). Here, as alleged, Defendant Elliss was present for the violation and explicitly allowed it to occur. [Doc. #124], ¶¶ 74-77. Plaintiff begged Defendant Elliss to let a woman search her. *Id.* Defendant Elliss refused and actively chose to leave and allow Defendant Mustapick to search Plaintiff unsupervised. *Id.* Under a failure to intervene theory, Plaintiff has adequately alleged that Defendant Elliss violated her Constitutional rights.

Finally, it is clearly established that officers who are present for constitutional violations by other officers, and do nothing to intervene, violate the Constitution. *Vondrak*, 535 F.3d at 1210 (an officer is liable if the officer had observed or had reason to know "that any constitutional violation has been committed by a law enforcement official."); *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). Defendant Elliss' violation was "obvious" and "particularly clear[.]" *Casey,* 509 F.3d at 1283. And, the Tenth Circuit has time and again held

that when officials are on the scene and fail to intervene, regardless of the constitutional violation occurring, they are liable under clearly established law. *See Reid v. Wren*, 57 F.3d 1081, at *2 (10th Cir. 1995); *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 422 n.25 (10th Cir. 2014); *see also Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994).

### 5.8 Plaintiff adequately alleges municipal liability against El Paso County.

As outlined above, contrary to the conclusions in the Magistrate Judge's Report and Recommendation, Plaintiff has adequately alleged multiple violations of her constitutional rights. For the reasons outlined in briefing at the motion to dismiss stage, [Doc. #147], she has also adequately alleged municipal liability.

### 5.9 Plaintiff adequately alleges that Defendants intentionally discriminated against her in violation of the Americans with Disabilities Act and Rehabilitation Act and is therefore entitled to recover compensatory damages.

The Magistrate Judge erred in holding that Plaintiff had not adequately alleged intentional discrimination. Intentional discrimination does not require discriminatory animus but rather may be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). There is a two-pronged test for this standard: knowledge that a harm to a federally protected right is substantially likely; and a failure to act upon that likelihood. *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018). Generally, courts have held that there exists a sufficient evidentiary basis for a factfinder to determine that intentional discrimination occurred under § 504 and/or Title II when the defendant deliberately made *no good faith*

*effort* to reasonably accommodate a plaintiff's known disability, thereby subjecting the plaintiff to disability discrimination.[17]

Here, Plaintiff has adequately alleged that El Paso County – directly and through its agents – had knowledge that a harm to her federally protected rights was substantially likely, and failed to act upon that likelihood. *See Havens*, 897 F.3d at 1264. When Plaintiff first entered El Paso County Jail, she was an openly transgender woman with a feminine appearance and during her intake screening, she notified El Paso County Jail and its healthcare personnel that she was a transgender woman with a diagnosis of Gender Dysphoria. [Doc. #124], ¶¶ 47-48. Plaintiff repeatedly and explicitly requested placement in a women's facility as an accommodation for her known disability. *Id.*, ¶¶ 48-70. One of El Paso County's officials even did an ADA review of Plaintiff's housing classification. *See Havens*, 897 F.3d at 1266 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Plaintiff's classification and placement in an all-male facility was by no means an inadvertent mistake either. It was done intentionally and for one reason: her disability. This subjects Defendants to compensatory damages.

6. **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court reject the holdings of the Magistrate Judge's Report and Recommendation as outlined above.[18]

---

[17] *See Updike v. Multnomah Cty.*, 870 F.3d 939, 954 (9th Cir. 2017); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1140 (9th Cir. 2001); *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 156 F.3d 321, 330-31 (2d Cir. 1998); *Center v. City of West Carrollton*, 227 F. Supp. 2d 863, 868, 872 (S.D. Ohio 2002); *see also Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 397 (D. Md. 2011); *Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010); *see also Barber v. Colorado*, 562 F.3d 1222, 1229 (10th Cir. 2009); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 829 (D. Md. 1998).

[18] The claims not addressed in the Magistrate Judge's report and recommendation also should not be dismissed for the reasons outlined in Plaintiffs' Response To Defendants' Motion To Dismiss Third Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(1) and (6), which is incorporated herein by reference. *See* [Doc. #147].

Dated this 8th day of March 2023.

KILLMER, LANE & NEWMAN, LLP

s/ Andy McNulty

_____
Andy McNulty
Mari Newman
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2023, I electronically filed the foregoing **OBJECTION TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO Fed. R. Civ. P. 12(b)(1) and (6) [Doc. #165]** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Nathan J. Whitney
Terry Sample
Chris Strider
County Attorney's Office
El Paso County
nathanwhitney@elpasoco.com
terrysample@elpasoco.com
chrisstrider@elpasoco.com

*Counsel for Defendants*

s/ Andy McNulty