IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH

Plaintiff,

v.

EL PASO COUNTY, COLORADO, e*t al.*

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO Fed. Civ. P. 12(b)(1) and (6) [Docs. 163 and 169]**

---

Defendants, through the Office of the County Attorney of El Paso County, Colorado, submit their Response to Plaintiff's Objection to Report and Recommendation on Defendants' Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Doc. 169) as follows:

## I. INTRODUCTION[1]

Plaintiff is a transgender female who has been diagnosed with Gender Dysphoria. She asserts 16 claims for relief under federal and state laws alleging that: (i) during intake into CJC, she was misgendered by the female deputy who visually searched her upper torso, and verbally harassed and threatened by the male deputy who visually searched her lower torso; (ii) she asked to be housed in a female ward but was housed in a male

---

[1] The defined terms used herein have the same meaning as the defined terms used in the Motion to Dismiss (Doc. 132) and Defendants' Reply (Doc. 155).

ward instead, where she was sexually assaulted by a male inmate, misgendered by deputies, and subject to pat down searches by male deputies; and (iii) she was denied access to female undergarments and grooming products.

Defendants filed their Motion to Dismiss (Doc. 132) in June 2022 and sought dismissal of all of Plaintiff's claims because, among other reasons, there was no violation of Plaintiff's constitutional rights, the individual Defendants are entitled to qualified immunity, the Complaint fails to allege municipal liability, and EPSO was not deliberately indifferent under the ADA or Rehabilitation Act. The next month, Plaintiff filed her Response to the Motion to Dismiss (Doc. 147) and Defendants filed their Reply in Support of the Motion to Dismiss (Doc. 155) (the "Reply).

The Honorable United States Magistrate Judge Neureiter issued a thorough Report and Recommendation (Doc. 165) (the "Recommendation" or "R. & R.") on February 27, 2023, in which he recommended dismissal of all of Plaintiff's federal claims and declination of supplemental jurisdiction over Plaintiff's state law claims. Plaintiff filed her Objection to the Recommendation (Doc. 169) (the "Objection" or "Obj.") on March 8, 2023.

As explained below, the Objection merely restates Plaintiff's arguments from her Response without identifying any specific legal or factual errors in the Recommendation. The Court should thus adopt the Recommendation's well-reasoned findings, which are in line with existing Tenth Circuit and Supreme Court precedent.

## II. STANDARD OF REVIEW

This Court set forth the standard of review applicable to the review of a magistrate's recommendation under Fed. R. Civ. P. 72(b)(3) in *Viscarelli v. Simone*, No. 20-cv-01859-CMA-MEH, 2021 WL 21906, at * 2 (D. Colo. Jan. 4, 2021).  This Court set forth the standards of review applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) in *Simon v. Burtlow*, No. 20-cv-01207-CMA-KMT, 2012 WL 4059782, at * 2 (D. Colo. Sept. 7, 2021).

## III. ARGUMENT

Magistrate Judge Neureiter meticulously considered Plaintiff's claims and recommended that each one be dismissed.  The grounds for dismissal ranged from a lack of plausible allegations in the Complaint, to the absence of clearly established case law, to each individual Defendant's entitlement to qualified immunity.  Plaintiff objects to these findings, but she mostly parrots arguments she made before instead of identifying specific errors in the Recommendation.  The Defendants respectfully ask the Court to deny Plaintiff's attempt to relitigate this case, and instead adopt the Recommendation in full.

**A. Plaintiff Has Forfeited the Right to De Novo Review of the Recommendation**

The Objection seeks a second bite at the apple by recycling the Response's arguments instead of identifying specific legal or factual flaws in the Recommendation. *See, e.g.*, *Wiggins v. Colvin*, No. 1:12-cv-196, 2014 WL 184414, at * 1 (W.D.N.C. Jan. 15, 2014) ("General objections include those that merely restate or reformulate arguments a party has made previously to a magistrate judge.").  That is to say, the Objection is not specific enough to "enable the district judge to focus the attention on those issues—

3

factual and legal—that are at the heart of the parties' dispute." *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

In the absence of specificity, Plaintiff has forfeited the right to de novo review. *See id.* at 1061 (generally, "a party's objection…must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."); *Hatlee v. Hardey*, No. 13-cv-02469-RM-MJW, 2015 WL 5719644, at * 3 (D. Colo. Sept. 29, 2015) ("In the absence of a timely and specific objection, 'the district court may review a magistrate's recommendation under any standard it deems appropriate.'") (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1997)). The Court should therefore apply a clear error standard to its review. *See* Fed. R. Civ. P. 72(b) Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Regardless of which standard the Court applies, however, the Court should not set aside any portion of the Recommendation for the reasons described below.

**B. The Magistrate Correctly Recommended Dismissal of El Paso County as a Party**

Plaintiff contends that she properly named El Paso County as a defendant, yet she does not address the authority that the Magistrate Judge relied upon to find otherwise. *See* Obj. p. 5. The Magistrate Judge correctly recommended dismissal of Plaintiff's claims against El Paso County for two reasons. R. & R. p. 14. First, C.R.S. § 30-11-105 provides that suits against a county must be brought in the name of "the board of county commissioners of the county of ……..." This is the "exclusive method by which jurisdiction over a county can be obtained." *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302

4

(Colo. 1967).  A plain reading of the Complaint shows that "Plaintiff's naming of…El Paso County as a defendant is defective, and the County can be dismissed due to this jurisdictional defect alone."  R. & R. p. 14.

Second, El Paso County and EPSO are separate entities.  EPSO, rather than El Paso County, is responsible for CJC's operations.  See C.R.S. § 30-10-511; *Terry v. Sullivan,* 58 P.3d 1098, 1102 (Colo. App. 2002).  The Complaint cursorily alleges misconduct on the part of EPSO employees that cannot be attributed to El Paso County. Accordingly, the Magistrate Judge correctly recommended dismissal of the claims against El Paso County under Fed. R. Civ. P. 12(b)(6).  R. & R. p. 14.

### C. The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's Individual § 1983 Claims Because the Defendants are Entitled to Qualified Immunity

Qualified immunity is an affirmative defense to a § 1983 action that protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). Plaintiff must satisfy a substantial two-part burden to show that (1) Defendants' actions violated Plaintiff's constitutional or statutory rights, and (2) that the rights in question were clearly established at the time of Defendants' alleged violations. *Albright v. Rodriguez*, 51 F.3d 1531,1534 (10th Cir. 1995).

As discussed below, Plaintiff has not shown that Defendants' alleged actions violated constitutional or statutory rights.  And even if the Court finds that the first prong of the qualified immunity inquiry is satisfied, Plaintiff still fails to establish that the rights

in question were clearly established. A right is clearly established if the law was "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). This generally requires a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. (internal quotations omitted).

Plaintiff's objection states that clearly establishing a constitutional right can be accomplished occasionally in the absence of binding precedent addressing similar circumstances. Obj. p.5, ¶ 1. However, Plaintiff fails to identify how the Magistrate Judge erred in applying the two-part standard to determine whether Defendants are entitled to qualified immunity. The Court should therefore find that the individual Defendants are entitled to qualified immunity.

### D. The Magistrate Judge Correctly Applied Binding Precedent to Recommend Dismissal of Plaintiff's Equal Protection Claim

Plaintiff argues that the Magistrate Judge erred by "failing to consider that Defendants engaged in sex- and gender-based discrimination, which triggers intermediate scrutiny." Obj. p. 8, ¶ 1. However, Plaintiff neither cites authority overruling binding Tenth Circuit precedent nor states grounds by which the Magistrate Judge may abandon *stare decisis*. *See Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995) (holding that transgender is not a suspect or quasi-suspect class under the 14th Amendment). Indeed, the Magistrate Judge did consider whether intermediate scrutiny applies in this

case and correctly determined that unless and until the Tenth Circuit rules otherwise, its decision in *Brown* remains controlling. R. & R. pp. 20-21.

The Magistrate Judge also correctly noted that Plaintiff failed to identify any controlling authority overruling *Brown*. R. & R. p. 21. Absent such authority, the Defendants could not be on notice that their conduct violated a constitutional or statutory right. The authority cited by Plaintiff consists largely of non-binding decisions from appellate courts outside the Tenth Circuit and district courts outside of Colorado. Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the "plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Trotter v. Regents*, 219 F.3d 1179, 1184 (10th Cir. 2000) (internal quotations omitted). Plaintiff fails to do so here. The Court should thus adopt the Recommendation.

### E. The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's Fourth Amendment Claim

Plaintiff objects to the Magistrate Judge's finding that the searches conducted in this case did not violate the Constitution. Obj. p. 23, ¶1. The balancing test set forth in *Bell v. Wolfish* is the controlling standard when determining the reasonableness of a government search. 441 U.S. 520, 559 (1979) ("Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."). The Magistrate Judge correctly considered these factors in evaluating the searches at issue in this case and distinguished any

7

alleged inappropriate behavior from that found in cases where a prison strip search was deemed unreasonable. R. & R. pp. 31-33.

The balance of the *Bell* factors weighs against a finding of unconstitutional behavior by Defendants. First, the *visual* body cavity search of Plaintiff was reasonable because it was performed as Plaintiff entered the jail and before she was admitted into the general population. *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (reasonableness of strip search turns in part on whether inmate will be housed in general population); *Hyberg v. Enslow*, 801 F. App'x 647, 650-51 (10th Cir. 2020) (unpublished) (finding no plausible Fourth Amendment claim where inmate was strip searched in a designated area "with limited access for other inmates and staff" before returning to general population, and where staff made insensitive comments). Second, the only individuals present during the visual strip search were Defendants Elliss and Mustapick, who each performed part of the search in a private area of CJC. Plaintiff's strip search was not video recorded like the search in *Hayes v. Marriott*, 70 F.3d 1144, 1145 (10th Cir. 1995), or conducted without a penological purpose as in *Shroff v. Spellman*, 604 F.3d 1179 (10th Cir. 2010). Third, Plaintiff argues that she was subject to a cross-gender search because Mustapick, a biological male, participated in the search. Yet Plaintiff presents no authority suggesting that Mustapick's visual search of Plaintiff constitutes a cross-gender search given that they share the same biological sex. Fourth, the verbal statements attributed to Mustapick are insufficient to establish a constitutional violation. Indeed, in *Adkins v. Rodriguez*, the Tenth Circuit found that similar verbal harassment did

not amount to a constitutional violation. 59 F.3d 1034, 1037-38 (10th Cir. 1995); *see also Hayes*, 70 F.3d at 1145.

Finally, the Magistrate Judge correctly found that even if Defendants' conduct violated Plaintiff's right to be free from unreasonable searches, Defendants are entitled to qualified immunity because that right was not so clearly established as to put a reasonable person in the Defendants' position on notice that the conduct was violative. R. & R. p. 34, ¶1. The Court should adopt the Magistrate Judge's well-reasoned analysis.

**F. The Magistrate Judge Correctly Found that Plaintiff Failed to State a Conditions of Confinement Claim, a Substantive Due Process Claim, or a Failure to Protect Claim Under the Fourteenth Amendment**

Plaintiff realleges that Elder, Gillespie, Noe, Ford, and O'Neal's "decisions to house [her] in an all-male unit foreseeably resulted in her continuous harassment and repeated unwanted cross-gender touching." Obj. pp. 17-22. As the Magistrate Judge correctly found, however, Plaintiff's allegations are "too generalized and imprecise to adequately allege personal participation as to the specified individual Defendants." R. & R. pp. 28-29; *see Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (in § 1983 cases, it is crucial that the complaint "make clear exactly *who* is alleged to have done *what* to *whom*" (emphasis in original). Indeed, Plaintiff fails to allege personal participation by Elder or Gillespie, as the Defendants argued in their Motion to Dismiss at pages 9-10. Similarly, O'Neal's only involvement in the incidents alleged was telling Plaintiff that her grievance was denied—an action that does not establish her personal participation in any

9

constitutional violation. *See* R. & R. p. 26, citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

As for Noe and Ford, Plaintiff does not establish the subjective or objective elements of deliberate indifference. *See* R. & R. p. 26. Instead, Plaintiff alleges that placing her into general population in a male ward "was nearly *per se* deliberately indifferent to a risk that she would be assaulted by male inmates." Obj. p. 21. The cases Plaintiff cites, however, do not support the *per se* liability she seeks to impose. For example, in *Greene v. Bowles*, the Sixth Circuit denied a prison warden's summary judgment motion because the transgender plaintiff presented information suggesting the warden knew about her specific vulnerabilities and the violent history of a predatory inmate who ultimately assaulted her. 361 F.3d 290, 294-95 (6th Cir. 2004). Similarly, a United States District Court in Georgia did not dismiss a transgender inmate's failure-to-protect claims where she alleged prison officials had extensive information about her past assaults at other facilities, the officials took no action after learning she was assaulted multiple times at their facility, and the officials were told by a doctor that the plaintiff "stood a high risk of sexual assault at [the prison] given its population." *Diamond v. Owens*, 131 F.Supp.3d 1346, 1376 (M.D. Ga. Sept. 14, 2015). These cases highlight the importance of alleging facts from which an official could infer that "a substantial risk of serious harm exists," and that the official "dr[e]w the inference" from those facts. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, Plaintiff fails to allege that Noe and Ford—or any other Defendant—had specific knowledge of a risk to Plaintiff and ignored it. Since Plaintiff has not plausibly alleged deliberate indifference, the Court should dismiss Plaintiff's claims.

Regarding Mustapick, the Magistrate Judge found that he was entitled to qualified immunity because Plaintiff did not meet her burden of "showing that it is clearly established that cross-gender searches of transgender women, even ones accompanied by odious verbal harassment, violate a clearly established constitutional right, nor is the conduct so egregious and the right so obvious that it could be deemed clearly established even without materially similar cases." R. & R. p. 28. Plaintiff challenges this finding by citing numerous cases purportedly showing otherwise, but these cases are largely inapposite. *See* Obj. pp. 18-19. For example, in *Fillmore v. Page*, the Seventh Circuit considered a strip-search through the lens of a prisoner's *excessive force* claims, the strip-search in question did not involve a cross-gender search of a transgender prisoner, and the court found no constitutional violation. 358 F.3d 496, 504-05 (7th Cir. 2004). Plaintiff also cites the Tenth Circuit's 2019 decision in *Colbruno v. Kessler*, but that case involved deputies walking a naked detainee through the public areas of a hospital. 928 F.3d 1155, 1160 & 1165-66 (10th Cir. 2019). Plaintiff, in contrast, was strip-searched in "a separate room" and was not seen by deputies other than Mustapick and Elliss, let alone members of the public. Compl. ¶ 73. The Seventh Circuit's unpublished decision in *Richards v. Wexford of Indiana LLC* is similarly irrelevant because it involved a doctor's rectal examination of a prisoner in view of two officers and three inmates in filthy conditions. No. 20-2567, 2021 WL 4892160, at *1 (7th Cir. Oct. 20, 2021) (unpublished). Finally, none of the cases crammed into footnote 11 of Plaintiff's Objection deal with cross-gender searches of transgender inmates. The Magistrate Judge correctly found that

Plaintiff did not meet her burden on the clearly established prong of the qualified immunity analysis, and the Court should do the same.

Plaintiff further contends that the Magistrate Judge "fail[ed] to consider an additional basis for liability against Defendant Elliss: that she failed to intervene to prevent the violation of Plaintiff's Fourth and Fourteenth Amendment rights." Obj. p. 28. Plaintiff is incorrect. After finding that Mustapick was entitled to qualified immunity, the Court found that Elliss had qualified immunity "by extension…on any claim that she failed to intervene." R. & R. p. 28. This conclusion is sound because there must be a constitutional violation in the first place before a failure to intervene can be found. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) ("Plaintiffs focus their arguments on the officers' opportunities to intervene, but ignore the requirement that the officers must have knowledge of a constitutional violation."). The Court should therefore grant Elliss qualified immunity.

Plaintiff goes on to argue that the Defendants violated her right to privacy and bodily integrity. Obj. pp. 26-27. But as the Defendants argued on page 18 of their Motion to Dismiss, Plaintiff can only succeed on this claim if she alleges government action that shocks the conscience. Conscience-shocking behavior "requires a high level of outrageousness," such as sexual assault or rape of a prisoner by guards. *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995); *see Hall v. Zavaras*, No. 08-cv-00999-DME, 2008 WL 5044553, at *4 (D. Colo. Nov. 19, 2008). While the conduct Plaintiff levies against Mustapick is troubling if true, it is not "so egregious and the right so obvious that it could be deemed clearly established even without materially similar cases." R. & R. p. 28.

12

Further, Plaintiff does not clearly allege the personal participation of any other individual Defendant in conscience-shocking behavior. The Court should thus dismiss Plaintiff's claims as the Magistrate Judge recommended.

### G. The Magistrate Judge Correctly Recommended Dismissal of the § 1983 Claims Asserted Against Elder and Gillespie Under a Supervisory Liability Theory

The Magistrate Judge correctly recommended dismissal of the § 1983 claims asserted against Elder and Gillespie under a theory of supervisory liability. Supervisory liability requires a plaintiff to show "an affirmative link… between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). "When an official is sued on the basis of his supervisory status and policy-making authority, a plaintiff may establish the affirmative link by demonstrating that the defendant: '(1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy, (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Yoemans ex rel. Ishmael v. Campbell*, 501 F. Supp. 3d 1034, 1053 (D. Colo. 2020) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

Plaintiff claims that Gillespie personally violated her equal protection rights by denying her access to female clothing and grooming products. Compl. ¶¶ 114, 117.) The Magistrate Judge correctly determined that these allegations do not amount to a constitutional violation under binding Tenth Circuit precedent and Gillespie is therefore entitled to qualified immunity. R. & R., pp. 17-30. Further, the Magistrate Judge correctly

13

determined that Plaintiff's assertion of § 1983 liability based on Gillespie's status as a commander are premised upon conclusory allegations which cannot "nudge[] [the plaintiff's] claims across the line from conceivable to plausible…"  R. & R. ¶ 10, quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Magistrate Judge went on to address the supervisory liability claims against Elder in conjunction with Plaintiff's *Monell* claims against EPSO.  R. &. R. pp. 34-35.  As with Gillespie, the Magistrate Judge correctly recommended dismissal because Plaintiff failed to plausibly assert an underlying constitutional violation.  *Id.*

Plaintiff's Objection offers nothing new and asserts error based on the same conclusory allegations the Magistrate Judge found unpersuasive.  Accordingly, the Court should dismiss the § 1983 claims asserted against Elder and Gillespie under a supervisory liability theory.

### H. The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's *Monell* Claims

The Magistrate Judge correctly recommended dismissal of Plaintiff's *Monell* claims because Plaintiff failed to plausibly allege an underlying constitutional violation. Municipalities cannot be held liable for the unconstitutional actions of their employees under a theory of *respondeat superior*.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).  Municipalities may instead be liable under § 1983 when the execution of a policy or custom "inflicts the injury" upon the plaintiff. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).  But a *Monell* claim "cannot survive a determination that there has been no constitutional violation."  *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1186 (10th Cir. 2020).

Here, the Magistrate Judge comprehensively examined pertinent precedent and authorities before correctly determining that Plaintiff's *Monell* claims fail due to the absence of an underlying constitutional violation. R. & R. pp. 15-34. Further, even if an underlying constitutional violation were found, the Complaint still fails to articulate the other necessary components of a *Monell* claim as explained in Section IV.F of the Motion to Dismiss and Section II.E of the Reply. Plaintiff's *Monell* claims must therefore be dismissed.

### I. The Magistrate Judge Correctly Recommended Dismissal of Plaintiff's ADA and Rehabilitation Act Claims Because EPSO Was Not Deliberately Indifferent

Plaintiff's Response failed to "confront the question posed in the Motion: how can an entity be deliberately indifferent under Title II of the ADA and Rehabilitation Act when the existence of the right alleged is unclear?" Defs.' Reply, p. 21; *see also* Pl.'s Reply, pp. 49-50. This question remains unanswered in Plaintiff's Objection.

Compensatory damages are only available under Title II of the ADA and Rehabilitation Act in instances of intentional discrimination which can be inferred from a defendant's deliberate indifference to a strong likelihood that the pursuit of its questioned policies will likely result in a violation of federally protected rights and a corresponding failure to act. *Havens v. Colo. Dep't. of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018).

But it is unclear whether Gender Dysphoria falls within the ADA's categorical exclusion of coverage as discussed in Section IV.H.1. of the Motion to Dismiss and Section II.G.i. of the Reply. Indeed, "[n]o federal court of appeals or the Supreme Court ha[d]…addressed whether [this] exclusion applies to gender dysphoria" until August

15

2022, when a divided Fourth Circuit ruled that Gender Dysphoria falls outside the applicable exclusion. *Venson v. Gregson*, No. 18-cv-2185-MAB, 2021 WL 673371, at *2 (S.D. Ill. Feb. 22, 2021); *see Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022). Moreover, a significant disagreement amongst district courts remains on this issue, *see London v. Evans*, No. 19-559, 2019 WL 5726983, at *6 n.3 (D. Del. Nov. 5, 2019), and this Court has found that Gender Dysphoria falls within the applicable exclusion. *Michaels v. Akal Sec., Inc.*, No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. Jun. 24, 2010).

It is thus exceedingly unclear whether Gender Dysphoria has any protections under Title II of the ADA and the Rehabilitation Act. *See* R. & R., p. 41 ("While the Court believes that discrimination based on gender dysphoria violates the ADA and RA, this is not remotely settled law.")). Accordingly, the Magistrate Judge correctly applied *Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th 2013), to recommend dismissal of Plaintiff's ADA and Rehabilitation Act claims for failing to plausibly allege deliberate indifference. R. & R., p. 41.

## V.  CONCLUSION

Defendants respectfully ask the Court to affirm the findings of the Magistrate Judge's Report and Recommendations as outlined above.

Dated this 22ND of March, 2023.

By: s/ *Nathan J. Whitney*
Nathan J. Whitney, #39002
Senior Assistant County Attorney
Bryan Schmid, #41873
Senior Assistant County Attorney
Chris Strider, #33919
Assistant County Attorney
Steven Martyn, #47429

El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485
Email:
nathanwhitney@elpasoco.com
bryanschmid@elpasoco.com
chrisstrider@elpasoco.com
stevenmartyn@elpasoco.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2023, I electronically filed a true copy of the **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO Fed. Civ. P. 12(b)(1) and (6) [Doc. #163 and 169]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Andy McNulty
Mari Newman
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 Fax
amcnulty@kln-law.com


　　　　　　　　　　　　　　　　　　　　　　　s/*Dee Lambert*
　　　　　　　　　　　　　　　　　　　　　　　Paralegal