# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00387-NRN-CMA

DARLENE GRIFFITH,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO, *et al*.

     Defendants.

_____

## NOTICE OF APPEAL
_____

     Plaintiff, DARLENE GRIFFITH, pursuant to Fed. R. App. P. 3 and Red. R. App.

P. 4, hereby appeals to the United States Court of Appeals for the Tenth Circuit:

     The Court's Order Affirming and Adopting Recommendation of United States

Magistrate Judge [ECF 173], granting Defendants' Motion to Dismiss Plaintiff's Third

Amended Complaint [ECF 132]. The underlying Report and Recommendation on

Defendants' Motion to Dismiss Third Amended Complaint was entered at ECF 165 on

February 27, 2023, and Final Judgment was entered at ECF 174 on March 27, 2023.

     Respectfully submitted this 25th day of April 2023.

                         KILLMER, LANE & NEWMAN, LLP

                         *s/ Andy McNulty*
                         Andy McNulty
                         Mari Newman
                         1543 Champa Street, Suite 400
                         Denver, CO 80202
                         (303) 571-1000

(303) 571-1001 facsimile
amcnulty@kln-law.com
mnewman@kln-law.com


*Counsel for Plaintiff Darlene Griffith*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of April 2023, I filed this **NOTICE OF APPEAL** via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing to the following:

Nathan J. Whitney
Terry Sample
Chris Strider
County Attorney's Office
El Paso County
nathanwhitney@elpasoco.com
terrysample@elpasoco.com
chrisstrider@elpasoco.com

*s/ Charlotte Bocquin Scull*
Paralegal

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Senior Judge Christine M. Arguello

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH,

    Plaintiff,

v.

EL PASO COUNTY, COLORADO,
BILL ELDER, in his individual and official capacities,
CY GILLESPIE, in his individual capacity,
ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity, and
BRANDE FORD, in her individual capacity,

    Defendants.

---

## FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order Adopting and Affirming (Doc. 173) Recommendation of United States Magistrate Judge of Judge Christine M. Arguello entered on March 27, 2023, it is

ORDERED that the Recommendation of United States Magistrate Judge Neureiter (Doc.165) is AFFIRMED and ADOPTED as an order of this Court.   Pursuant to the Recommendation, it is

FURTHER ORDERED that Defendants' Motion to Dismiss Third Amended Complaint (Doc. # 132) is GRANTED; and Plaintiff's Third Amended Complaint (Doc. # 124) is DISMISSED WITHOUT PREJUDICE.   It is

FURTHER ORDERED that Defendants shall have their costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen (14) days of entry of judgment, and pursuant to the procedures set forth in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1

Dated at Denver, Colorado this 27th day of March, 2023.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By:   s/   M. Smotts
_____

M. Smotts
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-00387-CMA-NRN

DARLENE GRIFFITH,

      Plaintiff,

v.

EL PASO COUNTY, COLORADO,
BILL ELDER, in his individual and official capacities,
CY GILLESPIE, in his individual capacity,
ELIZABETH O'NEAL, in her individual capacity,
ANDREW MUSTAPICK, in his individual capacity,
DAWNE ELLISS, in her individual capacity,
TIFFANY NOE, in her individual capacity, and
BRANDE FORD, in her individual capacity,

      Defendants.

---

**ORDER AFFIRMING AND ADOPTING RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

---

This matter is before the Court on the February 27, 2023 Recommendation of

United States Magistrate Judge (Doc. # 165), wherein Judge N. Reid Neureiter

recommends this Court grant Defendants' Motion to Dismiss the Third Amended

Complaint (Doc. # 132). Plaintiff timely filed an Objection to the Recommendation. (Doc.

# 169.) For the following reasons, the Court overrules Plaintiff's Objection and affirms

and adopts the Recommendation as an order of this Court.

## I.     __BACKGROUND__

The factual background of this case is set out at length in Judge Neureiter's

Recommendation, which the Court incorporates herein by reference. *See* 28 U.S.C. §

636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, the Court will provide only a brief

summary of the relevant facts of this case.

Plaintiff Darlene Griffith is a transgender woman who has been diagnosed with

gender dysphoria.[1] (Doc. # 124 at ¶ 2.) She has been living as a transgender woman for

more than 20 years. (*Id.* at ¶ 25.) As part of her treatment, Plaintiff has "changed her

name and altered her physical appearance to conform to her female gender identity,

including dressing in feminine attire and taking feminizing hormones, which caused her

to develop female secondary sex characteristics such as breasts, soft skin, a lack of

facial hair, and other characteristics typically associated with women." (*Id.*)

Plaintiff arrived at El Paso County Jail as a pretrial detainee on July 20, 2020. (*Id.*

at ¶¶ 47, 141.) At that time, Plaintiff was an openly transgender woman with a feminine

appearance. (*Id.* at ¶ 47.) During Plaintiff's intake she notified jail personnel that she is a

transgender woman with a diagnosis of gender dysphoria and explicitly requested

placement in a women's facility. (*Id.* at ¶ 48.) Plaintiff also informed jail officials that she

is legally blind. (*Id.* at ¶ 50.)

Plaintiff alleges that when she was booked into the jail, Defendant Andrew

Mustapick sexually harassed her during an unconstitutional cross-gender, visual body-

---

[1] Gender dysphoria is "the significant distress that may accompany the incongruence between a transgender person's gender identify and assigned sex." (Doc. # 124 at ¶ 22.)

2

cavity search while Defendant Dawne Elliss stood by and did nothing to intervene. (*Id.* at ¶¶ 71–83.) When Plaintiff saw that both a male and female deputy would be conducting her search, Plaintiff protested and asked that only Elliss, a female deputy, conduct the search. (*Id.* at ¶ 74.) However, Elliss left Plaintiff alone in the room with Mustapick and intentionally mis-gendered Plaintiff on her way out, telling Mustapick "*he* is all yours now to strip out." (*Id.* at ¶ 76.) Mustapick then ordered Plaintiff to take off her socks, pants, and panties, place her hands on the wall, bend over, and "spread [her] sexy cheeks." (*Id.* at ¶ 77.) He told Plaintiff that he was "going to go balls deep in that ass" while grabbing his own penis in view of Plaintiff. (*Id.* at ¶ 78.) Mustapick was "extremely aggressive" while conducting the search and threatened Plaintiff that if she told anyone, she would be brutalized by the guards at the jail. (*Id.* at ¶ 79.)

Despite Plaintiff's request on intake, Defendant Tiffany Noe placed Plaintiff into an all-male unit. (*Id.* at ¶ 54.) On July 29, 2020, Defendant Brande Ford conducted an Americans with Disabilities Act ("ADA") interview of Plaintiff and wrote in Plaintiff's records that there were no disability concerns related to Plaintiff's housing. (*Id.* at ¶ 55.) Ford did not reclassify Plaintiff or place her into a unit that corresponded with her gender identity. (*Id.*) Over the next several months, Plaintiff repeatedly requested to be moved to a female unit by filing inmate grievances and reporting to jail mental health officials. (*Id.* at ¶¶ 57–66.) In response to one grievance, Defendant Elizabeth O'Neal stated that El Paso County had reviewed Plaintiff's request and denied her the accommodation of housing her in a facility that corresponded with her gender identity. (*Id.* at ¶ 57.) Plaintiff alleges that Defendants Ford, O'Neal, Noe, Gillespie, and Elder

3

violated her constitutional and statutory rights by intentionally disregarding her repeated requests to be housed in a female unit despite knowing that Plaintiff suffered from gender dysphoria and was at risk of sexual harassment and assault. (*Id.* at ¶¶ 47–70.)

Plaintiff further alleges that Defendants Elder, Gillespie, Ford, O'Neal, and Noe failed to protect Plaintiff by housing her in an all-male unit. (*Id.* at ¶¶ 84–88.) On November 18, 2021, after Plaintiff had been housed in the all-male unit for over a year, she was sexually assaulted by another male inmate. (*Id.* at ¶ 84.) The inmate approached Plaintiff while she was laying in her bunk, groped Plaintiff's right breast, and said, "you know you want this dick." (*Id.* at ¶ 85.) Defendants did not move Plaintiff to a unit that corresponded to her gender identity after this incident. (*Id.* at ¶ 88.)

Plaintiff also alleges that she was subject to continuous cross-gender pat-down searches. (*Id.* at ¶¶ 89–96.) Male deputies repeatedly touched Plaintiff's breasts and groin when patting her down. (*Id.* at ¶ 90.) El Paso County officials also regularly mis-gendered Plaintiff throughout her incarceration, including by calling her "Sir." (*Id.* at ¶¶ 97–109.) In one instance, on September 16, 2020, Plaintiff complained to a deputy about male inmates not wearing shirts, and the deputy responded by loudly yelling at the inmates, "the blind faggot said you need to put your shirts on." (*Id.* at ¶ 100.) Plaintiff wrote grievances and complained to jail officials several times about the pat-down searches, mis-gendering, and verbal harassment she was experiencing. In addition, despite Plaintiff's repeated requests for gender affirming clothing, jail officials denied Plaintiff the ability to dress in accordance with her gender identity, including prohibiting her from purchasing panties or lipstick at the commissary. (*Id.* at ¶¶ 110–122.)

Plaintiff reported to mental health providers that she was suffering severe anxiety and depression as a result of being placed in the all-male unit and experiencing harassment and mis-gendering. (*Id.* at ¶¶ 60, 62.) On July 1, 2021, Plaintiff told a mental health provider that due to the constant mistreatment, she would remove her own penis. (*Id.* at ¶ 31.) Plaintiff attempted to self-castrate by wrapping a rubber band around her genitals. (*Id.* at ¶ 32.) Plaintiff has a history of self-harm, including self-castration behavior, when her gender dysphoria has not been accommodated and treated. (*Id.* at ¶ 38.)

In her Third Amended Complaint (Doc. # 124), Plaintiff asserts 16 constitutional and statutory claims against Defendants. Her claims under federal law are:

- **First Claim**: Fourteenth Amendment equal protection discrimination, against all Defendants;

- **Second Claim**: Fourteenth Amendment conditions of confinement, against all Defendants;

- **Third Claim**: Fourth Amendment unreasonable search, against El Paso County, Elder, Mustapick, and Elliss;

- **Fourth Claim**: Fourteenth Amendment substantive due process claim for invasion of bodily privacy and integrity, against El Paso County, Elder, Gillespie, Mustapick, and Elliss;

- **Tenth Claim**: Disability discrimination pursuant to the ADA, 42 U.S.C. § 12101, *et. seq.*, against El Paso County;

- **Eleventh Claim**: Disability discrimination pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et. seq.*, against El Paso County; and

- **Fourteenth Claim**: Fourteenth Amendment failure to protect, against El Paso County, Elder, Gillespie, O'Neal, Noe, and Ford.

Plaintiff's remaining claims for relief constitute parallel or similar claims under the
Colorado Constitution and Colorado state laws.

Defendants filed a Motion to Dismiss the Third Amended Complaint pursuant to
Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. # 132), which the Court referred to Judge
Neureiter (Doc. # 135). Judge Neureiter heard argument on the Motion in a hearing on
October 11, 2022. *See* (Doc. # 163). On February 27, 2023, Judge Neureiter issued his
Recommendation. (Doc. # 165.) Plaintiff filed an Objection (Doc. # 169), and
Defendants submitted a Response (Doc. # 172). The matter is now ripe for review.

## II.    <u>LEGAL STANDARDS</u>

## A.    REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter,
Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de*
*novo* any part of the magistrate judge's [recommended] disposition that has been
properly objected to." In conducting the review, "[t]he district judge may accept, reject,
or modify the recommended disposition; receive further evidence; or return the matter to
the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "In the absence of
timely objection, the district court may review a magistrate [judge's] report under any
standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)
(citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress
intended to require district court review of a magistrate's factual or legal conclusions,
under a *de novo* or any other standard, when neither party objects to those findings.")).

In order to be properly made and, therefore, to preserve an issue for *de novo* review by the district judge, an objection must be both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is proper if it is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059 (internal quotation marks omitted).

## B.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction." A Rule 12(b)(1) challenge generally takes one of two forms: (1) a facial attack, where the moving party may "attack the complaint's allegations as to the existence of subject matter jurisdiction"; or (2) a factual attack, where the moving party may "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When reviewing a facial attack, the Court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). By contrast, in reviewing a factual attack, the district court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule (12)(b)(1)." *Id.*

C.       FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

## D.    QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). To overcome the defense of qualified immunity, a plaintiff must present enough facts in the complaint, taken as true, to show (1) a violation of a constitutional or statutory right, and (2) that the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). The bar is higher for Defendants because they assert a qualified immunity defense in a Rule 12(b)(6) motion instead of a Rule 56 motion. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment."). To determine whether a right was "clearly established," courts ask "whether the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (internal quotation marks omitted).

## III.    <u>DISCUSSION</u>

This is a challenging case. It raises sensitive and important constitutional issues during a time period of shifting jurisprudence among the circuit courts. As she states in her Objection, Plaintiff brought this case to protect the rights of transgender people in public spaces. (Doc. # 169 at 1.) She asserts that this is a case that is, at its core,

"about governmental validation of the existence and experiences of transgender people, as well as the simple recognition of their humanity." (*Id.*) (quoting *G.G. v. Gloucester Cnty. Sch. Bd.*, 853 F.3d 729, 730 (4th Cir. 2017) (Davis, J., concurring)). The Court is sympathetic to Plaintiff and cognizant of the harms that she has suffered during her detention at the El Paso County Jail. However, the Court agrees with Judge Neureiter that existing Tenth Circuit precedent binds the Court's hands in this case. Regretfully, Plaintiff's claims must be dismissed.

## A.     THE RECOMMENDATION

In a thoughtful and well-reasoned Recommendation, which the Court adopts in full, Judge Neureiter carefully analyzed each of Plaintiff's federal claims. First, Judge Neureiter determined that Plaintiff's claims against El Paso County should be dismissed because (1) Plaintiff failed to properly name the Board of County Commissioners of El Paso County as the defendant pursuant to Colo. Rev. Stat. § 30-11-105; and (2) the Complaint alleges misconduct only on the part of employees of the El Paso County Sheriff's Office, a separate and distinct entity from the County. (Doc. # 165 at 14). However, because Plaintiff asserted claims against Sheriff Bill Elder and Commander Cy Gillespie in their official capacities, Judge Neureiter considered Plaintiff's municipal liability claims as asserted against the El Paso County Sheriff's Office. (*Id.*) Next, Judge Neureiter evaluated whether the Complaint adequately alleges Gillespie's personal participation. (*Id.* at 15–16.) Judge Neureiter concluded that the Complaint sufficiently alleges that Gillespie was personally responsible for denying Plaintiff female clothing and grooming products, with respect to her equal protection claim, but Judge Neureiter

found that the allegations were insufficient to establish Gillespie's role in Plaintiff's housing assignments or as a final policymaker. (*Id.* at 16.)

Moving to Plaintiff's Fourteenth Amendment claims, Judge Neureiter considered whether discrimination against transgender people should be subject to heightened scrutiny or rational basis analysis. (*Id.* at 17–24.) Judge Neureiter determined that despite the "growing consensus" in courts around the country that transgender people constitute at least a quasi-suspect class, district courts in this circuit remain bound by the Tenth Circuit's decision in *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995), in which the court held that a transgender plaintiff "is not a member of a protected class" for purposes of an equal protection claim.[2] (Doc. # 165 at 19–20.) Although Judge Neureiter expressed strongly that the Tenth Circuit should revisit *Brown*, he acknowledged that *Brown* remains "if not *good* in the normative sense, at least *binding* law on district courts in this district." (*Id.*) Thus constrained to apply rational basis review, Judge Neureiter concluded that Plaintiff has not adequately alleged that there is no rational reason for Defendants to house transgender women in all-male units and not provide them with feminine clothing and grooming products. (*Id.* at 24.) Accordingly, he found that Plaintiff's equal protection claim must be dismissed for failure to state a claim.

Judge Neureiter next considered Plaintiff's conditions of confinement and substantive due process claims. (*Id.* at 25–26.) He first found that the Complaint fails to state a claim against Defendant O'Neal, for lack of allegations establishing personal

---

[2] The *Brown* court used the older term "transsexual" instead of "transgender." 63 F.3d at 971.

participation, and against Defendants Noe and Ford, for lack of allegations showing

deliberate indifference. (*Id.* at 26.) Further, Judge Neureiter found that all of these

Defendants were entitled to qualified immunity because Plaintiff did not demonstrate

that her right to be placed in a female unit was clearly established. (*Id.*) As to Defendant

Elliss, Judge Neureiter found that "one instance of misgendering, although no light

matter, is not sufficient to state a claim for unconstitutional conditions of confinement."

(*Id.*) With respect to Defendant Mustapick, Judge Neureiter noted that Mustapick's

alleged behavior during the visual body-cavity search was "sickening," but Judge

Neureiter concluded that Plaintiff had not met her burden of showing that it is "clearly

established that cross-gender searches of transgender women, even ones

accompanied by odious verbal harassment, violate a clearly established constitutional

right, nor is the conduct so egregious and the right so obvious that it could be deemed

clearly established even without materially similar cases." (*Id.* at 28.)

Judge Neureiter next determined that the Complaint fails to state a claim for

failure to protect because (1) the Complaint alleges personal participation only of Noe

and Ford in Plaintiff's housing assignment, and (2) the allegations that Noe and Ford

knew of Plaintiff's disabilities, alone, are insufficient to show that they had reason to

suspect that Plaintiff was in substantial and immediate danger, particularly given that

Defendants made their decisions regarding Plaintiff's housing in July 2020 and the

alleged assault by another inmate did not occur until November 18, 2021. (*Id.* at 30.)

Regarding Plaintiff's Fourth Amendment unreasonable search claim and

Fourteenth Amendment substantive due process claim arising from the visual strip

search conducted by Defendants Mustapick and Elliss, Judge Neureiter carefully
balanced Plaintiff's right to bodily privacy and right to be free from unreasonable
searches against the requirements of prison administration. (*Id.* at 30–34.) Although he
acknowledged that Mustapick's alleged comments and behavior during the search were
"reprehensible," Judge Neureiter concluded that, on balance, the Complaint did not
state a plausible violation of the Fourth or Fourteenth Amendment in relation to the
search. (*Id.* at 33.) Moreover, Judge Neureiter observed that both claims would
necessarily fail based on the "clearly established" prong of qualified immunity because
Plaintiff offers no binding precedent clearly establishing that a visual strip search by a
male and female deputy of a transgender inmate, even with harassing comments,
violates the inmate's constitutional rights. (*Id.* at 34.) Having determined that the
Complaint fails to plausibly allege any constitutional violation, Judge Neureiter
determined that Plaintiff could not establish municipal liability and that her claims
against Defendant Elder in his official capacity as Sheriff must be dismissed. (*Id.* at 35.)

Judge Neureiter next evaluated Plaintiff's ADA and Rehabilitation Act claims. (*Id.*
at 35–41.) He acknowledged that there is significant disagreement amongst district
courts across the country regarding whether gender dysphoria is a "gender identity
disorder" and categorically excluded from the ADA's definition of "disability." (*Id.* at 37.)
In the absence of any controlling Tenth Circuit authority, Judge Neureiter followed the
approach of the Fourth Circuit in *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022), and
determined that, as a matter of statutory construction, gender dysphoria is not excluded
from the ADA's protections. (Doc. # 165 at 37.) Judge Neureiter further found that

Plaintiff plausibly alleges that her gender dysphoria was the "but for" cause of the

alleged discrimination. (*Id.* at 38–39.) Judge Neureiter concluded, however, that

Plaintiff's ADA and Rehabilitation Act claims are subject to dismissal because the

Complaint fails to make a showing of intentional discrimination such that Plaintiff would

be able to recover compensatory damages for mental or emotional injury. (*Id.* at 40.)

Stated differently, Judge Neureiter found that because the law is unsettled as to

whether discrimination based on gender dysphoria violates the ADA and Rehabilitation

Act, the Complaint could not plausibly allege that Defendants were "deliberately

indifferent" in that they *knew* that a harm to a federally protected right was substantially

likely. (*Id.* at 40–41.) Given that Plaintiff could not obtain compensatory damages and

that any injunctive relief is moot because Plaintiff has been moved to a female facility,

Judge Neureiter determined that her ADA and Rehabilitation Act claims must be

dismissed.

Lastly, Judge Neureiter recommended that because all of Plaintiff's federal

claims are subject to dismissal, this Court should decline to exercise supplemental

jurisdiction over Plaintiff's state law claims and should dismiss those claims without

prejudice. (*Id.* at 42.)

## B.    THE OBJECTION

Plaintiff timely filed a 30-page Objection to Judge Neureiter's Recommendation.

(Doc. # 169.) The Court has carefully reviewed Plaintiff's Objection and finds that it is

largely a restatement—often verbatim—of Plaintiff's arguments presented in her

Response to the Motion to Dismiss (Doc. # 147) and elsewhere in the record of this

case (Docs. ## 124, 156, 163). Rather than identifying specific legal or factual errors in the Recommendation, Plaintiff merely reargues her positions and asks the Court to interpret the facts and authorities differently in order to arrive at a more favorable result. Although the Court understands Plaintiff's intention to preserve her objection to the entirety of the Recommendation, such an objection does not enable the Court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas*, 474 U.S. at 147; *see also One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d at 1060 (observing that "the filing of objections" is meant to "advance[] the interests that underlie the Magistrate's Act, including judicial efficiency").

Nonetheless, the Court has carefully reviewed *de novo* the applicable law and the relevant materials in this case, including the Objection, the Recommendation (Doc. # 165), the Motion to Dismiss (Doc. # 132) and associated briefing (Docs. # 147, 155, 156, 163), and Plaintiff's Third Amended Complaint (Doc. # 124). *See* Fed. R. Civ. P. 72(b). Having reviewed the issues *de novo*, the Court is satisfied that it would reach the same conclusions as Judge Neureiter and that there is little to add to Judge Neureiter's comprehensive and correct analysis. *See, e.g.*, *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995) (affirming the "common practice among district judges in this circuit" to "adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis"); *see also Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) (observing that "a brief order expressly stating the court conducted de novo review is sufficient"). The Court therefore will address only a few points raised in the Objection.

1.    <u>Fourteenth Amendment Equal Protection</u>

Plaintiff argues that Judge Neureiter erred by determining that this Court is bound to apply rational basis review by the Tenth Circuit's decision in *Brown*. (Doc. # 169 at 7–13.) In *Brown*, the Tenth Circuit followed the Ninth Circuit's decision in *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 663 (9th Cir. 1977), and held that "transsexuals are not a protected class" for purposes of the Fourteenth Amendment. *Brown*, 63 F.3d at 971. The Tenth Circuit therefore applied rational basis review to the plaintiff's equal protection claim. *Id.* Since *Brown*, the Tenth Circuit has not disturbed this holding. *See, e.g.*, *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (unpublished) ("To date, this court has not held that a transsexual plaintiff is a member of a protected suspect class for purposes of Equal Protection claims."). Now, nearly 28 years after *Brown* was issued, Plaintiff contends that *Brown* is not controlling for several reasons.

First, Plaintiff argues that the *Brown* court did not address whether discrimination against transgender individuals constitutes sex- or gender-based discrimination. Accordingly, she avers that *Brown* has been overruled by the Supreme Court's decision in *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1741 (2020), in which the Supreme Court analyzed the statutory language of Title VII and held that, within the meaning of Title VII, "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." While the Court agrees with Plaintiff that *Bostock* plainly calls into question whether discrimination against transgender individuals is sex-based discrimination in the equal protection context, the Court cannot conclude that *Bostock* clearly overruled *Brown*. The *Bostock*

16

opinion was expressly focused on interpreting the text of Title VII—nowhere did the
Supreme Court address equal protection, rational basis review versus heightened
scrutiny, or whether transgender individuals constitute a protected class for purposes of
the Fourteenth Amendment. Given these differences, it would be too great a leap for
this Court to conclude that *Bostock* constitutes "an intervening Supreme Court decision"
justifying this Court's departure from *Brown*. *See Lincoln v. BNSF Railway Co.*, 900
F.3d 1166, 1183 (10th Cir. 2018) (stating that a decision by a panel of the Tenth Circuit
is binding precedent and cannot be overruled "[a]bsent an intervening Supreme Court or
en banc decision justifying such an action").

Plaintiff next argues that *Brown* itself failed to apply binding precedent because it
did not engage in the requisite four-factor analysis for determining whether transgender
individuals are a suspect or quasi-suspect class. (Doc. # 169 at 12–13); *see, e.g.*,
*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020) (describing the
four-factor analysis). As such, Plaintiff argues that Brown is "inapplicable." (Doc. # 169
at 13.) However, Plaintiff cites no authority for her proposition that a district court may
find error in a binding decision of a federal court of appeals and decline to follow it.

Finally, Plaintiff contends that *Brown* is "no longer applicable" because *Holloway*,
the Ninth Circuit decision upon which Brown rests, has been overruled. (*Id.*); *see*
*Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000). Similarly, Plaintiff argues that
*Brown* is "inapposite to nearly every single case that has been decided since, which
'have analyzed the relevant factors for determining suspect class status and held that
transgender people are at least a quasi-suspect class.'" (Doc. # 169 at 13) (quoting

*Grimm*, 972 F.3d at 610). As such, Plaintiff asserts that Brown "should be discarded on the scrap heap of past decisions, like *Plessy*, *Korematsu*, and *Bowers*, that allowed for state-sanctioned discrimination." (*Id.*) Although the Court agrees with Plaintiff that *Brown* should be reconsidered based on the overruling of *Holloway*, the weight of authority from other circuits, and the Supreme Court's decision in *Bostock*, this Court lacks the authority to make that determination. Bound by *Brown*, the Court must apply rational basis review to Plaintiff's equal protection claim.

If the Court were to consider the issue untethered by *Brown*, the Court would not hesitate to find that heightened scrutiny is warranted for Plaintiff's equal protection claim because transgender-based discrimination constitutes sex-based discrimination triggering intermediate scrutiny. *See, e.g.*, *Grimm*, 972 F.3d at 608. Moreover, applying the four-factor test for determining whether a group constitutes a protected class, the Court would find it "apparent that transgender persons constitute a quasi-suspect class." *Id.* at 611. Transgender people (1) have "historically been subject to discrimination"; (2) have "a defining characteristic that bears a relation to [their] ability to perform or contribute to society"; (3) are "a discrete group by obvious, immutable, or distinguishing characteristics"; and (4) are "a minority lacking political power." *Id.*; *see also Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 953 (W.D. Wis. 2018) ("[O]ne would be hard-pressed to identify a class of people more discriminated against historically or otherwise more deserving of the application of heightened scrutiny when singled out for adverse treatment, than transgender people."). Applying heightened scrutiny, the Court would find that the Complaint plausibly alleges that Defendants' actions in placing

Plaintiff in an all-male unit constituted discrimination not substantially related to an important government interest.

Regretfully, the Court is unable to engage in that analysis or arrive at those conclusions. Directed by binding precedent in *Brown*, the Court agrees with Judge Neureiter that the Complaint fails to plausibly allege that the El Paso County Jail lacked a rational basis for housing Plaintiff in an all-male unit and declining to give her feminine clothing and grooming products. Plaintiff's equal protection claim must be dismissed.

2.     Sexual Harassment as an Equal Protection Claim

Plaintiff also objects that Judge Neureiter erred by not considering the second basis for Plaintiff's equal protection claim: that she was subjected to significant verbal and physical harassment by staff and other inmates. (Doc. # 169 at 16.)

Sexual harassment can constitute unlawful sex discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. *See Shepherd v. Robbins*, 55 F.4th 810, 816–17 (10th Cir. 2022) (observing that the Tenth Circuit has "discussed Fourteenth Amendment equal protection claims involving sexual harassment a handful of times" in the employment and education contexts). However, as noted by *Barney v. Pulsipher*, 143 F.3d 1299, 1312 n.15 (10th Cir. 1998), the Tenth Circuit opinions addressing sexual harassment as an equal protection violation have primarily dealt with charges of sexual harassment "in the *employment* context." *Cf. Shepherd*, 55 F.4th at 818 (observing that the Tenth Circuit has also extended such claims to the educational context and to situations where state agents abused their permit or licensing authority to attempt to derive sexual favors). In declining to consider two inmates' sexual

19

harassment claims as violations of the equal protection clause, the *Barney* court stated

that claims "of sexual harassment and assault of inmates by prison guards are more

properly analyzed under the Eighth Amendment." Similarly, in *Women Prisoners v.*

*District of Columbia*, cited by *Barney*, the court declined to analyze sexual harassment

claims brought by pretrial detainees and inmates as equal protection violations because

the court found that the harassment violates the Eighth Amendment and, "*a fortiori* . . .

the Fifth Amendment rights of pretrial detainees." 877 F. Supp. 634, 664 n.38 (D.D.C.

1994), *vacated in part, modified in part*, 899 F. Supp. 659 (D.C. 1995), *vacated in part*

*and remanded* 93 F.3d 910 (D.C. Cir. 1996).[3]

In line with the above logic, Judge Neureiter appropriately analyzed Plaintiff's

allegations of sexual harassment she experienced as a pretrial detainee as a violation

of her due process rights. (Doc. # 165 at 27); *see Porro v. Barnes*, 624 F.3d 1322, 1326

(10th Cir. 2000). Plaintiff has provided no authority from within this Circuit, and the Court

has found none, demonstrating that it is clearly established that a pretrial detainee may

assert a cognizable equal protection claim on the basis of sexual harassment. The

Court is satisfied that Judge Neureiter adequately addressed Plaintiff's sexual

harassment allegations elsewhere in the Recommendation via her other claims.

---

[3] On appeal, the Federal Circuit considered the sexual harassment claims as asserting
violations of the Eighth Amendment and did not address sexual harassment through the lens of
equal protection. *See Women Prisoners v. District of Columbia*, 93 F.3d 910, 927, 929 (D.C. Cir.
1996).

IV.    **CONCLUSION**

In sum, the Court finds Judge Neureiter's Recommendation to be thorough, well-reasoned, and correct. For the reasons stated above, the Court ORDERS as follows:

- The February 27, 2023 Report and Recommendation (Doc. # 165) is AFFIRMED and ADOPTED as an Order of this Court;

- Defendants' Motion to Dismiss Third Amended Complaint (Doc. # 132) is GRANTED; and

- Plaintiff's Third Amended Complaint (Doc. # 124) is DISMISSED WITHOUT PREJUDICE.

The Clerk of Court is directed to close this case.

DATED:  March 27, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge